UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

PAUL BROMM,

Plaintiff,

vs.

LEWIS COUNTY; SEAN SWOPE, in his individual capacity; WARREN MCLEOD, in his individual capacity; JONATHAN MEYER, in his individual capacity; ROBERT SNAZA, in his individual capacity; CITY OF CENTRALIA; ANDY CALDWELL, in his individual capacity; JOHN AND JANE DOEs 1-10; AND GOVERNMENT ENTITY /CORPORATE DOEs 1-10,

Defendants.

Case No. 3:26-cv-05384

**COMPLAINT FOR DAMAGES**

JURY DEMAND

**1. FIRST AMENDMENT RETALIATION – 42 U.S.C. § 1983;**
**2. FIRST AMENDMENT CONSPIRACY – 42 U.S.C. § 1983;**
**3. MONELL MUNICIPAL LIABILITY; and**
**4. DOXING – RCW 4.24.792.**

## I. SUMMARY OF THE ACTION

1. Plaintiff, Paul Bromm, a Lewis County public employee, was disciplined and terminated after posting political memes and commentary on social media expressing critical views about the political climate surrounding Charlie Kirk's death, a matter of public concern. Plaintiff's speech was made from his home and on his personal device on September 11, 2025 and did not purport to represent the views of Lewis County. Defendants responded to political pressure and acted individually and in concert to punish Plaintiff for his constitutionally protected political expression, sending a chilling message to every public



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

employee in Lewis County that disfavored political expression carries professional consequences.

2. On September 11, 2025 at 1:38 p.m., a Washington State Representative, Joel McEntire created a post about Plaintiff's speech on social media and in that post asked a Lewis County Commissioner, Defendant Sean Swope, to confirm whether Plaintiff was employed with the Lewis County Coroner's Office. A member of the public commented Plaintiff was a contractor and did not work for the Coroner's Office. Joel McEntire thanked them for clarifying, but Defendant Swope went out of his way to publicly challenge the information and used the power of his office as a Lewis County Commissioner to investigate Plaintiff's employment status with Lewis County. Just 10 minutes after Joel McEntire's reposted Plaintiff's speech and asked Swope to confirm Plaintiff's employment, Defendant Swope had already agreed to investigate Plaintiff's employment status, commenting, "**he just posted that he works for local government. I will look into it**" (emphasis added).

3. Public records show Lewis County officials in the HR department, Board of County Commissioners, the County Manager, and the Prosecuting Attorney's office were aware during this time of Plaintiff's speech and that Defendant Swope was publicly investigating Plaintiff, a County employee, but did nothing to stop Defendant Swope.

4. At 6:18 p.m., Defendant Swope reposted Plaintiff's speech, amplifying it to Swope's 4,900 followers. The repost publicly identified Plaintiff's name from his posts, disclosed his employment with the Lewis County Coroner's Office, provided the name and email address of Plaintiff's supervisor, Defendant Warren McLeod, and encouraged members of the public to contact McLeod regarding Plaintiff's speech. A true and correct image of Defendant Swope's post is reproduced below:



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com



Sean Swope
September 11, 2025 ·

This has been brought to my attention. The individual who celebrated Charlie Kirk's assassination is a county employee, working in the Coroner's Office led by Warren McLeod.

I am truly saddened that anyone would celebrate the assassination of a fellow American—especially over differences of opinion, thought, or debate.

This perspective does not reflect the character of Lewis County or the values of the fine, decent, and hardworking people who work here.

I also believe Charlie Kirk himself would respect this individual's freedom of speech. He would not silence him, but instead welcome a conversation about differing points of view.

If you have concerns regarding this matter, please contact the Coroner's Office directly: Warren.McLeod@lewiscountywa.gov



Joel McEntire
September 11, 2025 ·

Another disgusting person in our community that none us should be friends with. Paul Bromm is his name. Sean Swope, correct me if I'm wrong but isn't he an employee of Lewis County in the Coroner's Office?
The Chronicle is this what our tax payer dollars support?

102 comments 3 shares



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

5. Defendant Swope knew or reasonably should have known that his actions would cause Plaintiff's employer to take adverse action against Plaintiff for exercising his First Amendment rights. Washington law prohibits this conduct under the anti-doxing statute at RCW 4.24.792.

6. That same evening, Lewis County Coroner, Defendant Warren McLeod, Plaintiff's supervisor and final policymaker, also lent public credibility to and ratified Defendant Swope's doxing repost by commenting on Defendant's Swope's post directly. McLeod confirmed Plaintiff was his employee and invited continued public pressure by announcing he was responding to those who contacted him through official county channels. McLeod stated: "I am aware of the disgusting posts. I have been in touch with the county legal department (civil side of the prosecutor's office). **The posts are protected speech under the 1st Amendment and there cannot be disciplinary action against the person**. I am answering each of the emails that are being sent me through the county website" (emphasis added). A true and correct image of Defendant McLeod's comment is reproduced below:




7. Public records show Warren McLeod only started receiving negative emails about Plaintiff *after* Defendant Swope's repost of Plaintiff's speech. In responding to one of those emails that evening, Defendant McLeod again confirmed there could be no discipline against Plaintiff: "the civil side of the prosecutor's office . . . advised the speech, which **I agree is**



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

**reprehensible**, is protected" and "**disciplining could result in civil action by the employee for violating the 1st Amendment right**" (emphasis added). To another person, he wrote, "I have been looking into this and **speaking with the legal department** of the county (civil side of the prosecutor's office), what was posted, **I agree was horrible and disgusting**, but is **protected under the 1st Amendment**. He did not post anything that indicated his opinions, **gross as they are, are not the opinions of the county or the coroner's office**, therefore **his speech is protected and cannot be held to any type of discipline for the disgusting post**" (emphasis added).

8. The next day on September 12th, Defendant McLeod's tone changed when responding to an email from a precinct appointee for the Lewis County Republican Party: "**All options are being explored at this point** . . . **is all I am able to say publicly**" (emphasis added).

9. On September 12th, Defendant McLeod spoke with Defendant Meyer in the Lewis County Prosecutor's Office, who just hours later **issued Potential Impeachment Disclosure (PID) letters about Plaintiff's speech**. A PID/Brady letter carries a significant professional stigma that in practice almost always results in termination. The PID/Brady letters provided Defendant McLeod with the convenient justification he needed to discipline Plaintiff for speech the civil DPA had told him the night before could not be the subject of discipline.

10. Within minutes of receiving the PID/Brady letters from Defendant Meyer's office, Defendant McLeod called Plaintiff and placed him on administrative leave.

11. The timing of the PID/Brady letters being issued shortly after Defendant McLeod publicly stated that he could not discipline Plaintiff because the speech was constitutionally protected, followed by Plaintiff's immediate placement on administrative leave, raise a reasonable inference that Defendant Meyer's PID/Brady letters were administratively



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

issued to justify discipline against Plaintiff rather than to satisfy any legitimate disclosure obligation.

12. A PID/Brady letter is meant to be a disclosure to a criminal defendant that a government witness may have credibility issues relevant to the witness's testimony in a criminal proceeding. However, Defendant Meyer issued the PID/Brady letters only to Plaintiff's supervisor Defendant McLeod without any criminal case, criminal defendant, or anticipated testimony by Plaintiff to which a disclosure obligation could attach. Plaintiff was a part-time, on-call casual deputy coroner who had not yet completed the CORE medicolegal forensic investigation training required under RCW 43.101.480, had never testified in any criminal proceeding, and was not anticipated to testify in any pending or foreseeable criminal matter. Defendant Meyer's initial PID/Brady letter incorrectly identified Plaintiff as a "removal technician," suggesting the letters were drafted with minimal inquiry into Plaintiff's actual role or duties. Defendant Meyer's letters implied Plaintiff was being placed on a PID list because his social media "posts *may* show a biased [sic] against an identifiable group," but didn't name any group. Defendant Meyer's letters are referred to herein as "PID/Brady letters" because Defendant Meyer's letters invoke Brady disclosure obligations and PID policy interchangeably, and because Lewis County officials, including Defendant McLeod and Human Resources, referred to them as a "Brady letter" in their subsequent communications, termination documentation, and public statements.

13. Defendant Meyer's failure to satisfy any of the requirements of a legitimate PID or Brady disclosure, his issuance of the letters to an employer rather than a criminal defendant, and the absence of any criminal case, criminal defendant, anticipated testimony, identified impeachment material, or identifiable group, raises a reasonable inference that the



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

PID/Brady letters were administratively issued to justify discipline against Plaintiff rather than to satisfy any legitimate disclosure obligation.

14. The concerted action against Plaintiff happened so quickly, from when he posted to when he was placed on administrative leave, there was no opportunity for any disruption to occur before Plaintiff was disciplined by being placed on administrative leave, and any suspected, widespread disruption never materialized. Public records of emails and phone calls during the period following Plaintiff's speech before his termination do not support any allegation of widespread or sustained disruption. Defendant McLeod only received emails from approximately twelve (12) individuals over a week-long period calling for Plaintiff's termination all *after* Swope's repost *mirroring the same language Defendant Swope used in his repost of Plaintiff's speech*. Phone call logs from public records starting on the day of Plaintiff's speech show the same callers calling numerous times, but do not show a large number of calls.

15. Defendants Swope and McLeod's own public commentary makes it impossible to determine whether Plaintiff's posts would have caused *any* disruption absent Defendants Swope and McLeod's actions.

16. On September 12, 2025, Plaintiff messaged Defendant Swope asking him to remove his repost that included his name, employer information, and characterization of his post, citing Washington's doxing statute, but Swope never removed his repost. In contrast, as soon as Lewis County asked Plaintiff to remove his employment affiliation from his page, Plaintiff promptly did so on September 11th. Lewis County never asked Plaintiff to remove his posts, but Plaintiff did so voluntarily on or about September 12, 2025 after he was placed on leave and his family was followed and threatened.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

17. On September 12, 2025, Defendant Swope posted additional political content characterizing supporters of Charlie Kirk as peaceful while depicting opponents of the police killing of George Floyd as lawbreakers. A true and correct image of Defendant Swope's post is reproduced below:




18. Defendant Swope's own response to Charlie Kirk was not peaceful. By directing his followers to contact the Lewis County Coroner's Office, Defendant Swope deliberately orchestrated a campaign of harassment against Plaintiff that caused serious disruption to Plaintiff's employment and life.

19. Public records show that on September 15, 2025, Defendant McLeod had already drafted a



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

termination letter about Plaintiff and emailed it on September 16, 2025 to multiple levels of Lewis County governance, including the Budget Department, Human Resources, the Prosecuting Attorney's office, and the County Manager. The September 15th termination letter cites Defendant Meyer's PID/Brady letters as the reason for the termination, that the letter was "issued as a direct result of recent posts you made to Facebook that showed a 'biased [sic] against an identifiable group' and calls into question your ability to conduct unbiased investigations. Being placed on a PID list means that in every case you are called to testify in, the opposing counsel will be provided with this letter. Based on this, you are being terminated …." A meeting scheduled with Plaintiff for September 16 was cancelled and the draft letter was never used.

20. On September 16, 2025, Defendant McLeod sent emails to a state justice and national medicolegal association to see if they could provide additional rationale to terminate Plaintiff.

21. Defendant McLeod wrote to the Washington State Criminal Justice Training Commission ("CJTC"): "Jon Meyer issu[ed] a PID (Brady) Letter stating his post may demonstrate a bias against an identifiable group. "**My plan was to fire him** but now our county is having an outside risk pool do a Pre-defense review. If they recommend not firing then if I move forward **any litigation would be against me**" (emphasis added). The CJTC responded that *Brady* violations "do not prohibit an individual from practicing."

22. Defendant McLeod also emailed the American Board of Medicolegal Death Investigators on the same date asking whether a Brady letter would obstruct Mr. Bromm's professional certification stating he was "working with our prosecutor, HR and the state Risk Pool to see what type of disciplinary action may be possible." They responded they would forward



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Defendant McLeod's questions to the Board of Directors for review.

