HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL BROMM,<br><br>Plaintiff,<br><br>vs.<br><br>LEWIS COUNTY; SEAN SWOPE, in his individual capacity; WARREN MCLEOD, in his individual capacity; JONATHAN MEYER, in his individual capacity; ROBERT SNAZA, in his individual capacity; CITY OF CENTRALIA; ANDY CALDWELL, in his individual capacity; JOHN AND JANE DOEs 1-10; AND GOVERNMENT ENTITY/CORPORATE DOEs 1-10,<br><br>Defendants. | No. 3:26-CV-05384-BHS<br><br>MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS MCLEOD, MEYER, SWOPE AND SNAZA<br><br>**Noted for August 3, 2026** |



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

## I. INTRODUCTION

Plaintiff Paul Bromm was fired from his position as a part-time, on-call Deputy Coroner with the Lewis County Coroner's Office after it was discovered that he had made posts on his public Facebook account that celebrated and mocked the assassination of Charlie Kirk on the evening of his death. Mr. Bromm's Facebook identified himself by name and contained close-up pictures of him in his Coroner's uniform and hat. The elected Coroner, Warren McLeod, ultimately determined that Mr. Bromm's posts "called into question his ability to conduct unbiased death investigations, brought shame to my office, and broke trust with our partners in law enforcement" and terminated Mr. Bromm's employment.

Mr. Bromm has now sued Lewis County and its elected Prosecutor, Coroner, Sheriff, and Commissioner, as well as the City of Centralia and its police chief, claiming that his termination violated his First Amendment rights, that all of the Defendants conspired to violate those rights, and that the municipal Defendants are liable under *Monell*. The County and the City each have pending motions to dismiss the *Monell* claims. This motion now seeks to dismiss all claims against the individual Lewis County Defendants on immunity grounds pursuant to FRCP 56.

As will be shown below: (1) Prosecutor Meyer has absolute and qualified immunity for the prosecutorial act of issuing a Potential Impeachment Disclosure ("PID") letter on Mr. Bromm; (2) Commissioner Swope is entitled to qualified



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

immunity for posting a Facebook response to Representative Robert McEntire's questions about Mr. Bromm's posts and whether he worked for the County; (3) Sheriff Snaza is entitled to qualified immunity for barring Mr. Bromm from being involved in suspicious death investigations with the Sheriff's Office; and (4) Coroner McLeod is entitled to qualified immunity for terminating Mr. Bromm, an "at will" employee.

Defendants Caldwell and Centralia are represented by their own counsel.

## II. FACTS

Here is a link to a USA Today article to provide some context to the shooting of Charlie Kirk: https://www.usatoday.com/story/life/health-wellness/2025/09/11/charlie-kirk-iryna-zarutska-video/86085168007/.

### A. Commissioner Sean Swope's role.

On September 11, 2026, the day after Charlie Kirk was assassinated, Washington State House Representative Joel McEntire made the below Facebook post, tagging Lewis County Commissioner, Sean Swope, and asking him a direct question in his role as a County Commissioner about Paul Bromm and whether he was employed by Lewis County:

//

//

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021




Declaration of Sean Swope at ¶ 5 and **<u>Exhibit A</u>**. Commissioner Swope initially didn't know if Mr. Bromm was a Lewis County employee, though his face looked familiar. Swope Dec. at ¶ 5.

//

//

//

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

After being tagged, Commissioner Swope looked at Mr. Bromm's public Facebook account and saw several things that clearly identified him as a Lewis County employee:

- Mr. Bromm's employer was identified as Lewis County;
- Mr. Bromm's profile photo showed him in a Lewis County Coroner's Office shirt; and
- Mr. Bromm's account included photos of Mr. Bromm wearing his Lewis County Coroner "Removal Technician" shirt and a Lewis County Coroner hat.

*Id*. at ¶ 6. These are the photos that Commissioner Swope saw when he looked at Mr. Bromm's public Facebook page:

//

//

//

//

//

//

//

//

//

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021






Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021






Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021



Swope Dec. at ¶ 6 and **<u>Exhibit B</u>**.

//

//

//

//

//

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

Commissioner Swope then responded on Facebook to Representative McEntire's question by re-posting Representative McEntire's post with the following reply:


Sean Swope
Pinned · Sep 11, 2025 ·

This has been brought to my attention. The individual who celebrated Charlie Kirk's assassination is a county employee, working in the Coroner's Office led by Warren McLeod.

I am truly saddened that anyone would celebrate the assassination of a fellow American—especially over differences of opinion, thought, or debate.

This perspective does not reflect the character of Lewis County or the values of the fine, decent, and hardworking people who work here.

I also believe Charlie Kirk himself would respect this individual's freedom of speech. He would not silence him, but instead welcome a conversation about differing points of view.

If you have concerns regarding this matter, please contact the Coroner's Office directly:
Warren.McLeod@lewiscountywa.gov

Joel McEntire
Sep 11, 2025 ·

Another disgusting person in our community that none us should be friends with. Paul Bromm is his name. Sean Swope, correct me if I'm wrong but isn't he an employee of Lewis County in the Coroner's Office?
The Chronicle is this what our tax payer dollars support?