23. Defendant McLeod also asked City of Centralia Police Chief, Defendant Andy Caldwell, to draft job restrictions about Plaintiff. Text messages obtained through public records requests show on September 17, 2025, Defendant McLeod texted the City of Centralia Chief of Police, Defendant Andy Caldwell, asking for a call. Defendant Caldwell called and spoke with Defendant McLeod and an hour later, Defendant Caldwell sent an email claiming as a result of Plaintiff's social media posts and "bias," that Plaintiff should not be dispatched in the City of Centralia without being accompanied by a supervisor. Defendant Caldwell's email was sent to Defendant McLeod and law enforcement officials in the area.

24. After sending the email, Defendant Caldwell texted McLeod, "I just sent you an email," and McLeod replied, "**Thanks Sir**." Caldwell also texted, "**I cc'd the Sheriff and Chief Kaut** [Chehalis Police Chief**] on the email.**" Defendant McLeod responded, "**Perfect**" (emphasis added).

25. Defendant McLeod immediately forwarded the email to the Lewis County Prosecuting Attorney's Office, the Budget Department, and Human Resources. Defendant Caldwell's email was not sent for any legitimate government purpose, but to retaliate against Plaintiff for his political expression.

26. The same day, Lewis County Sheriff, Defendant Robert Snaza, also wrote a letter restricting Plaintiff's employment duties based on Plaintiff's speech. In the letter, Defendant Snaza admits he had spoken with Defendant McLeod "earlier," was made aware of Plaintiff's "social media posts," and confirmed awareness of Defendant Meyer's "PID letter." Defendant Snaza's letter acknowledged Plaintiff's first amendment right to free speech, but issued restrictions nonetheless: "**Although Mr. Bromm has a first amendment right to**



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

**free speech**, I think in the best interest of the Sheriff's Office that Mr. Bromm does not respond to any calls with the Sheriff's Office regarding a suspicious death and/or death that requires a criminal investigation. I understand this may cause a strain on your office; however, it is of utmost importance to maintain the integrity of any potential criminal investigation involving a death." The letter did not identify any investigation compromised by Plaintiff's speech, any incident in which Plaintiff demonstrated bias in the performance of his duties, or any factual basis for concluding that Plaintiff's political posts affected his ability to conduct impartial death investigations.

27. Plaintiff's posts had been removed days before Defendant Snaza's and Defendant Caldwell's communications. The only remaining sources of Plaintiff's posts were Defendant Swope's repost and the PID/Brady letters issued by Defendant Meyer.

28. A Lewis County HR Report that recommended Plaintiff's termination based on his speech, cited "the Brady letter" and the job restrictions from Defendants Caldwell and Snaza as justifications: "Following the issuance of the Brady Letter, several local agencies have declined to work with Mr. Bromm, which has significantly impaired his ability to fulfill key responsibilities of his position, particularly those involving interagency collaboration in death investigations." Plaintiff's termination was not motivated by any legitimate concern about Plaintiff's ability to perform his duties. The County did not identify any misconduct, dishonesty, falsification, policy violation, or job-performance deficiency by Plaintiff as a reason to terminate his employment. The only conduct identified by County officials to justify termination was Plaintiff's political speech on social media.

29. Defendants McLeod, Meyer, Snaza, and Caldwell acknowledged Plaintiff's speech was protected and used the same language to justify taking adverse action despite that



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

acknowledgment. The uniformity of language, particularly the repeated mention of Plaintiff's social media posts, and the use of "bias" and "identifiable group" language originating from Defendant Meyer's PID letter, demonstrates that the Defendants adopted a shared rationale to justify Plaintiff's termination. The coordinated sequence where Defendant McLeod's intent to terminate Plaintiff was followed immediately by PID and law enforcement letters manufactured to justify that termination demonstrates the meeting of the minds required to establish a conspiracy to deprive Mr. Bromm of his constitutional rights under 42 U.S.C. § 1983. A government employer cannot manufacture adverse consequences from protected speech and then rely on those consequences to justify discipline.

30. Lewis County never disciplined Defendant Swope for republishing the same content it later used to justify Plaintiff's termination or for doxing Plaintiff. The content of Plaintiff's speech was never an issue, it was that Plaintiff had expressed a dislike for Charlie Kirk, a viewpoint that Lewis County did not allow. When Lewis County HR questioned Plaintiff about his social media posts, he responded he was disturbed that an individual with a documented history of discriminatory conduct was being compared with a civil rights icon like Martin Luther King, Jr. Plaintiff also believed that his posts highlighted the irony that Charlie Kirk had publicly framed gun deaths as an acceptable societal trade-off for second amendment rights, given that Kirk himself died by gun violence. Lewis County terminated Plaintiff because of his expressed viewpoint.

31. Mere days after Plaintiff's termination, Defendant Swope published an article in The Chronicle (a local newspaper) praising Charlie Kirk. The Lewis County Board of Commissioners never censured him for expressing these viewpoints. The County's actions



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

suggest viewpoint discrimination prohibited by the First Amendment.

32. Plaintiff alleges that Defendants' actions violated the First Amendment to the United States Constitution, Washington statutory law, and Washington common law, and caused Plaintiff economic, reputational, and constitutional injury.

## II. JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

34. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

35. Plaintiff timely presented a tort claim to Lewis County in compliance with RCW 4.96.020. More than sixty (60) days have elapsed since presentment of the claim without resolution, satisfying all statutory conditions precedent to filing Plaintiff's state-law claims against Lewis County and its officials.

36. Plaintiff timely presented a tort claim to the City of Centralia in compliance with RCW 4.96.020. More than sixty (60) days have elapsed since presentment of the claim without resolution, satisfying all statutory conditions precedent to filing Plaintiff's state-law claims against the City of Centralia and its officials.

37. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred in Lewis County, Washington within the Western District of Washington.

## III. PARTIES

38. Plaintiff Paul Bromm is, and at all relevant times was, a resident of Washington State and



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

was employed by the Lewis County Coroner's Office until his termination on September 22, 2025.

39. Defendant Lewis County is a political subdivision of the State of Washington. At all relevant times, Lewis County acted through its elected officials, officers, employees, and agents, and is responsible for the policies, practices, customs, training, supervision, and decisions of its final policymakers as alleged herein.

40. Defendant Sean Swope is, and at all relevant times was, a duly elected Lewis County Commissioner. Defendant Swope is sued in his individual capacity for retaliatory acts undertaken under color of state law through the authority of his public office. Although that conduct was undertaken through his official authority as a Lewis County Commissioner, it served no legitimate governmental purpose.

41. Defendant Warren McLeod is, and at all relevant times was, the duly elected Lewis County Coroner. Defendant McLeod is sued in his individual capacity for retaliatory acts undertaken under color of state law through the authority of his public office. Although that conduct was undertaken through his official authority as a Lewis County Coroner, it served no legitimate governmental purpose.

42. Defendant Jonathan Meyer is, and at all relevant times was, the duly elected Lewis County Prosecuting Attorney. Defendant Meyer is sued in his individual capacity for retaliatory acts undertaken under color of state law through the authority of his public office. Although that conduct was undertaken through his official authority as a Lewis County Prosecuting Attorney, it served no legitimate governmental purpose.

43. Defendant Robert Snaza is, and at all relevant times was, the duly elected Lewis County Sheriff. Defendant Snaza is sued in his individual capacity for retaliatory acts undertaken



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

under color of state law through the authority of his public office. Although that conduct was undertaken through his official authority as a Lewis County Sheriff, it served no legitimate governmental purpose.

44. Defendant City of Centralia is a municipal corporation and political subdivision of the State of Washington. At all relevant times, the City of Centralia acted through its elected officials, officers, employees, and agents, and is responsible for the policies, practices, customs, training, supervision, and decisions of its final policymakers as alleged herein. At all relevant times, Defendant Andy Caldwell was the Chief of Police for the City of Centralia and the final policymaker for the Centralia Police Department with respect to law enforcement operational decisions, including decisions regarding interagency cooperation and the personnel of agencies with whom the Centralia Police Department works. Defendant Caldwell's decisions therefore constituted the official policy of the City of Centralia.

45. Defendant Andy Caldwell is, and at all relevant times was, the appointed Chief of Police of the City of Centralia. Defendant Caldwell is sued in his individual capacity for retaliatory acts undertaken under color of state law through the authority of his public office. Although that conduct was undertaken through his official authority as Chief of Police, it served no legitimate governmental purpose.

46. Plaintiff is informed and believes that John/Jane Does 1-10 participated in the unlawful conduct alleged herein and will amend this Complaint if and when their identities are discovered.

47. Plaintiff is informed and believes that Government Entity/Corporate Does 1-10, including but not limited to governmental bodies and political subdivisions, participated in the



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

unlawful conduct alleged herein and will amend this Complaint if and when their identities and roles are confirmed.

## IV. FACTUAL ALLEGATIONS

48. Plaintiff Paul Bromm was raised in a rural farming community where his father served as a Baptist minister. For several years, Plaintiff served as a youth pastor in his church, mentoring young people and providing faith-based guidance within his community.

49. Plaintiff then served honorably in the Army Reserves, where he trained as a military truck driver and received instruction in weapons safety, marksmanship, and unit supervision.

50. Following his military service, Plaintiff worked in skilled trades and transportation, including as a journeyman tool-and-die maker, machinist, and commercial truck driver, developing technical skills, attention to detail, and experience operating heavy equipment.

51. Plaintiff initially performed removal services for the Lewis County Coroner's Office as a contractor, responding to scenes at the direction of the Coroner's Office and working alongside Coroner staff. Through that ongoing working relationship, Coroner Warren McLeod became familiar with Plaintiff's work and asked Plaintiff several times to join the Lewis County Coroner's Office as a removal technician.

52. Defendant McLeod was aware of Plaintiff's political views prior to inviting him to work with Lewis County. During an interview with Lewis County, Defendant McLeod asked Plaintiff whether he would be able to perform his duties professionally and remain impartial when encountering members of the public with different political views. Plaintiff explained it was not a problem for him to be impartial at death scenes when members of the public expressed different political views.

53. Starting on or about August 1, 2024, Plaintiff was hired directly by and worked for Lewis



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

County in the Coroner's Office as a removal technician. Plaintiff showed his professionalism on the job when members of the public would ask him politically charged questions by calmly re-focusing conversations and attention back to the work at hand.

54. Plaintiff viewed this work as a calling, guided by his faith, to treat every decedent and their family with dignity regardless of their beliefs or background. Plaintiff's spiritual beliefs informed his approach to the work, viewing it as his purpose to send people on their final journey without judgment.

55. At all relevant times herein, Plaintiff maintained a personal social media account on Facebook. Defendant McLeod became Facebook friends with Plaintiff.

56. Plaintiff had a history of posting political memes and commentary on his personal Facebook account expressing viewpoints similar in tone and content to the posts that Defendants would later rely upon as the basis for Plaintiff's termination.

57. As Plaintiff's Facebook friend, Defendant McLeod had access to and visibility into Plaintiff's Facebook posts, including Plaintiff's political posts similar in tone and content to those Defendants would later rely upon as the basis for Plaintiff's termination.

58. Despite his awareness of Plaintiff's political expression, Defendant McLeod promoted Plaintiff to deputy coroner on a casual basis on or about January 10, 2025.

59. In his role as a casual deputy coroner, Plaintiff provided part-time, on-call assistance with death scenes, removals, and related duties.

60. At no time before September 11, 2025 did Defendant McLeod voice any concern that Plaintiff's political expression affected Plaintiff's ability to perform his duties, his credibility as a witness, or his fitness for the position of Casual Deputy Coroner.

61. Defendant McLeod's decision to hire, retain, and promote Plaintiff despite longstanding



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

awareness of Plaintiff's political expression demonstrates that Plaintiff's speech did not, in Defendant McLeod's own judgment, impair Plaintiff's ability to perform unbiased investigations or fulfill the essential functions of his position.

62. The U.S. Supreme Court in *Branti v. Finkel* holds that political affiliation may only be considered in employment decisions where it's an appropriate requirement for effective performance of the position, and provides few and narrow examples of when it may be appropriate. A removal technician and casual deputy coroner documented death scenes, completed paperwork, and interacted with families and law enforcement. None of those duties require political loyalty to any elected official or alignment with any political viewpoint.

63. Death does not have a party affiliation. Neither a body at a death scene, nor the friends/family of the deceased, require an investigator to hold particular political views to correctly determine the cause and manner of death.