Swope Dec. at ¶ 7 and **<u>Exhibit C</u>**. This is the only post Commissioner Swope made



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

about Mr. Bromm. Swope Dec. at ¶ 7.

Commissioner Swope made this post to answer Representative McEntire's direct question, serve his constituents, and make several things clear: although Mr. Bromm worked for Lewis County, Mr. Bromm's sentiments didn't reflect the heart or attitude of Lewis County; that Mr. Bromm didn't work for him and that questions for Mr. Bromm's employer should be directed to the Coroner; and the Commissioner's belief that Mr. Kirk would have valued Mr. Bromm's freedom of speech and would have welcomed a discussion. *Id.* at ¶ 7.

**B. <u>Prosecuting Attorney Jonathan Meyer's role</u>.**

Following Charlie Kirk's murder, the elected Lewis County Prosecuting Attorney, Jonathan Meyer, was alerted by a citizen about some of Paul Bromm's Facebook posts on the topic. Meyer Dec. at ¶ 12. Prosecutor Meyer did not recognize the name Paul Bromm but was told that he was a Coroner's Office employee. *Id.*

As the elected Prosecutor, Mr. Meyer strives to preserve the integrity of the criminal justice system by, among other things, protecting a charged defendant's due process rights to a fair trial. *Id. at* ¶ 3. Potential Impeachment Disclosure ("PID") letters (also referred to as *Brady* letters) are a large part of that as prosecutors have an absolute and affirmative duty to disclose to a charged defendant all known potential exculpatory and potential impeachment information about prosecution witnesses. *Id.*



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

After being alerted about Mr. Bromm's Facebook posts, Mr. Meyer reviewed all of Mr. Bromm's social media posts that he could find on the topic to determine whether he needed to issue a PID letter in relation to Mr. Bromm. *Id.* at ¶ 12. In making this determination, Mr. Meyer followed his standard practice of asking the question:

> If you were a defense lawyer putting on a case in which Mr. Bromm was involved, would you want to know about his social media posts?

*Id.* The answer to Mr. Meyer was obvious:

> Of course.

*Id.* Mr. Bromm's posts showed potential bias toward a group of individuals and a celebration and mocking of the assassination, which criminal defense attorneys would want to know about in any case where he was a witness. *Id.* Mr. Meyer therefore issued a PID letter on Mr. Bromm and provided it to his boss, Coroner Warren McLeod. *Id.* at ¶ 13. A copy of that letter is attached as **Exhibit A** to Prosector Meyer's Declaration.[1]

That was the end of Prosecutor Meyer's substantive action in this matter – an action that was consistent with Mr. Meyer's past practice and Lewis County's PID policy which was enacted pursuant to RCW 10.93.180. *Id.* at ¶ 18.

---

[1] The first draft of the letter listed Mr. Bromm's former position, removal technician. The second draft listed his then-current position, deputy coroner.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

**C. <u>Sheriff Robert Snaza's role</u>.**

Robert Snaza is the elected Sheriff of Lewis County. Snaza Dec. at ¶ 2. Sheriff Snaza was on vacation in Arizona in September 2025, when Charlie Kirk was killed. *Id.* at ¶ 6. When he returned to work, he learned that an employee in the Lewis County Coroner's Office, Paul Bromm, had made vile and mocking posts online about Mr. Kirk's assassination, including a picture of Mr. Bromm in what appeared to be his Lewis County Coroner's Office shirt with an Antifa flag in the background. *Id.* Sheriff Snaza was stunned. *Id.* He couldn't believe that Mr. Bromm – who he'd never met or heard of – had made such vile and disturbing posts about someone being murdered and was photographed in what appeared to be his Lewis County Coroner's Office shirt with an Antifa flag in the background. *Id.* Putting aside who Charlie Kirk was, Sheriff Snaza found it extraordinarily inappropriate for a Coroner's Office employee to be celebrating the death of anyone. *Id.*

In the days following, Sheriff Snaza learned that Prosecutor Meyer issued Mr. Bromm a PID letter in relation to his posts which were attached to his letter and included vile comments such as:

- "HEYYYYY Man, Nice Shot!"
- "We actually have some more worthy targets in the Orange Hue, if you would be so kind as add them to your list,"



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

- "I have said it b4- Violence is never the answer but it is part of the equation to get to the answer,"
- "One man's violence is another man's Karma," and
- an image of Mr. Kirk being shot with the words "FA+FO" (i.e., Fuck Around and Find Out). *Id. at ¶7.*

*Id.* at ¶ 7. Sheriff Sanza received a copy of the PID letter with attachments. *Id.*

Sheriff Snaza believed he needed to take protective measures with Mr. Bromm given his vile and mocking posts celebrating death and posing with the Antifa flag while wearing a Lewis County Coroner's Office shirt – to the extent the performance of Mr. Bromm's job involved the Sheriff's Office – as he had done with others who had PID letters. *Id.* at ¶ 10. Sheriff Snaza therefore wrote a letter to Mr. Bromm's boss, Coroner McLeod, informing him that his office would not accept Mr. Bromm responding to any calls with the Sheriff's Office regarding a suspicious death and/or death that required a criminal investigation. *Id.* A copy of the letter is attached to his Sheriff Snaza's declaration as **Exhibit A**. As explained in the letter, the Sheriff believed it was in the best interest of the Sheriff's Office to limit the calls to which Mr. Bromm responded in order to maintain the integrity of any potential criminal investigation involving a death. *Id.* That was Sheriff Snaza' last substantive role in the matter.