64. In the early morning hours of September 11, 2025, Plaintiff posted viewpoint-based criticism of Charlie Kirk's opinions and stances on race and gun violence, including Kirk's public statements that while society cannot eliminate all gun deaths, the preservation of the Second Amendment, including the right of law-abiding citizens to own firearms, was worth the cost of "unfortunately, some gun deaths every single year."

65. Plaintiff spoke as a private citizen, not as a public employee. He posted from his home, outside of work hours, and used his own equipment.

66. Although Plaintiff's Facebook account was publicly accessible, Plaintiff only had approximately 200 Facebook friends and each of his posts generated little or no engagement.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

67. Without amplification by public officials with significantly larger Facebook followings, Plaintiff's posts would have remained virtually unseen beyond his small network of Facebook connections that included Defendant McLeod.

***<u>Plaintiff's Posts Were Amplified by Elected Officials and Lewis County Could Have Stopped It</u>***

68. On September 11, 2025 at 1:38 p.m., State Representative Joel McEntire (Washington House District 19) shared screenshots of Plaintiff Bromm's posts with McEntire's followers on Facebook and speculated about Plaintiff's employment. In this post, McEntire tagged The Chronicle, Defendant Sean Swope (Lewis County Commissioner), and asked him to confirm whether Paul Bromm was an employee of Lewis County.

69. Tagging someone in a social media post on Facebook does not automatically reach all of the friends of the person or entity tagged.

70. Joel McEntire is a Washington State Representative for 19th District and represents people residing in Cowlitz County, Grays Harbor County, Lewis County, Pacific County, Wahkiakum County, and Thurston County. He has approximately 1,800 Facebook friends.

***<u>A Member of the Public Stated that Plaintiff did not Work for the Coroner, but Lewis County Officials Escalated the Situation by Publicly Providing Plaintiff's Employment Status</u>***

71. Shortly after McEntire posted about Plaintiff, Facebook users started speculating and provided information about Plaintiff's employment. A Facebook user disputed McEntire's claim that Mr. Bromm worked for Lewis County. "No he doesn't work directly for the coroner. But a company that contracts with the coroner. Or used to. I used to work alongside him . . ." Joel McEntire commented, "thank you for clarifying that detail."

72. At this point, Lewis County officials could have helped defuse the situation by not



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

responding or confirming Plaintiff's employment publicly. Lewis County could have handled Plaintiff's posts as an internal employment matter.

73. Instead, Defendants Swope and McLeod purposefully escalated the controversy surrounding Plaintiff's speech by confirming Plaintiff's employment and agreeing with public comments critical of Plaintiff's speech.

***Defendant Swope Initiates Official Inquiry as a Lewis County Commissioner***

74. On Thursday September 11, 2025 at 1:48 p.m., *just 10 minutes after Joel McEntire* posted and *tagged* Defendant Swope, Swope replied to the comment disputing that Mr. Bromm worked for the County stating: "he just posted that he works for local government. I will look into it."

75. Defendant Swope's comment signaled his intent to use his official position as a Lewis County Commissioner to investigate Plaintiff's employment status and public records show Lewis County was aware Defendant Swope was investigating Plaintiff's employment status at State Representative Joel McEntire's request. Lewis County did nothing to stop Defendant Swope.

76. Public records show that phone calls were exchanged between the office of State Representative Joel McEntire and Lewis County officials regarding Plaintiff's social media posts prior to Plaintiff's discipline and termination. These communications preceded and coincided with key adverse actions taken against Plaintiff, which raises a reasonable inference that McEntire was exerting political pressure on Lewis County to punish Plaintiff for his speech.

77. On September 11, 2025 at 3:08 p.m., Rieva Lester, the Clerk of the Board for the Lewis County Board of Commissioners, sent an email to Lewis County HR (her sister-in-law



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Rachel Lester) and the County Manager, Ryan Barrett, with a Subject line "Facebook posts by county employee:"

a. "I just received a call from . . . who indicates he assist [sic] state legislators, including Reps. Joel McEntire and Jim Walsh, with research. . . said he was on the phone with Rep. Joel McEntire and that Rep. McEntire indicated a Lewis County Coroner's Office employee, Removal Technician Paul Bromm, is posting derogatory remarks about McEntire on McEntire's Facebook page as well as on his own page."

b. "It appears Commissioner Swope has weighed in as well."

78. On September 11, 2025 at 3:29 p.m., the Lewis County manager replied all to the "Facebook posts by county employee" email chain stating, "It appears he has removed his affiliation with Lewis County on his social media account."

79. On September 11, 2025 at 3:31 p.m., Human Resources replied all to the "Facebook posts by county employee" email chain stating, "That is correct. Warren contacted me earlier today about it, and I asked him to have Mr. Bromm remove any affiliation with Lewis County. . . also put in a PDR for Bromm's work schedule. I advised Warren to reach out to David Bailey for further guidance."

***<u>Defendant Sean Swope Doxed Plaintiff</u>***

80. On September 11, 2025 at 6:18 p.m., Defendant Swope, acting under color of state law in his role as an elected Lewis County Commissioner, reposted Plaintiff's speech, amplifying it to Swope's 4,900 followers. The repost publicly identified Plaintiff's name from his post screenshots, disclosed his employment with the Lewis County Coroner's Office, provided the name and email address of Plaintiff's supervisor, Defendant Warren McLeod, and encouraged members of the public to contact McLeod regarding Plaintiff's speech.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Defendant McLeod's email address was not publicly available on the Lewis County Website.

81. Defendant Swope's post stated: "This has been brought to my attention. The individual who celebrated Charlie Kirk's assassination is a county employee, working in the Coroner's Office led by Warren McLeod. I am truly saddened that anyone would celebrate the assassination of a fellow American – especially over differences of opinion, thought, or debate. This perspective does not reflect the character of Lewis County or the values of the fine, decent, and hardworking people who work here. I also believe Charlie Kirk himself would respect this individual's freedom of speech. He would not silence him, but instead welcome a conversation about differing points of view. If you have concerns regarding this matter, please contact the Coroner's Office directly: Warren.McLeod@lewiscountywa.gov A true and correct image of Defendant Swope's post is reproduced below:



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com



Sean Swope
September 11, 2025

This has been brought to my attention. The individual who celebrated Charlie Kirk's assassination is a county employee, working in the Coroner's Office led by Warren McLeod.

I am truly saddened that anyone would celebrate the assassination of a fellow American—especially over differences of opinion, thought, or debate.

This perspective does not reflect the character of Lewis County or the values of the fine, decent, and hardworking people who work here.

I also believe Charlie Kirk himself would respect this individual's freedom of speech. He would not silence him, but instead welcome a conversation about differing points of view.

If you have concerns regarding this matter, please contact the Coroner's Office directly: Warren.McLeod@lewiscountywa.gov



Joel McEntire
September 11, 2025

Another disgusting person in our community that none us should be friends with. Paul Bromm is his name. Sean Swope, correct me if I'm wrong but isn't he an employee of Lewis County in the Coroner's Office?
The Chronicle is this what our tax payer dollars support?

102 comments 3 shares



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

82. Through his post, Defendant Swope exposed and confirmed Plaintiff's identity, employment, and workplace to thousands of his followers, foreseeably subjecting Plaintiff and Plaintiff's family to public outrage, harassment, threats, and danger. Swope further sought to cause an adverse employment action against Plaintiff in retaliation for Plaintiff's protected speech.

83. Defendant Swope's post was made while invoking his authority as a County Commissioner and was disseminated to thousands of his followers.

84. Defendant Swope has 4,900 Facebook friends, is an elected Lewis County Commissioner and is a member on the Lewis County Board of Commissioners.

85. Defendant Swope publicly characterized Plaintiff's political speech in a manner intended to inflame public outrage and prompt adverse employment consequences.

86. Defendant Swope published Plaintiff's personal identifying information without Plaintiff's consent, with knowledge that the information would be used to harm Plaintiff or with reckless disregard for the risk it would be used to harm Plaintiff. Defendant Swope knew or reasonably should have known that identifying Plaintiff by name, disclosing his employer, and directing the public to contact his supervisor would subject Plaintiff to harassment and adverse employment action. As a direct result of Defendant Swope's conduct, Plaintiff suffered harassment, substantial life disruption including the loss of his employment, and other damages. Defendant Swope knew or reasonably should have known that his actions would cause Plaintiff's employer to take adverse action against Plaintiff for exercising his First Amendment rights. Washington law prohibits Defendant Swope's conduct under the anti-doxing statute at RCW 4.24.792.

87. Lewis County did not investigate or discipline Defendant Swope for doxing Plaintiff or for



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

reposting the same content they later used to terminate Plaintiff.

88. Lewis County did not request, direct, or compel Defendant Swope to remove or edit his post(s) about Plaintiff.

89. Defendant Swope's repost of Plaintiff's content is still publicly available as of the date of this filing.

90. Lewis County allowed Defendant Swope to amplify and share negative posts about Charlie Kirk without any consequences, but later disciplined Plaintiff for the same posts.

91. The evening of September 11, 2025, Defendant McLeod called and spoke with Plaintiff, told him his posts did not have to be removed, and Plaintiff could reinstate his employment affiliation if he wanted to.

92. On September 11, 2025 at 8:11 p.m., Defendant McLeod sent an email about Plaintiff's speech to multiple Lewis County officials, including Defendant Meyer, Defendant Snaza, and Commissioner Lindsey R. Pollock, as well as the Washington State Criminal Justice Training Commission, a Wahkiakum County official, a member of the public, and The Chronicle newspaper. This email states:

  a. "Hello all, Yes Paul Bromm works for our office. I share your horror at the posts. After speaking with our civil DPA [Deputy Prosecuting Attorney] the following information has been developed. As long as the posts are not represented as being the opinions of the Coroner's Office or Lewis County Paul's posts are protected under the 1st Amendment, no matter how disgusting they may be."

  b. "He had also been contacted and confirmed he does not make any FB posts while on duty or using county equipment. Per the DPA, even if it was proven he did, it would rate a discipline advising him not to do that again. I have had a



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

> conversation with him in regard to how the post looked when he works conducting death investigations and he stated he understands how it could be viewed. That is the extent of what can be legally done."

93. Following Defendant Swope's repost, Defendant McLeod's non-public work email address received multiple emails from members of the public calling for Plaintiff's termination. The emails reflected Defendant Swope's own characterization of Plaintiff's speech that Bromm had "celebrated Charlie Kirk's assassination," with multiple senders using the words "celebrate," "celebrates," "celebrating," and "celebration" to describe Plaintiff's post.

94. On September 11, 2025 at 9:50 p.m., an email with the Subject: "Fire him" was sent to Defendant McLeod's non-public work email address provided in Defendant Swope's repost, but referred to the person they were complaining about as "Sean Bromm," combining Defendant Swope's first name with Plaintiff's last name: "You need to remove Sean Bromm from your payroll as he has been posting inappropriate info on social media. Follow suit, many employees have been fired from their jobs posting negative and unimaginable comments about a man that was murdered. If you can't take care of this, please give me the info to who can." The sender's conflation of Defendant Swope's first name with Plaintiff's last name demonstrates that Defendant Swope's post was the sender's sole source of information about Plaintiff's identity, establishing that the resulting contact campaign was generated by Defendant Swope's disclosure rather than any independent public knowledge of Plaintiff's identity or speech.

***<u>Defendant McLeod Publicly Weighed in on Plaintiff's Posts Stating no Discipline could be Taken Against Plaintiff</u>***

95. The evening of September 11, 2025 at 11:28 p.m., Defendant McLeod commented publicly



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

on Sean Swope's post and lent public credibility to and ratified Defendant Swope's doxing post, confirmed Plaintiff was his employee, and invited continued public pressure by communicating he was responding to those who contacted him through official county channels. McLeod stated: "I am aware of the disgusting posts. I have been in touch with the county legal department (civil side of the prosecutor's office). The posts are protected speech under the 1st Amendment and there cannot be disciplinary action against the person. I am answering each of the emails that are being sent me through the county website." A true and correct image of Defendant McLeod's comment is reproduced below:




96. In answering the emails that evening on September 11th, Defendant McLeod affirmed that "the civil side of the prosecutor's office . . . advised the speech, which **I** agree is reprehensible, is protected" and "disciplining could result in civil action by the employee for violating the 1st Amendment right." To another person, he wrote, "I have been looking into this and speaking with the legal department of the county (civil side of the prosecutor's office), what was posted, I agree was horrible and disgusting, but is protected under the 1st Amendment. He did not post anything that indicated his opinions, gross as they are, are not the opinions of the county or the coroner's office, therefore his speech is protected and cannot be held to any type of discipline for the disgusting post."