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

**D. Coroner Warren McLeod's role.**

Warren McLeod is the elected Corner for Lewis County. McLeod Dec. at ¶ 3. Mr. McLeod's office is responsible for determining the cause and manner of reported deaths by conducting professional medicolegal death investigations while ensuring that everyone who has suffered a loss is treated with dignity, respect and compassion. *Id.* at ¶ 4. Professionalism, accountability, trust with the community, their partners in law enforcement, and the judiciary, and partnership with those involved in the process, is paramount to the Coroner's Office. *Id.*

The Coroner's Office is comprised of primarily two positions: (a) Removal Technicians who are responsible for going to scenes to remove and transport a decedent back to the Coroner's Office; and (b) Deputy Coroners who have an investigative role and go to the scene of the death to conduct a medicolegal death investigation to determine the cause and manner of death. *Id.* at ¶ 7. Both of these roles require significant professionalism, discretion, trust, and partnership with others as they have direct contact with the body, personal possessions on the body (like money) and the individuals experiencing loss, as well as law enforcement, who is responsible for the scene. *Id.*

Paul Bromm was a part-time, on-call Deputy Coroner. *Id.* at ¶ 9. His position involved investigations into natural and unnatural deaths, including complicated cases such as a homicides, accidental, undetermined, suicides or child deaths. *Id.* In



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

conducting an investigation, the Deputy Coroner worked closely with law enforcement agencies in Lewis County, conducting interviews with law enforcement, medical staff and the decedent's families, friends, or witnesses, to get a baseline series of events leading up to and what occurred after the death; documented the scene with photographs, paperwork, and scene sketches; located, marks, and documents evidence; and completed a head-to-toe physical examination on the decedent to locate and document any injuries, scars/marks or changes. *Id.*

When Mr. McLeod first learned that Charlie Kirk was shot by an assassin's bullet, he did not know who Charlie Kirk was. *Id.* at ¶ 12. He later learned that Mr. Bromm had posted disgusting, mocking, celebratory-type comments about Mr. Kirk's death, including a picture of Mr. Kirk the moment the bullet hit with the comment "FA + FO" (Fuck Around and Find Out), and to the effect that Charlie Kirk was a bad person and he was glad he is dead – showing that Mr. Bromm thought Mr. Kirk deserved to be killed and that the killing was funny to Mr. Bromm. *Id.* Mr. McLeod found Mr. Bromm's posts to be extraordinarily inappropriate, especially given that he was a Deputy Coroner charged with conducting unbiased investigations into people's deaths, yet he was publicly celebrating the death of another human being – a political figure who was apparently loved by many on one side of the aisle. *Id.*

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

Mr. McLeod was concerned about Mr. Bromm's posts being associated with his office because a photo of him had been posted wearing a shirt and hat, both marked with the Lewis County Coroner's Office patch. *Id.*

Mr. McLeod told Mr. Bromm to take down the post celebrating Mr. Kirk's death. *Id.* at ¶ 13. After doing so, however, Mr. McLeod came to believe that Mr. Bromm had a First Amendment right to post whatever he wanted and that he didn't have the authority to tell Mr. Bromm to remove it. Mr. McLeod called Mr. Bromm back and told him his new understanding: that he couldn't make Mr. Bromm remove his post. *Id.*

Mr. McLeod received multiple calls and emails from citizens complaining about Mr. Bromm's posts. *Id.* at ¶ 14. He responded to each one of them. *Id.* And Lewis County Prosecutor, Jonathan Meyer, sent Mr. McLeod his PID letter issued in relation to Mr. Bromm's posts regarding Charlie Kirk. *Id.* at ¶ 15.

Mr. McLeod believed that Mr. Bromm's posts called into question his ability to conduct unbiased death investigations, brought shame to his office, and broke trust with their partners in law enforcement. *Id.* at ¶ 16. Therefore, Mr. McLeod placed Mr. Bromm on paid administrative leave while he consulted with Human Resources and the civil side of the Prosecuting Attorney's Office about how to proceed. *Id.*

That same day, Lewis County Sheriff Robert Snaza called Mr. McLeod and told him that he didn't want Mr. Bromm to respond to any calls with the Sheriff's



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

Office regarding a death that was not natural – anything suspicious or a suicide, given the importance of the integrity of any potential criminal investigation involving death. *Id.* at ¶ 17. Mr. McLeod requested that the Sheriff put his position in writing. *Id.* Mr. McLeod did not in any way cause or pressure Sheriff Snaza to reach his position about Mr. Bromm. *Id.*

Mr. McLeod later received the letter from Sheriff Snaza, indicating that Mr. Bromm was not to respond to any calls with the Sheriff's Office regarding suspicious deaths and/or deaths that required a criminal investigation. *Id.* at ¶ 18. That same day, Mr. McLeod received an email from the Chief of Police of the City of Centralia, Andy Caldwell, requesting that Mr. Bromm not be dispatched without being accompanied by a supervisor to any investigation within the City of Centralia where the death may be connected in any way to a criminal act. *Id.* at ¶ 19.