97. The next day on September 12th, Defendant McLeod's tone changed when responding to



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

an email from a Silver Creek Precinct Committee Appointee for the Lewis County Republican Party: "All options are being explored at this point . . . is all I am able to say publicly."

98. The day after Defendant McLeod acknowledged no discipline was available against Plaintiff, he spoke with Defendant Meyer, who issued PID/Brady letters about Plaintiff on September 12th, providing the justification he needed to discipline Plaintiff.

99. On September 12, 2025, Plaintiff went into the office around 12:00 p.m. Plaintiff did not observe anyone answering the phones. Defendant McLeod left the office shortly after Plaintiff arrived.

100. On September 12, 2025 at 12:40 p.m., the Lewis County Prosecuting Attorney's Office emailed Warren McLeod a PID/Brady letter about Paul Bromm signed by the Lewis County Prosecuting Attorney Defendant Jonathan Meyer. The letter stated:

a. "To Whom It May Concern: On September 11, 2025, this Office was made aware of social media posts made by Paul Bromm. Mr. Bromm is employed by the Lewis County Coroner's Office as a 'Removal Technician.' On September 12, 2025, this Office had a conversation with the elected Coroner, Warren McLeod. Coroner McLeod confirmed that, as part of his function, Mr. Bromm is expected to do unbiased investigations into deaths that occur within the boundaries of Lewis County."

b. "A review was made of several posts made on social media by Mr. Bromm. Those posts may show a biased [sic] against an identifiable group. 'It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure.' *Ames v. Pierce County*, 194 Wn. App. 93, 117-18 (2016)."



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

c. "As stated in the adopted PID Policy: Because the [Prosecutor's Office] must err on the side of disclosure, the determination ... to add [a person] to the PID List does not imply a conclusion that the [person] is not credible as a witness. It is critical to differentiate between disclosure requirements and the rules of evidence governing admissibility. The mere fact of placement on the PID List and resulting required disclosure says nothing about the admissibility of the underlying material at trial or other hearings."

d. "The social media posts of concern are attached hereto. Without question such speech is protected under the first amendment. However, in the exercise of freedom, there may also be consequences. 'Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.' *United States v. Agurs*, 427 U.S. 97 (1985)."

e. "If there are any questions, or you wish to discuss this matter further, please do not hesitate to contact this Office. Sincerely, Jonathan Meyer Prosecuting Attorney."

f. The bottom of the letter stated: "It is the Mission of the Lewis County Prosecutor's Office to zealously seek justice in all criminal matters, consistently promote public confidence in the legal system, and diligently represent county government while adhering to the highest ethical and moral standards."

101. Defendant Meyer issued the PID/Brady letter outside the context of any criminal case and solely for administrative purposes related to Plaintiff's employment. The letter was not associated with any pending criminal prosecution, criminal investigation, or anticipated testimony by Plaintiff.

102. A couple of hours later on September 12, 2025 at 2:55 p.m., the Lewis County



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Prosecuting Attorney's Office emailed another PID/Brady letter to Warren McLeod about Plaintiff signed by Defendant Jonathan Meyer stating "This letter amends the previous letter provided as to job title only as it was incorrectly listed on the county's staff directory" and Plaintiff was "employed by the Lewis County Coroner's Office as a 'Deputy Coroner.'"

103. Except for changing Plaintiff's job title, the second PID/Brady letter repeated the same statements contained in the first PID/Brady Letter.

104. At the time the PID/Brady letters were sent to Defendant McLeod, Plaintiff was employed as a part-time, casual deputy coroner.

105. Within minutes of receiving the PID/Brady letters from Defendant Meyer's office on the afternoon of September 12, 2025, Defendant McLeod called Plaintiff and placed him on administrative leave.

106. After Plaintiff was placed on administrative leave, he started removing his social media posts. The day before, Defendant McLeod had told him no discipline could be made against him, but suddenly he was placed on leave.

107. Defendant Meyer's stated basis for issuing the PID/Brady letters was that Plaintiff's social-media posts may show a bias against an identifiable group.

108. Defendant Meyer's PID/Brady letters did not:

a. send the letters to any defendant or defense counsel;
b. reference any criminal case in which a disclosure obligation had arisen;
c. identify any pending investigation or criminal prosecution, criminal defendant, case number, or court proceeding in which Plaintiff was expected to testify;
d. identify any criminal matter in which disclosure of impeachment evidence was required;



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

e. identify any alleged "identifiable group;"

f. explain how Plaintiff's posts show he may have been biased as a witness;

g. explain how Plaintiff's social-media posts bore on his character for truthfulness;

h. state that Plaintiff had ever been untruthful in any professional capacity;

i. identify any act of dishonesty by Plaintiff;

j. articulate any connection between Plaintiff's protected speech and any act of dishonesty, lack of integrity, or untruthfulness as a witness;

k. identify how Plaintiff's speech affected his credibility as a witness;

l. state that Plaintiff had conducted a biased investigation, reached a false conclusion, or treated any individual unfairly in the course of his employment;

m. state that Plaintiff falsified reports, fabricated evidence, made false statements, provided untruthful testimony, or engaged in corruption;

n. identify any misconduct by Plaintiff in the performance of his duties for the Lewis County Coroner's Office.

109. Defendant Meyer issued the PID/Brady letters outside the context of any criminal case and solely for administrative purposes related to Plaintiff's employment. The letters were not connected to any pending prosecution, criminal investigation, or anticipated testimony by Plaintiff.

110. At the time Defendant Meyer drafted and sent the PID/Brady letters to Warren McLeod, Plaintiff was a part-time, on-call casual deputy coroner who had not yet completed the CORE medicolegal forensic investigation training required under RCW 43.101.480, had never testified in any criminal proceeding, and was not anticipated to testify in any pending or foreseeable criminal matter.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

111. Plaintiff never falsified a report, mishandled evidence, conducted a biased investigation, or engaged in any untruthful conduct in connection with his employment with the Lewis County Coroner's Office.

112. Plaintiff's position did not involve policymaking authority, confidential advisory functions, or discretionary authority requiring political loyalty to elected officials.

113. Plaintiff performed his duties for the Lewis County Coroner's Office without any finding that Plaintiff was unable to conduct unbiased investigations or fulfill the essential functions of his position.

114. The PID/Brady letters addressed a speculative, hypothetical future disclosure obligation untethered to any concrete prosecution or proceeding, criminal defendant, or anticipated testimony, further demonstrating that the letters served no legitimate disclosure or compliance purpose and were instead issued in retaliation for Plaintiff's protected speech.

115. Placement on a PID or Brady list carries severe professional consequences that are well understood by prosecutorial officials and law enforcement. A Brady letter carries a serious professional stigma and almost always results in termination. Because a Brady-listed witness's credibility must be disclosed to opposing counsel in any criminal proceeding in which that witness testifies, law enforcement agencies routinely decline to work with Brady-listed individuals to avoid compromising criminal prosecutions. Plaintiff was not a law enforcement officer and had never testified as a witness in any criminal proceeding. Defendant Meyer, as the elected Lewis County Prosecuting Attorney, knew or reasonably should have known that issuing a PID/Brady letter about a coroner's employee, regardless of its legal validity, would predictably cause area law enforcement agencies to refuse to work with that employee, rendering him unable to perform the core functions of his position



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

and providing his employer with an operational justification for termination that was insulated from the constitutional analysis that had blocked discipline on September 11, 2025. The prompt responses by law enforcement restricting Plaintiff's duties based solely on the existence of the PID/Brady letters confirm that this mechanism operated exactly as a reasonable prosecutor in Defendant Meyer's position would have anticipated.

116. By issuing the PID/Brady letters for no legitimate government purpose, Defendant Meyer was participating in retaliation against Plaintiff for his speech.

117. Defendant Meyer's issuance of the PID/Brady letters was an administrative act unrelated to the judicial phase of any criminal proceeding.

118. On the evening of September 12, 2025, hours after Plaintiff was placed on administrative leave for his posts, Defendant Swope shared a post that indicated supporters mourning Charlie Kirk were peaceful while opponents of the police killing of George Floyd were lawbreakers. The post included a video showing people holding candles at a gathering with the text "response to charlie kirk," above another video showing looting and property on fire with the text "response to george floyd."



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com




119. The same day that Plaintiff was placed on administrative leave on September 12, 2025, Plaintiff messaged Defendant Swope asking him to remove Swope's post about him, citing Washington's anti-doxing statute. Defendant Swope refused to remove his repost of Plaintiff's speech, which remains publicly available as of this filing. Plaintiff also asked Joel McEntire to remove his post about Plaintiff, but McEntire responded, "I won't be removing anything. Cheers"

120. Unlike Defendant Swope, who refused to remove or edit his post about Plaintiff, upon request by Lewis County officials, Plaintiff promptly removed any reference to his employment with Lewis County from his social media profile *before* Swope's doxing repost.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

121. Lewis County never asked Plaintiff to remove his posts, but Plaintiff did so voluntarily on or about September 12, 2025 after he was placed on leave and his family was followed and threatened. After Plaintiff removed his posts, the only publicly available source of the content at issue was the PID/Brady letters and Defendant Swope's post, which remains publicly available to everyone. Any public complaints, phone calls, emails, or other disruption to the Coroner's Office after September 12, 2025 were generated by Defendant Swope's continued publication of Plaintiff's posts, not by Plaintiff's speech.

122. A coworker from Plaintiff's office told Plaintiff they agreed with what he had posted about Kirk.

123. On September 16, 2025 at 12:30 p.m., Defendant McLeod sent an email with a PDF attachment called "Paul Bromm termination documentation" to the Lewis County director of Human Resources, Human Resources Generalist Rachel Lester, the Budget Administrator, and employees in the Lewis County Prosecuting Attorney's Office.

124. Enclosed in the "Paul Bromm termination documentation" PDF was a September 15, 2025 letter from the Lewis County Coroner's Office signed by Defendant McLeod to Plaintiff, terminating Plaintiff. This letter was never sent to Plaintiff. It stated: "Mr. Bromm, On Friday 09/12/25 this office received a copy of a Potential Impeachment Disclosure (PID) letter from the Lewis County Prosecutor's Office. This letter was issued as a direct result of recent posts you made to Facebook that showed a 'biased against an identifiable group' and calls into question your ability to conduct unbiased investigations. Being placed on a PID list means that in every case you are called to testify in, the opposing counsel will be provided with the letter. Based on this, you are being terminated as a Deputy Coroner with the Lewis County Coroner's Office effective upon receipt of this letter." The September



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

15th letter was never sent to Plaintiff. A meeting scheduled with Plaintiff on September 16 was cancelled and the draft letter was never used.

125. Defendant McLeod's September 15th termination letter did not identify any misconduct, policy violation, dishonesty, or performance deficiency. The sole basis stated for September 15th termination letter was the issuance of the PID letter, which was itself based solely on Plaintiff's protected political speech. It was drafted and circulated internally to the budget department, Human Resources, the Prosecuting Attorney's office, and the County Manager.

***<u>Defendant McLeod Solicited Justifications to Terminate Paul Bromm from State and National Organizations</u>***

126. On September 16, 2025 at 1:40 p.m., approximately one hour after Defendant McLeod sent the "Paul Bromm termination documents" email, McLeod also emailed Jennifer Pendray at the Washington State Criminal Justice Training Commission (CJTC), inquiring about the effect of a PID letter on a medicolegal death investigator's certification. In his email, Defendant McLeod stated that his plan was to fire Plaintiff but that the County was having an outside risk pool conduct a pre-defense review. Defendant McLeod further stated that if the risk pool recommended against termination and he moved forward, any resulting litigation would be against him personally.

127. Defendant McLeod's email to the CJTC demonstrates that the decision to terminate Plaintiff was predetermined and motivated by Plaintiff's protected speech, that Defendant McLeod was aware an independent review of the termination decision was underway, and that Defendant McLeod understood proceeding with termination against the recommendation of the risk pool would expose him to personal liability for violating



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Plaintiff's constitutional rights.