Mr. McLeod wanted to terminate Mr. Bromm and ultimately came to understand that he could do so. *Id.* at ¶ 20. Among other things, Mr. Bromm's posts caused disruption to his office, threatened public trust and trust with their law enforcement partners, and showed bias to community members that liked Charlie Kirk and were shocked by his assassination. *Id.* at ¶ 23. The posts made Mr. Bromm stand out as unhinged, biased, and unreliable. *Id.* Therefore, Mr. Bromm was terminated on September 22, 2025. *Id.* at ¶ 22.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

As the elected Coroner, Mr. McLeod alone decided to terminate Mr. Bromm. *Id.* at ¶ 21. Prosecutor Meyer, Commissioner Swope and Sheriff Snaza had no role in the Coroner's decision to terminate Mr. Bromm. Meyer Dec. at ¶ 18; Swope Dec. at ¶ 10; Snaza Dec. at ¶ 16.

## III. ARGUMENT

### A. Defendant Meyer is entitled to absolute prosecutorial immunity.

A prosecutor's actions in meeting his *Brady* obligations are prosecutorial acts fully protected by absolute immunity. *See e.g. Jean v. Collins*, 221 F.3d 656, 661 (4th Cir. 2000) ("Prosecutors plainly enjoy absolute immunity in the exercise of their prosecutorial duties, of which the disclosure of *Brady* material to the defense is clearly one.") (*citing Kalina v. Fletcher*, 522 U.S. 118, 123-29, 118 S.Ct. 502 (1997); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 679 (9th Cir. 1984) ("An act or an omission concerning [the duty to disclose and preserve evidence under *Brady*] cannot be construed as only administrative or investigative; it too is necessarily related to [a prosecutor's] preparation to prosecute"); *Neri v. Cty. of Stanislaus Dist. Attorney's Office*, 2010 WL 3582575, at *8 (E.D. Cal. Sept. 9, 2010) ("[T]he decision of how one is placed on a *Brady* List, what materials are disclosed as *Brady* materials, and whether to have certain express criteria for a *Brady* List require knowledge of the law, would require review of the [prosecutor's] legal judgments, and would be intimately associated with the judicial phase of a criminal



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

prosecution.") (internal quotations omitted) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 347-48, 129 S.Ct. 855 (2009)).

The only action Defendant Meyer took regarding Mr. Bromm was to place him on the PID list and issue a PID letter because of his Charlie Kirk social media post. And he discussed that action with Mr. Bromm's boss, the Coroner, Defendant McLeod. He had no role in Mr. Bromm's termination. As the elected Prosecutor, Mr. Meyer has the sole duty and authority to place potential witnesses on the PID (Potential Impeachment Disclosure) list in order to comply with his *Brady* obligations under *Brady v. Maryland*, RCW 10.93.180, CrR 4.7(a)(3)[2], and his office's PID policy.

The Western District agrees that absolute immunity applies to *Brady* list decisions:

> **District courts in this Circuit addressing the issue of *Brady* Lists have found that prosecutors who made the decision to place officers on those lists and communicated those decisions were entitled to absolute immunity**. See *Neri*, 2010 WL 3582575, at * 5; *Walters v. Cty. of Maricopa*, Ariz, No. CV 04-1920-PHXNVW, 2006 WL 2456173, at *9 (D. Ariz. Aug. 22, 2006) ("**The decision to place [the plaintiff] on the Brady list and to communicate that decision, however, were acts for which these Defendants have absolute immunity**.") Similarly, the Ninth Circuit has found that prosecutors are entitled to absolute immunity when assessing

[2] "(a) Prosecuting Authority's Obligations. . . . (3) Except as otherwise provided by protective orders, the prosecuting authority shall disclose to defendant's lawyer **any material or information** within the prosecuting authority's knowledge **that tends to negate defendant's guilt as to the offense charged.**" (Emphasis added.)



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> witness credibility "even if that judgment is harsh, unfair or clouded by personal animus," when deciding whether to preserve or release evidence in accordance with *Brady*, **and when building information management systems where legal knowledge is required to assess what is included or excluded**. *See Roe v. City & Cty. of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997); *Ybarra*, 723 F.2d at 679 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)); *Cousins v. Lockyer*, 568 F.3d 1063, 1069 (9th Cir. 2009). Here, Mr. Roe is entitled to absolute immunity.

*Sampaga v. Snohomish Cnty., Corp*., NO. 16-01310-RAJ (W.D. Wash. June 29, 2017).