128. On September 16, 2025 at 8:17 p.m., Defendant McLeod emailed the American Board of Medicolegal Death Investigators (ABMDI) asking whether a PID letter would be an obstacle to Plaintiff obtaining ABMDI certification. In his email, Defendant McLeod mischaracterized Plaintiff's protected political speech, stated he was working with the prosecutor, Human Resources, and the state risk pool to determine what disciplinary action may be possible, and inquired whether ABMDI's moral character standards could be used as a basis to deny Plaintiff's future certification.

129. Defendant McLeod's email to the ABMDI demonstrates that he was actively soliciting external justifications for a termination decision he had already made, and that he disseminated a misleading characterization of Plaintiff's protected speech to a national professional organization.

130. On September 17, 2025 at 11:27 a.m., the CJTC responded to Defendant McLeod's email, confirming that the medicolegal forensic investigation certification is based solely on training requirements and contains no ethical or performance-based component. CJTC further confirmed that a PID/Brady designation does not prohibit an individual from practicing and requires only disclosure if the individual is called to testify.

131. CJTC's response confirmed that the PID letter imposed no barrier to Plaintiff's ability to perform his duties, obtain professional certification, or continue his employment as a Deputy Coroner.

***<u>Defendant McLeod Coordinated with Lewis County Sheriff Defendant Snaza to Create Job Restrictions</u>***

132. On or about September 17, 2025, Defendant McLeod spoke with Lewis County Sheriff,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Defendant Robert Snaza, who agreed to draft a letter restricting Plaintiff's job duties.

133. On September 17, 2025 at 11:14 a.m., the Lewis County Sheriff's Office emailed a letter from Defendant Snaza that directed or requested Plaintiff's work assignments to be restricted because of Plaintiff's political speech. Defendant Snaza's letter stated:

a. "this letter is **in reference to our earlier conversation** regarding Mr. Paul Bromm, who is a deputy coroner with your office. Over the last several days, I have been made aware of some of Mr. Bromm's postings on social media. **Based on those postings**, I have several concerns, especially with a photograph showing Mr. Bromm in his deputy coroner's uniform and an Antifa flag" (emphasis added).

b. "**I am also aware of the PID letter** issued to Mr. Bromm, reference [sic] his social media posts, by Prosecutor Jonathan Meyer. **Although Mr. Bromm has a first amendment right to free speech**, I think in the best interest of the Sheriff's Office that Mr. Bromm does not respond to any calls with the Sheriff's Office regarding a suspicious death and/or death that requires a criminal investigation. I understand this may cause a strain on your office; however, it is of utmost importance to maintain the integrity of any potential criminal investigation involving a death" (emphasis added).

134. Plaintiff never created or posted a photo of himself in his coroner's uniform with an Antifa flag. Upon information and belief, the image referenced by Defendant Snaza was fabricated and did not originate from Plaintiff's social media account.

135. On September 17, 2025 at 11:28 a.m., just 14 minutes after receiving the letter from Defendant Snaza, Defendant McLeod forwarded it stating "Here is the letter from the sheriff" to Becky Butler in the Budget Department, Deputy Prosecuting Attorney David



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Bailey, and Rachel Lester in Human Resources.

136. On September 17, 2025 at 2:10 p.m., Deputy Prosecuting Attorney David Bailey forwarded the letter from Defendant Snaza to Defendant Meyer and employees in the Prosecuting Attorney's Office stating "***Another FYI***" (emphasis added).

137. The facts indicate the first FYI was Defendant Meyer's PID/Brady letter about Plaintiff's speech and "Another FYI" was Defendant Snaza's letter about Plaintiff's speech.

***Defendant McLeod's Coordination with Defendant Caldwell to Create Job Restrictions***

138. On September 17, 2025 at 9:26 a.m., Warren McLeod texted the City of Centralia Chief of Police, Andy Caldwell: "Morning Andy. Can u call me when you get a chance? No hurry ☺" Andy Caldwell responded, "Sure – im in a meeting until 11. I'll give you a call then."

139. On September 17, 2025 11:11 a.m., in response to Defendant McLeod's request for a phone call, Defendant Caldwell called and spoke with Defendant McLeod.

140. On September 17, 2025 at 11:19 a.m. Defendant McLeod sent an email to HR, the Budget Administrator, and the Prosecuting Attorney's Office about "Centralia PD."

141. On September 17, 2025 at 12:18 p.m., Defendant Caldwell sent an email requesting significant limitations on Plaintiff's ability to perform core job duties within the City of Centralia.

142. On September 17, 2025 at 12:17 p.m., Defendant Caldwell emailed Defendant McLeod and law enforcement professionals in the area including Defendant Snaza, the City of Chehalis Police Chief Randy Kaut, and City of Centralia Police Commanders, David Clary and Buddy Croy:

a. I am writing to you in my capacity as the Chief of Police for the City of Centralia to formally request that Deputy Coroner Paul Bromm not be dispatched without



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

being accompanied by a supervisor to any death investigation within the City of Centralia where the death may be connected in any way to a criminal act."

b. "While I fully support an individual's right to express personal feelings and opinions, I have recently been made aware of certain personal social media posts made by Deputy Coroner Bromm regarding the murder of a public figure. Specifically, these posts implied approval of the act, including a comment stating 'Nice Shot!' in reference to the murderer, as well as a shared image of Charlie Kirk being shot, accompanied by the caption 'FA+FO=.' Although freedom of speech and expression is a cornerstone of our society, I must prioritize the integrity of criminal investigations to the greatest extent possible."

c. Defendant Caldwell's email devolved into a discussion of how hypothetical issues relating to bias might arise because of Plaintiff's speech, mimicking Defendant Meyer's letter about bias against an identifiable group: "Death investigations represent one of the most critical responsibilities entrusted to local law enforcement, often forming the foundation for subsequent criminal proceedings. It is imperative that these investigations remain as free from bias as possible to ensure accurate, impartial, and thorough examination of evidence. Public-facing overt bias, such as that expressed in social media posts, can pose significant problems in this context. For instance, it may undermine public confidence in the objectivity of the investigative process, leading to perceptions of partiality that could jeopardize the admissibility of evidence in court or fuel challenges to the validity of findings. Additionally, such bias could inadvertently influence the handling, interpretation, or reporting of forensic



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

details, potentially compromising the pursuit of justice and eroding trust between law enforcement agencies and the communities we serve. In extreme cases, it might even invite legal scrutiny or appeals based on claims of prejudiced involvement. To safeguard the fairness and credibility of our joint efforts in these sensitive matters, I believe this precautionary measure is necessary."

d. "I appreciate your understanding and cooperation in this matter, and I am available to discuss it further if needed."

143. On September 17, 2025 at 12:30 p.m., just twelve minutes after Defendant Caldwell sent the email, Defendant McLeod forwarded the email to Deputy Prosecuting Attorney David Bailey, Human Resources Rachel Lester, and the Budget Administrator, Becky Butler.

144. On September 17, 2025 at 2:10 p.m., Deputy Prosecuting Attorney David Bailey forwarded Defendant Caldwell's email to Defendant Meyer and employees in the Prosecuting Attorney's Office stating "***And a 3rd FYI***" (emphasis added).

145. The facts indicate the first FYI was Defendant Meyer's PID/Brady letter about Plaintiff's speech, "Another FYI" was Defendant Snaza's letter about Plaintiff's speech, "And a 3rd FYI" was in reference to Defendant Caldwell's email about Plaintiff's speech.

146. On September 17, 2025 at 4:09 p.m., The Chronicle (a local newspaper based in Centralia that covers Lewis, Thurston, Cowlitz, Grays Harbor, Pierce, Pacific, Wahkiakum, and Yakima Counties) published an article that discussed actions by Defendant Swope who had identified "Bromm as an employee of the Lewis County Coroner's Office" and "encourage[d] community members to contact Lewis County Coroner Warren McLeod over the issue."



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

147. The article stated: "According to McLeod, the posts and comments in question are now under review by the county prosecutor's office and human resources department."

148. The article further quoted McLeod as stating, "While I do understand the First Amendment gives people the freedom of speech, which means the First Amendment says that the government cannot pass any laws abridging the freedom of speech, so they can't tell you what they can and can't say, . . . in some cases, some speech has consequences, and that's not necessarily protected under the First Amendment."

149. In an interview with Lewis County HR where they questioned Plaintiff about his social media posts, Plaintiff explained that he was distraught that a hateful, bigoted, misogynistic, racist was being praised as a freedom fighter for equal rights, and was being compared to Martin Luther King, Jr., which he believed was a false comparison. Plaintiff also believed that his posts highlighted the irony that Charlie Kirk had publicly framed gun deaths as an acceptable societal trade-off for second amendment rights, given that Kirk himself died by gun violence.

150. Lewis County Human Resources Lead Investigator, Rachel Lester, drafted a Report and listed as the only issue to be resolved, "If recent offensive posts made by Mr. Bromm are cause for termination" and cited "Policy and Practice - Social Media."

151. At all relevant times, Lewis County had no social media policy for employee speech that occurred outside of work hours and away from work premises. Lewis County's Social Media policy did not prohibit Plaintiff's speech, and the HR Investigation Report did not claim that Plaintiff had violated any County policy.

152. The only Lewis County policy regarding social media was called "27.2.5 USING SOCIAL MEDIA AT WORK" which states: "Refrain from using social media while on



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

work time or on equipment we provide, unless it is work-related as authorized by your manager or consistent with the Technology and Equipment Policy. Do not use Lewis County email addresses to register on social networks, blogs or other online tools utilized for personal use."

153. The Lewis County social media policy was not applicable to Plaintiff's speech because Plaintiff did not post anything on Facebook while at work and he did not use any Lewis County email address to register for social media.

154. Despite claiming that there was "significant fallout from social media posts" that "generated substantial negative attention, including media coverage, public backlash on social media, and numerous phone calls and emails from concerned residents," the HR Investigation Report does not mention Defendant Swope's September 11, 2025 doxing repost of Plaintiff's content that had encouraged members of the public to contact the Coroner's Office.

155. The Human Resources report claimed that Plaintiff's posts "led to distress among co-workers and have directly impacted Mr. Bromm's ability to perform the essential duties of his role." However, other than Defendant McLeod, the coworkers that Plaintiff worked with closely shared Plaintiff's political views. Any distress by coworkers was caused by answering phones after Defendant Swope encouraged the public to contact the Coroner's Office about Plaintiff.

156. The HR Investigation Report stated, "It is my recommendation that Mr. Bromm be terminated, effective immediately. His actions have had negative affects [sic] on his employer, the Lewis County Coroner, the staff of the Coroner's Office, Lewis County, and the employees of Lewis County." The HR Investigation Report did not provide details about



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

what the "negative affects [sic]" were "on his employer, the Lewis County Coroner, the staff of the Coroner's Office, Lewis County, and the employees of Lewis County."

157. On September 22, 2025, Lewis County terminated Plaintiff's employment during an in-person meeting. Plaintiff was given a "termination letter" from Defendant McLeod dated September 22, 2025 that stated:

> On September 11, 2025, the Human Resources office was notified of offensive Facebook posts that had been shared publicly on your personal page. The result of these posts drew negative attention from the public and media to the Coroner's Office, the County, and other County Employees. This negative attention has caused a disruption to the Coroner's Office and staff; the Coroner has spent several hours responding to emails and phone calls from the public and law enforcement entities who have expressed their concerns over your posts and your position at the Coroner's Office.
>
> In particular, your posts have attracted attention from the Prosecutor's Office, which resulted in a Potential Impeachment Disclosure (PID) letter issued on September 12, 2025. In addition, there has been an expressed concern from the public and law enforcement that in your official capacity as a Deputy Coroner with Lewis County, you will not be able to perform your job duties in a neutral manner.
>
> Based on the disruption your posts have caused to Lewis County, as well as their impact on how the public and other law enforcement entities view your ability to perform the essential functions of your job, the decision has been made to end your employment with the Lewis County Coroner's Office effective September 22, 2025. You are entitled to contact Human Resources . . . to request a name clearing hearing prior to this termination taking effect. This hearing is not an opportunity to litigate the decision, but rather a chance for you to state any response you might have to this letter. In the alternative, you may submit a response in writing to be included in your personnel file along with this letter.