The Washington State Attorney General, Nick Brown, also agrees that *Brady* should be broadly applied and that absolute immunity applies to prosecutors' *Brady* decisions:

> The purpose of *Brady* is "to ensure that a miscarriage of justice does not occur[,]" *Bagley*, 473 U.S. at 675, and to preserve fair trials for criminal defendants, *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). As such, prosecutors are urged to err on the side of disclosure in close cases. *See Kyles*, 514 U.S. at 439 ("[A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. . . . This is as it should be." (Citation omitted.)); *Agurs*, 427 U.S. at 108 ("Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure."); *Ames v. Pierce County*, 194 Wn. App. 93, 117-18, 374 P.3d 228 (2016) ("It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure."). . . .

***



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> The case law discussed above makes this clear, and as a practical matter, a mistake in failing to disclose potential impeachment evidence can lead to serious negative consequences, including the violation of the defendant's rights, dismissal of charges, overturning a conviction, allegations of violating the Rules of Professional Conduct, or even a wrongful conviction. Such harms can seriously undermine the integrity of the criminal justice system and the public's trust in it. Meanwhile, Washington law does not recognize a law enforcement officer's right to removal from a *Brady* list. In any event, **a prosecutor's decision to disclose potential impeachment evidence will virtually always be protected by prosecutorial immunity, even if incorrect, because prosecutors in Washington enjoy absolute immunity for acts performed within the scope of traditional prosecutorial functions, like maintaining a *Brady* list. *See McCarthy v. County of Clark*, 193 Wn. App. 314, 337, 376 P.3d 1127 (2016) (a prosecutor's absolute immunity applies to actions within the scope of traditional prosecutorial functions); *Roe v. City & County of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997) ("a prosecutor's professional evaluation of a witness is entitled to absolute immunity even if that judgment is harsh, unfair or clouded by personal animus"); *Lane v. Marion Cnty. Dist. Att'y's Off.*, 310 Or. App. 296, 306-10, 486 P.3d 38 (2021) (noting that several federal district courts have concluded that a prosecutor's decision to place an officer on a *Brady* list is a prosecutorial function entitled to absolute immunity and suggesting that "*Brady* is the constitutional floor, not the ethical ceiling").**

**<u>Exhibit B</u>** to Meyer Dec. (Op. Att'y Gen. 2025 No. 2, at 2, 4-5 (Apr 18 2025)) (emphasis added).

For these reasons, Defendant Meyer is entitled to absolute prosecutorial immunity and all claims against him should be promptly dismissed, with prejudice.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

B. <u>Defendants Meyer, Snaza, Swope and McLeod are entitled to qualified immunity</u>.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*., *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is not "a mere defense from liability" but is immunity from being sued at all, whether qualified immunity exists should be decided "at the earliest possible stages of the litigation." *Pearson v. Callahan,* 555 U.S. 223, 231-32 (2009), *quoting Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (*per curiam*).

To determine whether a government official is shielded from liability by qualified immunity, the Court asks two questions: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan,* 555 U.S. at 232.

Taking the second prong first, a right is clearly established if it would be clear to a reasonable official that the individual's conduct was unlawful in the situation the defendant confronted. *McEntire v. Love*, No. 2:23-cv-679, 2023 U.S. Dist. LEXIS 163014, at *8 (S.D. Ohio Sep. 13, 2023) (citing *Yerkes v. Ohio State Highway Patrol*,



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

No. 22-3030, 2022 U.S. App. LEXIS 35260, at *11 (6th Cir. Dec. 19, 2022)). "Generally, case law from the United States Supreme Court, the Court of Appeals, or the highest state court is necessary to clearly establish a right." *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996) citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988). The law requires that,

> [T]hose decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir.1988).

As the Ninth Circuit held in *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022):

> Qualified immunity is proper unless the plaintiff can establish that "the [officers'] specific conduct violated clearly established federal law." *Sharp v. County of Orange* , 871 F.3d 901, 909 (9th Cir. 2017) (citations omitted). **To overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."** *Kisela v. Hughes*, ––– U.S. ––––, 138 S. Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (quotation omitted). **The plaintiff bears the burden of "point[ing] to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful.**" *Sharp*, 871 F.3d at 911.

(Emphasis added.)

As will be shown below, Plaintiff cannot meet his burden of proving this high standard and the Lewis County individual Defendants are entitled to



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

qualified immunity.

1. *Prosecuting Attorney Meyer is entitled to qualified immunity*.

As set forth above, Prosecuting Attorney Meyer's only substantive action relating to Mr. Bromm was issuing a PID and placing him on the PID list; the Prosecutor had no role in the Coroner's decision to terminate him and Mr. Meyer is entitled to absolute immunity for his PID letter.

He is also entitled to qualified immunity because there is no "existing precedent" establishing "beyond debate" that his actions regarding this *Brady* determination violated Mr. Bromm's clearly defined constitutional rights. *See Sharp*, 871 F.3d at 909 (qualified immunity is proper unless the plaintiff can establish that the "specific conduct violated clearly established federal law."). Instead, the opposite is true. The Lewis County Prosecutor's PID process was properly designed to comply with federal and state law and ethical standards, and Mr. Meyers's disclosure met those requirements and standards. For these reasons, Mr. Meyer is also entitled to qualified immunity.