158. The termination letter was given to Plaintiff on the same day as his termination, meaning Plaintiff had no opportunity to a 'name clearing hearing' prior to the termination taking effect on September 22, 2025. The termination letter stated that any hearing was not an opportunity to challenge or alter the termination decision. Plaintiff had no real chance to clear his name for the purposes of such a hearing.

159. Defendants' conduct caused Plaintiff economic loss, emotional distress, reputational



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

harm, and other damages.

## V. CAUSES OF ACTION

### 1. FIRST AMENDMENT RETALIATION – 42 U.S.C. § 1983

***Against Defendants Sean Swope, Warren McLeod, Jonathan Meyer, Robert Snaza, and Andy Caldwell***

160. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

161. The First Amendment prohibits government officials from retaliating against a public employee for speech made as a private citizen on matters of public concern. Political speech expressed outside the workplace, on personal time, and unrelated to official job duties constitutes protected expression.

162. The categories of speech that are excluded from first amendment protection include true threats, which are statements meant to communicate a serious intent to commit violence against a person or group; incitement, which is speech directed at producing *imminent* lawless action and *likely to do so*; fighting words, which are face-to-face provocations likely to cause an immediate violent reaction, fraud, obscenity; and child sexual abuse material.

163. Plaintiff's social media posts regarding a public political figure did not constitute a true threat, incitement, fighting words, fraud, obscenity, or child sexual abuse material. His speech was not directed at producing imminent lawless action, did not communicate a serious intent to commit violence, and was not a face-to-face provocation likely to cause an immediate violent reaction. His posts addressed matters of public political concern and are entitled to full First Amendment protection.

164. Plaintiff’s speech did not fall into any of the categories of unprotected speech and Defendants never alleged it was. Plaintiff's social media posts regarding a public political



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

figure did not constitute a true threat, incitement, fighting words, fraud, obscenity, or child sexual abuse material. Plaintiff never made any threat to commit violence and he never intended to produce imminent lawless action, nor was his speech likely to do so with his approximately 200 followers and minimal to no engagement prior to Defendants' unlawful acts. His speech was not directed at producing imminent lawless action, did not communicate a serious intent to commit violence, and was not a face-to-face provocation likely to cause an immediate violent reaction. His posts addressed matters of public political concern and are entitled to full First Amendment protection.

165. While the government may impose discipline in limited circumstances if an employee's speech materially disrupts or reasonably threatens to disrupt effective functioning of government operations, it cannot retaliate against an employee because of their speech.

166. The government may not solicit, manufacture or provoke workplace disruption and then rely on resulting disruption as a basis for disciplining protected speech. Disruption sufficient to justify discipline must arise from the employee's speech itself, not from reactions intentionally created or amplified by government officials. A public employer may not impose adverse action based on disruption or restrictions that it caused, encouraged, or unreasonably allowed to occur in response to protected expression.

167. Plaintiff was a public employee who posted political commentary as a private citizen, from his home, outside of work hours, on his personal device, with an audience of approximately 200 Facebook friends where his posts received little to no engagement. His political speech about Charlie Kirk, a political figure, is protected by the First Amendment.

168. Defendants Swope, McLeod, Meyer, Snaza, and Caldwell all acted in retaliation against Plaintiff for his political speech as described herein. They participated in identifying,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

amplifying, and punishing Plaintiff for expressing a political opinion about a national public figure, relying in part on the public reaction they helped generate and job restrictions they helped to create as grounds for his termination.

169. There was no legitimate government interest justified in the adverse actions taken against Plaintiff. Plaintiff's speech contained no true threat, incitement, fighting words, defamation, or any other category of unprotected expression.

170. Defendants Swope, McLeod, Meyer Snaza, and Caldwell each took adverse employment actions and other actions against Plaintiff that would chill a person of ordinary firmness from engaging in protected speech, including publicly identifying Plaintiff's employer and non-public workplace contact information, directing members of the public to contact the Coroner's Office, publicly characterizing Plaintiff's speech as "disgusting" while confirming his employment, fomenting or orchestrating public pressure as a pretextual justification for termination, placing Plaintiff on administrative leave, issuing pretextual PID/Brady letters, restricting his job duties, and terminating his employment.

171. At the time of the events alleged herein, it was clearly established that a government official may not retaliate against an individual for speech made as a private citizen on a matter of public concern, and Defendants Swope, McLeod, Meyer, Snaza, and Caldwell acknowledged in writing that Plaintiff's speech was constitutionally protected.

172. Plaintiff's protected speech was a substantial or motivating factor in each adverse action taken against Plaintiff by each Defendant. Defendants acted in direct response to external political pressure targeting Plaintiff because of the content and viewpoint of his speech and/or at the direction of Defendant McLeod. Discipline triggered by external political complaints fomented or orchestrated by Defendants is strong circumstantial evidence of



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

retaliatory motive.

173. Defendant Meyer, acting under color of state law in his capacity as the elected Lewis County Prosecuting Attorney, drafted and transmitted a PID/Brady letter to Defendant McLeod in retaliation for Plaintiff's speech, implying that Plaintiff was being placed on a PID/Brady list, a serious and career-ending consequence for that speech.

174. Defendant Meyer treated Plaintiff's political viewpoint as evidence of bias and relied on it as the sole basis for issuing the PID/Brady letters in retaliation for his speech, despite the absence of any factual or doctrinal foundation for characterizing political expression as bias toward an identifiable group.

175. Plaintiff's social media commentary expressed a political viewpoint and did not reference, target, or express bias toward any identifiable class or group recognized under *Brady* or Potential Impeachment Disclosure (PID) analysis.

176. Political viewpoint is not an identifiable group for purposes of assessing witness credibility, bias, or disclosure obligations in criminal proceedings.

177. Political affiliation is not an identifiable group for purposes of assessing witness credibility, bias, or disclosure obligations in criminal proceedings.

178. Supporters of Charlie Kirk are not an identifiable group for purposes of assessing witness credibility, bias, or disclosure obligations in criminal proceedings.

179. Plaintiff's political expression did not provide any legitimate basis for characterizing him as biased against an identifiable group in the context of issuing a Brady or PID letter predicated on such bias.

180. Plaintiff's political expression did not evidence bias against any criminal defendants, victims, witnesses, or any other identifiable group whose credibility, treatment, or



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

testimony would be implicated in criminal proceedings. No facts existed demonstrating that Plaintiff harbored group-based animus or that his political views bore on his ability to perform his duties or to provide truthful, unbiased testimony in criminal cases.

181. The only cases cited in Defendant Meyer's PID/Brady letters are inherently tied to criminal proceedings and are designed to provide notice to a Defendant or the defense to ensure due process by preventing unfair convictions, a circumstance which did not exist here.

182. Defendant Meyer's letters state: "A review was made of several posts made on social media by Mr. Bromm. Those posts may show a biased [sic] against an identifiable group. "It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure." *Ames v. Pierce Countv,* 194 Wn. App. 93, 117-18 (2016). *Ames* is about a prosecutor's obligation to disclose evidence *to a criminal defendant in a pending case*. The "err on the side of disclosure" principle means that when a prosecutor has evidence that might be exculpatory or impeaching in a Defendant's favor and isn't sure, they should hand it over to the defense rather than risk a Brady violation. It contemplates a specific case, a specific defendant, and a specific trial where the evidence might matter, which is not present here. Here, there was no Defendant to disclose any information to. Meyer took a principle about what to do when you have a close call in an active prosecution and used it to justify creating an impeachment record against an employee who wasn't a witness in any case.

183. Defendant Meyer's PID/Brady letters acknowledge that Plaintiff's speech is "without question" protected under the First Amendment, then state "in the exercise of freedom, there may also be consequences." The principle that speech may carry consequences is not a basis



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

for issuing a PID letter, but raises a reasonable inference that Defendant Meyers drafted the letters to provide consequences for Plaintiff's speech. Defendant Meyer's letters were framed and deployed as a punitive, stigmatizing communication aimed at Mr. Bromm's protected speech and perceived viewpoints. Defendant Meyer's letters signaled an intent to impose or invite adverse consequences for protected expression rather than merely to comply with disclosure law.

184. Defendant Meyer's PID/Brady letters further state: "'Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.' *United States v. Agurs*, 427 U.S. 97 (1985)."

185. Defendant Meyer's reliance on *United States v. Agurs, 427 U.S. 97,* specifically the statement that "the prudent prosecutor will resolve doubtful questions in favor of disclosure," is misplaced because *Agurs* addresses a prosecutor's duty to disclose evidence in the context of a criminal defendant's constitutional right to a fair trial, not a free-floating authority to investigate, label, or impose consequences on a non-party government employee based on protected speech.

186. The facts suggest Defendant Meyer invented a disclosure obligation that does not exist in retaliation for Plaintiff's protected speech and the letters were not issued for any legitimate purpose.

187. Defendant Meyer issued the PID/Brady letters despite the absence of any criminal case, criminal defendant, or anticipated testimony by Plaintiff. At all relevant times, Paul Bromm was an on-call, casual, part-time deputy coroner; he did not work in law enforcement, had



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

never testified in any criminal case, and was not expected to testify as a witness. Defendant Meyer's initial PID/Brady letter incorrectly identified Plaintiff as a “removal technician.” That basic factual error supports a reasonable inference that the PID/Brady letters were drafted and issued with minimal inquiry into Plaintiff's actual position, responsibilities, or likelihood of serving as a witness in any criminal matter. In turn, the mislabeling undermines any claim that the letter reflected a careful, good-faith, role-specific assessment of whether Plaintiff's conduct created genuine impeachment-disclosure implications, as opposed to a generalized or conclusory designation applied without verifying foundational employment facts. Where a defendant's adverse action is taken in response to a plaintiff's speech, Washington law requires the plaintiff to show that the speech was protected and that it was a substantial or motivating factor in the adverse act; the letter's demonstrable inaccuracy is probative of the decision making process and supports the inference that the action was not the product of a careful, legitimate assessment.

188. Defendant Meyer's letters did not identify any criminal defendant, criminal case, or pending or anticipated proceeding in which a disclosure obligation had arisen. The letters were sent only to Plaintiff’s employer, not to any defendant or defense counsel. Accordingly, there was no legitimate, case-linked impeachment-disclosure function to be served by issuing a "Potential Impeachment Disclosure" (PID) letter about Mr. Bromm, because the letter was not tethered to any anticipated witness testimony or any concrete disclosure decision in a pending prosecution. Instead, the PID letter concerning Mr. Bromm was solely about his political speech. Washington recognizes that government retaliation for protected speech is actionable where the speech is protected and was a substantial or motivating factor in the government official's adverse act, and the same principle applies in



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

the public-employment context when protected speech substantially motivates an adverse employment decision. Here, the absence of any history or expectation of testimony underscores that the PID label was not used to satisfy a bona fide disclosure obligation, but rather to target and burden Mr. Bromm's political expression under the guise of an impeachment-disclosure process.

189. Defendant McLeod relied on Defendant Meyer's letters in drafting a termination letter on September 15, 2025, three days after Defendant Meyer's PID/Brady letters were submitted to Defendant McLeod. Defendant McLeod's letter states: "On Friday 09/12/25 this office received a copy of a Potential Impeachment Disclosure (PID) letter from the Lewis County Prosecutor's Office. The letter was issued as a direct result of recent posts you made to Facebook that showed a 'biased against an identifiable group' and calls into question your ability to conduct unbiased investigations. Being placed on a PID list means that in every case you are called to testify in, the opposing counsel will be provided with this letter." Defendant McLeod used the PID/Brady letters and Plaintiff's placement on a PID list as the sole justification for termination in his September 15th letter to Plaintiff.

190. On September 17, 2025, Defendant Snaza, acting under color of state law in his capacity as Lewis County Sheriff, drafted and transmitted a letter to Defendant McLeod directing that Plaintiff "not respond to any calls with the Sheriff's Office regarding a suspicious death and/or death that requires a criminal investigation" in retaliation for Plaintiff's speech. Defendant Snaza took this action in direct response to Plaintiff's social media posts concerning Charlie Kirk, which had been amplified and publicly circulated by Defendant Swope. Snaza's communication was causally motivated by Plaintiff's protected speech, not by any legitimate operational concern, as demonstrated by the absence of any prior



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

performance complaint, and Snaza's awareness of the political content of Plaintiff's posts at the time he acted.