2. *Sheriff Snaza is entitled to qualified immunity*.

Sheriff Snaza's only action regarding Mr. Bromm was communicating with the Coroner about Mr. Bromm no longer being permitted to respond to any calls with the Sheriff's Office regarding suspicious deaths and/or deaths that required a criminal investigation. He then followed that up with a letter memorializing that demand. The



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

Sheriff is, of course, in control of crime scenes in his county. For example, RCW 36.28.010 provides that:

> **The sheriff is the chief executive officer and conservator of the peace of the county**. In the execution of his or her office, he or she and his or her deputies: (1) Shall arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses . . . .

(Emphasis added.) And Sheriff Snaza determined that Mr. Bromm was not fit to be an investigator in, for example, murder investigations, as his posts could compromise the investigation and subsequent prosecution.

There is no case that says Sheriff Snaza's decision to keep Mr. Bromm from being involved in suspicious death investigations is "beyond debate" unconstitutional. *See Kisela,* 138 S. Ct. at 1152 ("To overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."). Therefore, Sheriff Snaza is entitled to qualified immunity.

3. *Commissioner Swope is entitled to qualified immunity*.

After seeing Rep. McEntire's post asking whether Mr. Bromm worked for the County, Commissioner Swope looked at Mr. Bromm's public Facebook page, saw his name in his bio, and saw the close-up pictures of him in his Lewis County Deputy Coroner uniform. The Commissioner then posted a reply to Rep. McEntire's post, confirming that Mr. Bromm was a County employee and stating his own personal and political opinions about Mr. Bromm's Charlie Kirk post.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

There is no existing precedent establishing "beyond debate" that Commissioner Swope violated Mr. Bromm's clearly defined constitutional rights. Instead, the opposite is true – Commissioner Swope has vast First Amendment rights to make that post. *See e.g., Bond v. Floyd*, 385 U.S. 116, 136, 87 S.Ct. 339 (1966):

> The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. The central commitment of the First Amendment, as summarized in the opinion of the Court in *New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964), is that "debate on public issues should be uninhibited, robust, and wide-open."

And, when an elected official speaks, he exercises not only his First Amendment rights, but also the constitutional rights of the people that voted him into office:

> Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates by the person they have elected to represent them. *Id*. at 136-37, 87 S.Ct. at 349-50; *see also Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S.Ct. 209, 215-16, 13 L.Ed.2d 125 (1964) ("speech concerning public affairs is more than self-expression; it is the essence of self-government").

*Miller v. Town of Hull*, 878 F.2d 523, 532 (1st Cir. 1989).



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

There is no "clearly established" law establishing that it is "beyond debate" that Commissioner Swope violated Mr. Bromm's constitutional rights. In fact, the opposite is true. Therefore, Commissioner Swope is entitled to qualified immunity.

4. *Coroner McLeod is entitled to qualified immunity*.

Coroner McLeod terminated Mr. Bromm as a result of his posts and his identifying himself as an employee of the Coroner's Office, concluding, among other things, that they disrupted the operation of the Coroner's Office, and threatened their trust with law enforcement and the community. There is no existing precedent establishing "beyond debate" that Mr. McLeod violated Mr. Bromm's clearly defined constitutional rights by terminating him. Instead, the on-point case law then in effect support the lawfulness of the termination. For example, on August 15, 2025, 27 days before Mr. Bromm's posts celebrating and mocking the murder of Charlie Kirk, the 1st Circuit issued its opinion in *Hussey v. City of Cambridge*, 149 F.4th 57 (1st Cir. 2025).[3] That case involved a police officer being suspended for making off-duty and private and offensive posts about George Floyd. In upholding the discipline, the Court undertook the following analysis:

//

[3] This opinion was withdrawn on January 28, 2026 (which is irrelevant to the qualified immunity analysis, which looks at the law at the time of the act), and the case set for en bac review. *Hussey v. City of Cambridge*, 165 F.4th 638 (1st Cir. 2026).