191. Defendant Caldwell's email restricting Plaintiff's job duties was not sent because of any legitimate operational concern. On September 17, 2025, Defendant McLeod sent Defendant Caldwell a text message asking him to call. At 11:11 a.m. on September 17, 2025, Defendant Caldwell called McLeod as requested and they spoke. Approximately one hour later, Defendant Caldwell, acting under color of state law in his capacity as the Centralia Chief of Police, emailed Defendant McLeod and law enforcement in the area that he was aware of Plaintiff's speech and that as a result of that speech requested that Plaintiff not be dispatched without being accompanied by a supervisor to any death investigation within the City of Centralia where the death may be connected in any way to a criminal act. Defendant Caldwell's email communication was issued without any notice to Plaintiff, without any documented performance basis, and in temporal lockstep with the other adverse actions taken against Plaintiff. The email provides direct evidence that Defendant Caldwell's restriction was imposed *because of* Bromm's speech, which supports a retaliation claim and undermines any contention that the change in assignments was unrelated to protected expression.

192. Defendant Caldwell's communication was based Plaintiff's social media posts "that implied approval of the act" including a comment stating 'Nice Shot!' in reference to the murderer, as well as a shared image of Charlie Kirk being shot, accompanied by the caption 'FA+FO=.' Although freedom of speech and expression is a cornerstone of our society, I must prioritize the integrity of criminal investigations to the greatest extent possible."

193. Defendant Caldwell's email echoed the only allegation mentioned in Defendant



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Meyer's PID/Brady letters, which was that Plaintiffs social posts may show a bias against an identifiable group: "Death investigations represent one of the most critical responsibilities entrusted to local law enforcement, often forming the foundation for subsequent criminal proceedings. It is imperative that these investigations remain as free from bias as possible to ensure accurate, impartial, and thorough examination of evidence. Public-facing overt bias, such as that expressed in social media posts, can pose significant problems in this context. For instance, it may undermine public confidence in the objectivity of the investigative process, leading to perceptions of partiality that could jeopardize the admissibility of evidence in court or fuel challenges to the validity of findings. Additionally, such bias could inadvertently influence the handling, interpretation, or reporting of forensic details, potentially compromising the pursuit of justice and eroding trust between law enforcement agencies and the communities we serve. In extreme cases, it might even invite legal scrutiny or appeals based on claims of prejudiced involvement. To safeguard the fairness and credibility of our joint efforts in these sensitive matters, I believe this precautionary measure is necessary. I appreciate your understanding and cooperation in this matter, and I am available to discuss it further if needed." The HR report that recommended Plaintiff's termination cited Defendant Caldwell's email as a justification.

194. To the extent Defendants claim Plaintiff's speech caused disruption, that disruption resulted from Defendants' own retaliatory conduct, not from the speech itself. Plaintiff's posts may have been seen by his approximately 200 Facebook friends and generated little or no engagement before Defendants amplified them. Any disruption to the Coroner's Office resulted from Defendant Swope's decision to repost Plaintiff's content to 4,900 followers, direct public complaints to the Coroner's Office, and publish McLeod's non-



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

public email address, not from Plaintiff's speech. A government employer cannot manufacture adverse consequences from protected speech and then rely on those consequences to justify discipline.

195. The disruption Defendants use as justification to terminate Plaintiff was short-lived, politically driven, and generated entirely by elected officials who chose to amplify Plaintiff's limited-audience posts. Plaintiff's posts had been removed before Defendants Snaza and Caldwell issued their letters. The only remaining public source of the content at the time of those letters was Defendant Swope's repost, which no Defendant took any action to remove, and Defendant Meyer's PID/Brady letters that were only issued for an administrative purpose.

196. Even if some disruption had occurred, termination was not a proportionate or necessary response. Lewis County conducted no progressive discipline, issued no warnings, and made no attempt at lesser corrective action. Defendant McLeod had already determined he wanted to discipline Plaintiff but was advised by the Prosecuting Attorney's office on September 11, 2025 that Plaintiff's speech was constitutionally protected and that discipline would expose the County to civil liability. Rather than accept that conclusion, McLeod solicited additional justifications to terminate Plaintiff from Defendants, Meyer, Snaza, and Caldwell, and from state and national medicolegal organizations.

197. Defendants enforced speech restrictions selectively based on viewpoint. Defendant McLeod terminated Plaintiff for posting political commentary critical of Charlie Kirk while taking no action against Defendant Swope for reposting that same content, publishing Plaintiff's employer information, and directing public pressure at a County office. No Defendant investigated or sought to discipline Swope for that conduct. Defendant Swope



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

then published an article in The Chronicle praising Charlie Kirk two days after Plaintiff's termination, again without consequence. Defendants punished the viewpoint, not the conduct.

198. Defendant Caldwell had no employment relationship with Plaintiff and no lawful authority over the staffing decisions of the Lewis County Coroner's Office. Defendant Caldwell's decision to restrict Plaintiff's job duties within the City of Centralia based solely on Plaintiff's protected speech exceeded any legitimate governmental objective and was motivated by personal and political reasons rather than any legitimate law enforcement purpose.

199. Defendant Sean Swope acted under the color of law in his capacity as an elected Lewis County Commissioner.

200. Defendant Warren McLeod acted under the color of law in his capacity as the elected Lewis County Coroner.

201. Defendant Jonathan Meyer acted under the color of law in his capacity as the elected Lewis County Prosecuting Attorney.

202. Defendant Robert Snaza acted under the color of law in his capacity as the elected Lewis County Sheriff.

203. Defendant Andy Caldwell acted under color of law in his capacity as Chief of Police of the City of Centralia.

204. Defendants Swope, McLeod, Meyer, Snaza, and Caldwell each acted for personal and political reasons rather than to serve any legitimate governmental objective, and each acted with reckless or callous indifference to Plaintiff's clearly established First Amendment rights.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

205. The conduct of Defendants Swope, McLeod, Meyer, Snaza, and Caldwell constitutes retaliation against Plaintiff for exercising his First Amendment right to engage in protected political speech. Each Defendant took adverse action against Plaintiff because of the content and viewpoint of his speech, with the purpose and effect of punishing Plaintiff for that speech and deterring future protected expression.

206. As a direct and proximate result of the retaliation by Defendants Swope, McLeod, Meyer, Snaza, and Caldwell, Plaintiff suffered loss of employment, loss of income and benefits, damage to his professional reputation, emotional distress, and other compensable injuries.

207. Plaintiff seeks economic damages, emotional distress damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and all other relief permitted by law against Defendants Swope, McLeod, Meyer, Snaza, and Caldwell, in their individual capacities for conduct undertaken with reckless or callous indifference to Plaintiff's federally protected rights.

**2. FIRST AMENDMENT CONSPIRACY – 42 U.S.C. § 1983**
***Against Defendants Sean Swope, Warren McLeod, Jonathan Meyer, Robert Snaza, and Andy Caldwell***

208. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

209. To establish a conspiracy under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendants reached an agreement, express or tacit, to deprive him of a constitutional right, and that at least one overt act was committed in furtherance of that agreement. Direct evidence of agreement is not required; a conspiracy may be inferred from circumstantial evidence showing a common objective, coordinated conduct, and the absence of any



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

legitimate independent explanation for that conduct. The conspiracy need not be formal or premeditated, it is sufficient that the defendants, acting in concert, pursued a shared unlawful objective through mutually reinforcing acts. Each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.

210. Defendants Swope, McLeod, Meyer, Snaza, and Caldwell reached a meeting of the minds, whether express or tacit, to retaliate against Plaintiff for his protected speech and deprive him of his rights under the First Amendment.

211. The agreement among Defendants Swope, McLeod, Meyer, Snaza, and Caldwell is demonstrated by the sequence, timing, and coordinated nature of their conduct following Plaintiff's protected speech.

212. On September 11, 2025, within minutes of State Representative McEntire publicly tagging Defendant Swope on social media regarding Plaintiff's speech, Defendant Swope announced he would investigate Plaintiff's employment. Hours later, Defendant Swope reposted Plaintiff's content and publicly identified Plaintiff's employer, supervisor, and non-public workplace contact information while directing members of the public to contact the Lewis County Coroner's Office.

213. That same evening, Defendant McLeod also publicly confirmed Plaintiff's employment and stated he had already contacted the Lewis County Prosecuting Attorney's Office regarding Plaintiff's speech.

214. The following morning, Defendant McLeod spoke directly with Defendant Meyer. Within hours of that conversation, Defendant Meyer issued PID/Brady letters to Defendant McLeod despite the absence of any pending criminal case, criminal defendant, or



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

anticipated testimony by Plaintiff.

215. Within minutes of receiving Defendant Meyer's PID/Brady letters, Defendant McLeod placed Plaintiff on administrative leave.

216. After receiving the PID/Brady letters and placing Plaintiff on administrative leave, Defendant McLeod drafted a termination letter on September 15, 2025 relying solely on Defendant Meyer's PID/Brady letters as the basis for terminating Plaintiff.

217. On or about September 17, 2025, Defendant McLeod spoke with Defendant Snaza, who agreed to draft a letter restricting Plaintiff's job duties. On September 17, 2025 at 11:14 a.m., the Lewis County Sheriff's Office emailed a letter from Defendant Snaza requesting that Plaintiff's work assignments be restricted because of Plaintiff's social media speech.

218. Within minutes of receiving Snaza's letter, Defendant McLeod forwarded it to Human Resources, the Prosecuting Attorney's Office, and the County Budget Department.

219. On September 17, 2025 at 9:26 a.m., Warren McLeod texted the City of Centralia Chief of Police, Andy Caldwell: "Morning Andy. Can u call me when you get a chance? No hurry ☺" Andy Caldwell responded, "Sure – im in a meeting until 11. I'll give you a call then." At 11:11 a.m., in response to Defendant McLeod's text request for a phone call, Defendant Caldwell called and spoke with Defendant McLeod. A few minutes later, Defendant McLeod sent an email to HR, the Budget Administrator, and the Prosecuting Attorney's Office about "Centralia PD."

220. Approximately one hour after the phone call, Defendant Caldwell sent an email to Defendant McLeod and law enforcement in the area restricting Plaintiff's job duties within the City of Centralia.

221. Within minutes of receiving Caldwell's email, Defendant McLeod forwarded it to



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Human Resources, the Prosecuting Attorney's Office, and the Budget Department.

222. The text messages between Defendant McLeod and Defendant Caldwell resulting in a phone call at 11:11 a.m. followed by Caldwell's restrictive email at 12:17 p.m., is direct evidence that Caldwell acted at McLeod's direction and in furtherance of the shared objective to retaliate against Plaintiff for his protected speech.

223. That same afternoon, an email was sent forwarding Defendant Snaza's letter to Defendant Meyer and other employees in the Prosecuting Attorney's Office stating: "***Another FYI***" (emphasis added). Caldwell's email was also forwarded to Defendant Meyer and other employees in the Prosecuting Attorney's Office stating: "***And a 3rd FYI***" (emphasis added). The first FYI was presumably Defendant Meyer's own PID/Brady letter about Plaintiff's speech.

224. The law enforcement restrictions created by Defendants Snaza and Caldwell were designed to suppress or punish Plaintiff's speech rather than to serve any legitimate governmental interest. The communications relied on the same characterization of Plaintiff's speech that appeared in Defendant Meyer's PID/Brady letters and were used by Lewis County officials as grounds for adverse employment action against Plaintiff.

225. The sequence of events demonstrates coordinated action. In each instance Defendant McLeod communicated directly with Defendants Meyer, Snaza, and Caldwell immediately before those Defendants issued communications criticizing Plaintiff's speech that were then used to impose adverse employment consequences.

226. The uniformity of the language used by officials from different governmental offices further demonstrates coordination. Defendant Meyer's PID/Brady letters characterized Plaintiff's speech as demonstrating "bias" against an identifiable group, and materially



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

similar language was repeated in Defendant McLeod's termination letter and in the law enforcement communications issued by Defendants Snaza and Caldwell.

227. Defendant McLeod served as the central coordinator through whom the communications of the other Defendants were gathered and transmitted to County officials responsible for employment decisions.

228. Defendant Swope initiated the sequence of events by publicly identifying Plaintiff as a County employee, disclosing his workplace information, and directing members of the public to contact Plaintiff's employer with the intent to generate pressure for adverse employment action based on Plaintiff's political speech.