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> We use a three-part test "to balance the competing interests of the government employer and the employee." *MacRae v. Mattos*, 106 F.4th 122, 133 (1st Cir. 2024). At step one, we assess whether the employee "spoke as a citizen on a matter of public concern." *Gilbert v. City of Chicopee*, 915 F.3d 74, 82 (1st Cir. 2019) (quoting *Curran*, 509 F.3d at 45). 'In making this determination, we ask whether the 'speech' underlying [the employee's] claim was made 'pursuant to [the employee's] official duties.'" Id. (quoting *Garcetti*, 547 U.S. at 421). If so, the employee has no First Amendment claim because, "generally, '[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties.'" *Id.* (alteration in original) (quoting *Garcetti*, 547 U.S. at 421-22). If we instead conclude that "the employee did speak as a citizen on a matter of public concern," we move to step two. *MacRae*, 106 F.4th at 133.
>
> At step two, we must determine "whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently." *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004). This assessment is commonly referred to as the *Pickering* balancing test. *See Pickering v. Bd. of Educ*., 391 U.S. 563, 568 (1968); *see also, e.g., Mihos*, 358 F.3d at 103. If the balance "tip[s] in the employer's favor, the inquiry ends there, and the employee's speech is not constitutionally protected." *MacRae*, 106 F.4th at 133. If, however, the balancing test favors the employee, "the employee's speech 'is protected speech under the First Amendment' and '[t]he analysis then proceeds to the third step.'" *Id.* (alteration in original) (quoting *Ciarametaro v. City of Gloucester*, 87 F.4th 83, 88 (1st Cir. 2023)).
>
> At the third step, we ask "whether the protected speech was a 'substantial or motivating factor in the adverse employment decision.'" *Ciaramentaro*, 87 F.4th at 88 (quoting *Curran*, 509 F.3d at 45). Even if the test favors the employee at

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> all three steps, the employer "has the opportunity 'to prove by a preponderance of evidence that "it would have reached the same decision regarding the adverse employment event even in the absence of the protected conduct.''" *MacRae*, 106 F.4th at 133 (quoting *Stuart v. City of Framingham*, 989 F.3d 29, 35 (1st Cir. 2021)).

*Hussey* at 65-66.

The Court applied the first step and determined that the parties agree that Hussey spoke as a citizen on a matter of public concern. *Id.* at 66.

The Court then applied the second step and ruled as follows:

> As indicated, but stated more specifically, at the second step of our three-step inquiry, we must "attempt[] to 'balance the value of an employee's speech -- both the employee's own interests and the public's interest in the information the employee seeks to impart -- against the employer's legitimate government interest in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission.'" , , , , **In conducting this inquiry, we recognize that "the stronger the First Amendment interests in the speech, the stronger the justification the employer must have."** *MacRae*, 106 F.4th at 136 (quoting *Curran*, 509 F.3d at 48). . . .
>
> **The *Pickering* balancing inquiry is a question of law for the court, but "it is also a 'fact-intensive' inquiry."** *MacRae*, 106 F.4th at 136 (quoting *Fabiano v. Hopkins*, 352 F.3d 447, 457 (1st Cir. 2003)). In other words, where the material facts are undisputed, we may determine the outcome of the *Pickering* inquiry as a matter of law at the summary judgment stage. . . .
>
> **Normally, considering the above, Hussey's and the public's interest in Hussey's speech would weigh heavily in his favor because, as the Supreme Court "has frequently reaffirmed[,] . . . speech on public issues occupies the**



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> **'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection."** . . . . **However, we have recognized that speech commenting on public "issues in a mocking, derogatory, and disparaging manner" is accorded less weight in the balancing test.** *MacRae*, 106 F.4th at 137; *see also Curran*, 509 F.3d at 49 ("Speech done in a vulgar, insulting, and defiant manner is entitled to less weight in the Pickering balance."). . . .
>
> **[W]e conclude, as did the district court, that his speech is not entitled to "special protection."** *Connick*, 461 U.S. at 145. Hussey's post referred to George Floyd as "a career criminal," "a thief," and a "druggie" and suggested that "the future" of a country that would honor Floyd by naming legislation after him "is bleak at best." This post -- because of the words Hussey chose -- disparaged both George Floyd and those who rallied in response to the horrific circumstances of his death.

*Id.* at 66-69 (some citations omitted) (emphasis added).

In balancing Hussey's "mocking, derogatory, and disparaging" speech with the Department's interests, the Court found as follows:

> **The Department has an "interest in the effective and efficient fulfillment of its responsibilities to the public."** *Id.* at 150. **And a government employer has a "strong interest in 'preventing unnecessary disruptions and inefficiencies in carrying out its public service mission.'"** *MacRae*, 106 F.4th at 137 (*quoting Díaz-Bigio v. Santini*, 652 F.3d 45, 53 (1st Cir. 2011)).
>
> **Moreover, the government employer's interest in regulating speech to prevent disruption is "heighten[ed]" when the employer is a law enforcement agency due to "the special degree of trust and discipline required in" that context**. . . . . *Lalowski v. City of Des Plaines*, 789 F.3d 784, 792 (7th Cir. 2015) ("[D]eference to the employer's judgment regarding the