229. Following Defendant Swope's actions, Defendants McLeod, Meyer, Snaza, and Caldwell knowingly participated in a coordinated course of conduct that treated Plaintiff's protected speech as misconduct and resulted in Plaintiff being placed on administrative leave, having his job duties restricted, and ultimately being terminated.

230. These coordinated acts were undertaken in furtherance of the shared objective of punishing Plaintiff for protected speech.

231. A Lewis County HR report recommending Plaintiff's termination relied on the language in Defendant Meyer's PID/Brady letters, and the law enforcement communications from Defendants Snaza and Caldwell.

232. As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered loss of employment, loss of income and benefits, damage to his professional reputation, emotional distress, and other injuries.

233. Plaintiff seeks economic damages, emotional distress damages, constitutional damages, punitive damages against each Defendant in their individual capacities, attorneys' fees and



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

costs pursuant to 42 U.S.C. § 1988, and all other relief permitted by law.

**3. MUNICIPAL LIABILITY – *MONELL***
***Against Defendants Lewis County and City of Centralia***

234. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**A. Municipal Liability – Lewis County**

235. At all relevant times, Defendant Sean Swope was an elected Lewis County Commissioner and a final policymaker for Lewis County with respect to County governance and oversight of County operations.

236. At all relevant times, Defendant Warren McLeod was the elected Lewis County Coroner and the final policymaker for Lewis County with respect to personnel decisions within the Coroner's Office, including the authority to discipline, place on leave, and terminate employees.

237. The adverse actions taken against Plaintiff were undertaken, approved, or ratified by final policymakers for Lewis County and constituted official County policy within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

238. Defendant Lewis County, through its final policymakers, made a deliberate choice to retaliate against Plaintiff for his protected political speech rather than protect his constitutional rights. That deliberate choice was the moving force behind the violation of Plaintiff's First Amendment rights and his resulting termination.

239. Defendant Lewis County had actual notice that Plaintiff's speech was protected under the First Amendment and that adverse employment action based on that speech would implicate constitutional protections. Defendant McLeod acknowledged on September 11,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

2025 that the Prosecuting Attorney's office had advised him that Plaintiff's speech was constitutionally protected and that discipline would expose the County to civil liability. Despite that notice, Lewis County permitted and enforced adverse and retaliatory employment actions against Plaintiff based solely on his protected speech.

240. Despite having no legitimate government interest justifying adverse action against Plaintiff, Lewis County permitted and enforced adverse and retaliatory employment actions based solely on Plaintiff's protected speech.

241. Lewis County maintained policies, customs, or practices that permitted retaliation against employees for protected political speech. Lewis County had no social media policy that prohibited or regulated off-duty speech by employees, yet terminated Plaintiff for off-duty speech without identifying any policy Plaintiff had violated. Defendant Lewis County permitted Defendant Swope to use his official position to publicly identify a county employee, disclose that employee's non-public workplace contact information, and direct public pressure at a County office in retaliation for that employee's protected speech, without investigation, discipline, or corrective action of any kind.

242. Defendant Lewis County failed to train and supervise its elected officials and employees regarding the constitutional limits on adverse employment action based on protected speech. No training existed that would have instructed Defendant McLeod, Defendant Swope, or other County officials that terminating an employee for off-duty political speech on a matter of public concern violates the First Amendment, that issuing PID/Brady letters outside the context of any criminal case and without any pending criminal defendant, criminal prosecution, or anticipated testimony is constitutionally impermissible, or that soliciting external pressure from law enforcement officials to justify a predetermined



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

termination decision implicates an employee's constitutional rights. The absence of such training was a moving force behind the violation of Plaintiff's First Amendment rights.

243. Defendant Lewis County ratified the unconstitutional conduct of its final policymakers by affirmatively approving each step of the retaliatory sequence. Defendant Swope, as a final policymaker for Defendant Lewis County, publicly identified Plaintiff's employer and non-public workplace contact information, directed members of the public to contact the Coroner's Office about Plaintiff's protected speech, and refused to remove that post after Plaintiff invoked RCW 4.24.792. Defendant Lewis County never investigated, disciplined, or required Defendant Swope to remove his post despite having actual knowledge of its contents and its effect on Plaintiff. Defendant McLeod, as final policymaker for the Coroner's Office, publicly commented on Defendant Swope's doxing post confirming Plaintiff's employment and characterizing his speech as disgusting, ratifying Swope's conduct and inviting continued public pressure through official County channels. Defendant McLeod then participated in a conversation with Defendant Meyer after which Defendant Meyer's office issued PID/Brady letters unsupported by any pending criminal case, criminal defendant, or anticipated testimony. Defendant McLeod used those letters as the sole justification for placing Plaintiff on administrative leave and drafting a termination letter on September 15, 2025. Defendant McLeod circulated that termination letter to before any HR investigation was complete. He then solicited external justifications from professional organizations and law enforcement to support a termination decision he had already made.

244. Defendant Lewis County, through their policymakers, had the authority and the means to review and correct the retaliatory conduct of Swope, McLeod, Meyer, Snaza, and Caldwell, were made aware of each step of that conduct, and took no corrective action at



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

any stage. Defendant Lewis County HR conducted an investigation into Plaintiff's protected speech, recommended termination, and cited the PID letters and law enforcement restriction letters as justification without questioning their constitutional basis. Defendant Lewis County terminated Plaintiff on September 22, 2025 based solely on his protected political speech, never investigated or disciplined any official for retaliatory conduct directed at Plaintiff, never repudiated any of the adverse actions taken against Plaintiff, and never took any corrective action on Plaintiff's behalf despite actual knowledge that his speech was constitutionally protected.

245. Defendant Lewis County's policy, custom, ratification, and failure to train were each independently a moving force behind the deprivation of Plaintiff's First Amendment rights and his termination.

246. As a direct and proximate result of Defendant Lewis County's policies, customs, practices, ratification, and failure to train, Plaintiff suffered loss of employment, loss of income and benefits, damage to his professional reputation, emotional distress, and other compensable injuries.

247. Plaintiff seeks compensatory damages against Defendant Lewis County, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and all other relief permitted by law.

**B. Municipal Liability – City of Centralia**

248. At all relevant times, Defendant Andy Caldwell was the Chief of Police for the City of Centralia and the final policymaker for the Centralia Police Department with respect to law enforcement operational decisions, including decisions regarding interagency cooperation and the personnel of outside agencies with whom the Centralia Police Department works.

249. Because Defendant Caldwell was the final policymaker for the Centralia Police



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Department, his decision to restrict Plaintiff's job duties within the City of Centralia constituted the official policy of the City of Centralia within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). No separate unconstitutional policy or custom is required where the unconstitutional decision is made by the entity's final policymaker.

250. Defendant Caldwell, acting as the City of Centralia's final policymaker, made a deliberate decision to restrict Plaintiff's ability to perform core job duties within the City of Centralia based solely on Plaintiff's protected political speech. That decision was not made to serve any legitimate law enforcement purpose. Defendant Caldwell did not identify any investigation compromised by Plaintiff's conduct, any incident of demonstrated bias in the performance of Plaintiff's duties, or any factual basis for concluding that Plaintiff's political expression affected his ability to perform impartial death investigations.

251. Defendant Caldwell's decision was made in coordination with Defendant McLeod, was communicated to area law enforcement officials including Defendant Snaza and the Chehalis Police Chief, and was immediately forwarded by Defendant McLeod to Lewis County HR, the Budget Administrator, and the Prosecuting Attorney's Office as justification for Plaintiff's termination.

252. The City of Centralia, through its final policymaker, had actual or constructive knowledge that restricting a public employee's job duties based solely on protected political speech implicates First Amendment protections. Defendant Caldwell acknowledged in his own email that Plaintiff's speech was an exercise of free expression yet proceeded to impose operational restrictions based solely on Plaintiff's speech.

253. Defendant Caldwell's decision, as the official policy of the City of Centralia, was a



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

moving force behind the deprivation of Plaintiff's First Amendment rights and his termination. Lewis County HR cited the duty restrictions imposed by Defendant Caldwell as a direct justification for recommending and carrying out Plaintiff's termination.

254. As a direct and proximate result of the City of Centralia's policy as implemented by its final policymaker, Plaintiff suffered loss of employment, loss of income and benefits, damage to his professional reputation, emotional distress, and other compensable injuries.

255. Plaintiff seeks compensatory damages against the City of Centralia, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and all other relief permitted by law.

**4. DOXING – RCW 4.24.792**
***Against Defendant Sean Swope***

256. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

257. RCW 4.24.792 prohibits the intentional publication of an individual's personal identifying information, including name, employer, position, and workplace contact information, without that individual's consent, where the publisher acts with intent, knowledge, or reckless disregard that the disclosure will be used to harm the individual. Defendant Swope's conduct satisfies each element of that prohibition.

258. On September 11, 2025, Defendant Swope intentionally published Plaintiff's personal, identifying information without Plaintiff's consent, including Plaintiff's name, his employer, his position within the Lewis County Coroner's Office, the name of his direct supervisor, and his supervisor's non-public work email address that was not listed on the Lewis County website or otherwise publicly accessible.

259. Plaintiff removed his employment affiliation with Lewis County from his personal



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

social media page before Defendant Swope's September 11, 2025 post. Defendant Swope affirmatively identified Plaintiff's employer, position, and supervisor after Plaintiff deliberately withheld that information from public view.

260. Acting in his capacity as an elected Lewis County Commissioner, Defendant Swope published Plaintiff's personal identifying information to approximately 4,900 Facebook followers, framed Plaintiff's speech in inflammatory terms, and directed his followers to contact the Coroner's Office. Within hours, members of the public submitted complaints through the Lewis County Coroner's Office website contact form demanding employment consequences for Plaintiff.

261. Defendant Swope acted with intent, knowledge, and/or reckless disregard that publishing Plaintiff's personal identifying information would subject Plaintiff to harassment and adverse employment consequences.

262. Defendant Swope acted with intent, knowledge, and/or reckless disregard that publishing Plaintiff's personal identifying information would subject Plaintiff to harassment and adverse employment consequences. On September 12, 2025, Plaintiff messaged Defendant Swope directly through Facebook, cited RCW 4.24.792, and demanded removal of the post. Defendant Swope refused and the post has been publicly available and accessible every minute of every day since September 11, 2025 up until the day of this filing.

263. As a direct and proximate result of Defendant Swope's intentional disclosure, Plaintiff and his family were subjected to harassment and threats, and Plaintiff suffered reputational injury, emotional distress, economic loss, fear of serious bodily injury to himself or a close relation, substantial life disruption, and termination of his employment.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

264. As a result of Defendant Swope's conduct, Plaintiff seeks punitive damages, economic damages, emotional distress damages, statutory damages of $5,000 per violation, costs and reasonable attorneys' fees, injunctive relief, and any other relief deemed appropriate by the court pursuant to RCW 4.24.792.

## VI. PRAYER FOR RELIEF

265. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

266. Plaintiff requests judgment against Defendants as follows:

a. Against all Defendants: economic damages, emotional distress damages, constitutional damages, attorneys' fees and costs, injunctive relief, pre-judgment interest, post-judgment interest, tax consequence adjustment, and all other relief permitted by law.

b. Against Defendants Swope, McLeod, Meyer, Snaza, and Caldwell in their individual capacities: punitive damages;

c. Against Defendant Swope: statutory damages per violation pursuant to RCW 4.24.792(5)(b).

d. Against Defendants Lewis County and City of Centralia: compensatory damages for all economic loss, emotional distress, reputational harm, and other injuries proximately caused by the unconstitutional policies, customs, practices, ratification, and failure to train of each municipality's final policymakers; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and all other relief permitted by law.

267. JURY DEMAND: Plaintiff demands a trial by jury on all issues so triable.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Respectfully submitted,

DATED on this 15th day of April 2026,

LUNDE LEGAL, PLLC

/s/ Elizabeth G. Lunde

Elizabeth G. Lunde, WSBA No. 51565
Andreas A. Kralios, WSBA No. 51742
6817 27th Ave West, # 65454
University Place, WA 98466
Telephone: (253)302-0136
Email: ELunde@LundeLegal.com
*Attorneys for the Plaintiff*