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> disruptive nature of an employee's speech is especially important in the context of law enforcement." . . .
>
> **We see no reason to depart from our past decisions by requiring government employers to wait for actual disruptions to their operations before disciplining employees for their speech. . . . Accordingly, we reaffirm our existing application of the *Pickering* balancing test** . . . .
>
> [T]he Department maintains that Hussey's suspension was motivated by its concern that Hussey's post would undermine the Department's relationship of trust with the public**. As multiple circuits have recognized, "[p]olice departments . . . have a strong interest in maintaining a relationship of trust and confidence with the communities they serve."** *Hernandez v. City of Phoenix*, 43 F.4th 966, 981 (9th Cir. 2022); *see also Lalowski*, 789 F.3d at 792 (noting that police officers have a "responsibilit[y] . . . to foster a relationship of trust and respect with the public"). . . .
>
> **In sum, there are no genuine disputes of material fact that prevent us from reaching the following conclusions**. First, while Hussey's and the public's First Amendment interests in Hussey's speech are significant, **the speech's value was modestly diminished due to its "mocking, derogatory, and disparaging" nature.** *MacRae*, 106 F.4th at 137. Second, **the Department's prediction that Hussey's post could undermine its relationship of trust with the community was reasonable. Third, there is no evidence suggesting that the Department's decision to discipline him was driven by anything other than that reasonable prediction.** Given the importance of that trusting relationship to the Department's public service mission, we hold that the Department's interest outweighs Hussey's in the Pickering balancing test. Therefore, as explained above, our inquiry ends here. We affirm.

*Id.* at 74-75 (some citations omitted) (emphasis added); *see also MacRae v.*



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

*Matto*, 106 F.4th 122 (1st Cir. 2024), *cert. denied*, 145 S.Ct. 2617 (2025) (teacher lawfully terminated for personal posts that became public based on school district's concerns about the timing of posts, the media attention they received and the potential disruption to the learning environment.)[4]

Therefore, the "clearly established law" at the time shows that Mr. Bromm's termination was constitutional; it certainly does not show "beyond debate" that it was not. For these reasons, Coroner McLeod is entitled to qualified immunity.

C. Plaintiff's "doxing" claim against Commissioner Swope fails.

Plaintiff's "doxing" claim under RCW 4.24.792 is based on Commissioner Swope's single repost confirming that Mr. Bromm worked for the Lewis County Coroner's Office (which he learned from his review of Mr. Bromm's public Facebook), and making political comments for his constituents about Bromm's posts. Bromm makes this claim even though he had publicly posted his name and these pictures.

RCW 4.24.792 has three sections explicitly providing that it cannot be used to violate a person's free speech rights:

> (2) A person does not violate this section by: . . .
>
> (b) Providing personal identifying information in connection with an exercise of the right of freedom of speech or of the

[4] The 1st Circuit's opinion in *MacRae* was published on June 28, 2024, about 15 months before Mr. Bromm's termination. Certiorari was denied on June 30, 2025, less than 3 months before his termination.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Washington state Constitution; . . .
>
> (4) Nothing in this section shall be construed in any manner to: . . .
>
> (c) Prohibit any activity protected under the Constitution of the United States or the Washington state Constitution. . . .
>
> (7) The legislature does not intend this section to allow, and this section shall not allow, actions to be brought for constitutionally protected activity.

Commissioner Swope had a right under the First Amendment and Article I, Section 5 of the Washington State Constitution to respond to Rep. McEntire's public question about Mr. Bromm's employment and to re-post Mr. Bromm's own public posts and comments. As shown by Bromm's public posts, he was clearly a Deputy Coroner for Lewis County and he posted vile celebrations mocking a person being shot in the head. Commissioner Swope's constituents had a right to know what their government employees were up to, the Commissioner had a right to let them know, and he had a right to respond to Rep. McEntire's questions. Mr. Bromm's "doxing" claim is barred by the First Amendment and Article I, Section 5 of the Washington State Constitution.

//

//

//



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

D. Individual Lewis County Defendants are entitled to an award of their reasonable attorney's fees because the claims against them are "frivolous, unreasonable, or without foundation."

Individual Lewis County Defendants are entitled to an award of attorney's fees if the following standard is met:

> In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

*Christiansburg Garment Co v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421-22, 98 S.Ct. 694 (1978).

This rule applies to 42 USC Section 1983/1988 cases. *See e.g., Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532 (E.D. Pa. 1982). ("42 U.S.C. § 1988 allows the court, in its discretion, to award a reasonable attorney's fee as a part of the costs to a prevailing party in any action to enforce certain provisions of the civil rights laws, including 42 U.S.C. §§ 1983 and 1985").

These fees should be awarded here. First, as set forth above, the authorities strongly support absolute immunity for Meyer's prosecutorial acts regarding *Brady*. Second, there is no "clearly established" case law showing that it is "beyond debate" that the actions of Meyer, Swope, McLeod or Snaza were unconstitutional. Therefore, these Defendants should be awarded their reasonable attorney's because the claims against them are "frivolous, unreasonable, or without foundation."



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's claims against Defendants Meyer, Swope, Snaza and McLeod should be dismissed with prejudice and they should be awarded their reasonable attorney's fees.

I certify that this memorandum contains 7,023 words, in compliance with the Local Civil Rules.

DATED this 6th day of July, 2026

By: */s Elena C. Bundy*
Elena C. Bundy, WSBA #38836
Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
Phone: (206) 518-3021
E-mail: elena@bundylawgroup.com
*Attorney for Lewis County Defendants*

By: */s Kristofer J. Bundy*
Kristofer J. Bundy, WSBA #19840
Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
Phone: (206) 372-3627
E-mail: kris@bundylawgroup.com
*Attorney for Lewis County Defendants*