# LEWIS COUNTY PROSECUTING ATTORNEY POLICY

# FOR

# POTENTIAL IMPEACHMENT DISCLOSURE

ADOPTED:

June ____, 2022

## PREAMBLE

This policy was prepared, in large part, by the Best Practices Committee of the Washington Association of Prosecuting Attorneys. The goal of the committee was to create a uniform, robust policy, concerning the disclosure of potential impeachment information ("Potential Impeachment Disclosure" or "PIO") for use by every prosecutor's office in the State of Washington. RCW 10.93.180 requires each county prosecutor to develop and adopt a written protocol addressing potential impeachment disclosures no later than July 1, 2022.

The committee understands that each county prosecutor's office has existing policies, practices and procedures concerning PIO. These were developed in the unique environment of each office, considering many factors, including resource availability, technology, historical practices, and individual experiences derived from case work.
While the model policy is intended to be uniform, the committee intended it to also be flexible so that adjustments can be made that accommodate the environment and culture of individual prosecutor's offices. The goal of the committee was to develop a broadly applicable policy framework which complies with the relevant legal mandates.

This Policy reflects the Model Policy established by the Best Practices Committee with modifications to make it applicable to the Lewis County Prosecutor's Office and the law enforcement agencies operating within Lewis County. For clarity, the Model Policy is attached hereto as Attachment A.

June ___, 2022

______________________________
Jonathan L. Meyer,
Lewis County Prosecutor

## I. LEGAL AUTHORITIES

In representing the State of Washington, prosecuting attorneys function as ministers of justice. Prosecuting attorneys preserve the integrity of the criminal justice system in part by protecting a charged defendant's due process rights to a fair trial.

This discussion of the primary PIO legal authorities is not intended to be a comprehensive analysis of all prosecutorial disclosure obligations. It provides a general framework which informs the guidelines and processes included in this model policy.

Prosecutors have an affirmative duty to disclose to a charged defendant exculpatory information and potential impeachment information about prosecution witnesses. There are three primary sources of specific disclosure requirements.

- The Due Process clauses of the federal and state constitutions require prosecutors to disclose exculpatory information to criminal defendants, including information and evidence tending to impeach prosecution witnesses.

- Criminal Rule 4.7(a)(3) states prosecutors "shall disclose to defendant's counsel any material or information within the prosecuting attorney's knowledge which tends to negate defendant's guilt as to the offense charged."

- Rule of Professional Conduct 3.8(d) states that a prosecutor in a criminal case shall "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense .. "

The constitutional Due Process requirement for disclosure of exculpatory evidence was set out in *Brady v. Maryland*, 373 U.S. 83 (1963). This requirement has been explained and modified by numerous subsequent cases. Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitely*, 514 U.S. 419 (1995). The Due Process disclosure requirement includes impeachment information or evidence that could be used to impeach the credibility of a prosecution witness. *United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States,* 405 U.S. 150 (1972).

*Kyles v. Whitley* cautioned prosecutors to interpret the duty of disclosure expansively:

> [A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative...of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done."... And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. The prudence of the careful prosecutor should not therefore be discouraged.

*Kyles v. Whitley,* 514 U.S. at 439-40 (1995) (internal citations omitted). *See, also, United States v. Agurs,* 427 U.S. 97 (1985) ("Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.")

Washington caselaw describes the prosecutor's duty equally expansively. "It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure." *Ames v. Pierce County*, 194 Wn. App. 93, 117-18 (2016).

As indicated above, independent of the constitutional due process requirement, prosecutors are also subject to court rules and professional practice rule obligations related to PIO. Prosecutors are duty bound to comply with those requirements as well. Criminal Rule 4.7(a)(3); RPC 3.8(d). Violations of those provisions can lead to adverse legal consequences, including vacating convictions and findings of attorney misconduct.

Recent legislative enactments have added to the obligations of prosecutors regarding PIO. See Laws of 2021, Ch. 322. Each county prosecutor must adopt a written protocol concerning PIO and must do so in consultation with law enforcement agencies. RCW 10.93.180(1). This model policy is intended to facilitate compliance with these legislative requirements.

## II. LAW ENFORCEMENT AND GOVERNMENT AGENCY RESPONSIBILITIES

1. As part of the "prosecution team," law enforcement and other related government agencies must inform the PIO Committee in the Lewis County Prosecutor's Attorney's Office (PAO) of potentially impeaching or exculpatory information related to their employees.

   At a minimum, law enforcement agencies shall provide written notice to the PIO Committee of the following:

   a. Sustained findings or completed investigations of misconduct involving dishonesty or false statements, either written or oral.

   b. Sustained findings or completed investigations of biased policing, racial profiling, malicious harassment, or any other conduct that suggests bias against a class of people (e.g. race, ethnicity, age, sexual orientation, gender, disability, economic status, or other personal characteristics).

   c. Criminal convictions.

   d. For witnesses testifying as an expert, information relating to confirmed performance errors in the course of their employment that resulted in corrective action that could be used to impeach the witness's conclusions, opinions or other testimony.

   e. The fact that a law enforcement officer has been placed on a PIO List in another jurisdiction.

   f. Pending investigations of any conduct described in "a" through "e" above.

2. Statewide government agencies employing recurring non-law enforcement government witnesses, such as forensic scientists or other experts, shall provide the potential impeachment material identified in Section 1 above to the Washington Association of Prosecuting Attorneys, which shall promptly disseminate the notice to all prosecuting attorney offices.

If such an agency is aware that one of its employees has been placed on the PIO List of one or more prosecuting attorneys, the agency shall notify the Washington Association of Prosecuting Attorneys, which shall promptly disseminate the notice to all prosecuting attorney offices.

3. When a laboratory or agency that performs forensic examinations or analyses for use by prosecutors in criminal cases becomes aware of a forensic process or procedure that may have led to systemic errors in the work of the agency, the laboratory or agency shall promptly notify the Washington Association of Prosecuting Attorneys, which shall promptly disseminate the notice to all prosecuting attorney offices.

4. If a law enforcement or other government agency has concerns that conduct of an employee not specifically described in this Section II may be potential impeachment information, the law enforcement agency should consult with the PIO Committee of the PAO to determine if the information should be provided to the PIO Committee.

5. If, after providing potential impeachment material to the PIO Committee, new evidence comes to light or a sustained finding is later overturned regarding a potential witness, the agency shall inform the PIO Committee so it can decide whether the recurring witness should be removed from the PIO list or if other modifications need to be made.

6. Notwithstanding any finding by a law enforcement agency, the PIO Committee reserves the right to add or maintain witnesses on the PIO List as necessary to comply with its constitutional, statutory, and rule-based PIO obligations.

7. Negotiated disciplinary sanctions, including, but not limited to, resignation in lieu of termination, do not alter any law enforcement agency's duty to identify and disclose PIO material.

8. Collective bargaining agreements do not alter any law enforcement agency's duty to identify and disclose PIO material. Collective bargaining agreements do not alter the PAO's duty to add or remove a witness from a PIO List.

9. A law enforcement agency, or government agency employing recurring government witnesses, such as forensic scientists, that receives information alleging any of the conduct set forth in Section 1 above shall investigate or arrange for the investigation of the allegations.

10. A law enforcement or other agency employing potential recurring witnesses shall notify the PIO Committee upon initiation of any investigation regarding alleged conduct as described above, and at the conclusion of any such investigation. This should be done regardless of whether the agency determines that the allegations were founded or sustained.

11. Notification to the PIO Committee of sustained findings or completed investigations or pending investigations should include a brief, substantive summary of the allegations. The entire investigative file should not be provided to the PIO Committee unless specifically requested. Prior to transmittal, consult with the responsible prosecuting attorney's office for further clarification.

12. Because the PAO must err on the side of disclosure, the determination by the PIO Committee to add an officer to the PIO List does not imply a conclusion that the officer is not credible as a witness. It is critical to differentiate between *disclosure* requirements and the rules of evidence governing *admissibility.* The mere fact of placement on the PIO List and resulting required disclosure says nothing about the admissibility of the underlying material at trial or other hearings.

13. Because the PAO is not an investigatory agency, it relies on law enforcement and other agencies to conduct thorough and objective investigations into allegations of officer or employee misconduct, and to advise the PIO Committee of the results of those investigations. Failure to conduct such an investigation, where warranted, may be a violation of the State's duty to identify and disclose PIO material, and may have adverse consequences for the agency, the PAO, and prosecutions.

14. The PAO has an obligation to ensure that investigations into misconduct are completed, regardless of the employment status of an officer or recurring witness. For this reason, law enforcement agencies must complete an investigation even if the officer has been terminated or has otherwise left employment with the agency.

15. In relying on law enforcement agencies to conduct investigations into allegations of officer misconduct, the Prosecuting Attorney's Office acknowledges and respects the internal investigation (IA) standards followed by law enforcement agencies. The IA process allows for thorough investigation of allegations of misconduct and affords officers due process. This Policy does not seek to expand or modify that process or those rights. Accordingly, the PAO will typically base its PIO determination solely upon the record developed during the IA process. The ultimate PIO determination, however, will be made independent of the result of the IA investigation.

16. In some instances, alleged misconduct may come to the attention of the PAO or a court before it is known by the officer's or witness's employing agency. In those instances, the PAO will contact the employing agency to request that they conduct a complete investigation of the alleged misconduct. The PAO may also refer the matter directly to the PIO Committee.

## III. PROSECUTOR RESPONSIBILITIES

1. Prosecutors bear the ultimate legal responsibility to identify and disclose PIO (Potential Impeachment Disclosure) material to criminal defendants. Failure to do so can result in convictions being overturned or innocent people being convicted because a trial did not provide due process. Failure to comply with constitutional, statutory and rule- based PIO duties may also result in the imposition of penalties and sanctions upon prosecutors and their offices.

2. The Prosecuting Attorney shall create a Potential Impeachment Disclosure Committee/Designee (PIO Committee) consisting of experienced prosecutor(s) with a sound understanding of PIO requirements.

   - In the Lewis County Prosecutor’s Office, the PIO Committee consists of:
     - The elected Prosecuting Attorney (Currently Jonathan L. Meyer);
     - The Chief Criminal Deputy (Currently William J. Halstead); and
     - The Criminal Appellate Deputy (Currently Sara I. Beigh).

3. PIO review will be conducted by the PIO Committee and, when warranted, the Prosecuting Attorney. The PIO Committee shall be responsible to determine whether a law enforcement officer or other recurring witness has engaged in conduct that must be disclosed to a charged defendant because it constitutes information that may be favorable to the defense. Regardless of the final PIO determination, the PIO Committee shall notify the agency and the officer/employee of its determination.

4. The Prosecuting Attorney shall maintain a Potential Impeachment Disclosure List (PIO List) containing the names of all potentially recurring witnesses whom the PIO Committee has determined engaged in conduct that must be disclosed because it may be favorable to the defense.

5. The PIO List shall be accessible to all staff in the PAO. The PIO List shall contain, at a minimum, sufficient information to provide notice of the reason for inclusion on the PIO List.

6. Officers with sustained findings of misconduct (as determined by a law enforcement agency) involving dishonesty, bias, or criminal convictions shall be added to the PIO List without additional review by the PIO Committee. If the law enforcement agency is aware of new information or if the finding of misconduct is later overturned by the law enforcement agency, the PIO Committee shall consider the new information or revised finding and determine whether the officer should be removed from the PIO list or if other modifications should be made.

7. In cases involving pending investigations of conduct described above, the officer or agency employee will be added to the PIO List and categorized as "Pending PIO" until the investigation is concluded. Upon receipt and review of the completed investigation, the "Pending PIO" designation will be modified consistent with the final PIO determination.

8. If a charged case involves law enforcement witnesses from another jurisdiction, the assigned deputy prosecuting attorney shall contact the prosecutor from that jurisdiction to determine if the witness is on

a PIO List and, if so, immediately notify the PIO Committee of the deputy prosecuting attorney's office. Such witnesses shall be added to the PIO List without further review by the PIO Committee.

9. If the PIO Committee has placed an officer or other potential witness on the PIO List, notice of the inclusion on the List shall be provided to the defense in all pending and future cases in which the officer or other potential witness is involved. This provision applies to both final determinations and "Pending PIO" determinations. The disclosure to the defense shall provide notice of the basis for inclusion on the PIO List, and whether it is a pending or final determination.

10. It shall be the responsibility of the deputy prosecuting attorney assigned to a case to comply with the constitutional requirements and court rules underlying this policy regarding any potential PIO issues involving any government witness involved in the criminal investigation (not just those who are going to be subpoenaed).

11. Where alleged misconduct comes to the attention of the PAO or a court before it is known by the officer's or witness's employing agency, the knowledgeable deputy prosecutor or staff person shall promptly notify the PIO Committee. The PIO Committee shall promptly contact the employing agency and request that they conduct a complete investigation of the alleged misconduct. The PIO Committee may also consider the matter without further investigation.

12. Deputy prosecutors should determine whether PIO information related to a case exists at the initial review of the case, and at any time additional witnesses are made known to the PAO.

13. The Prosecuting Attorney shall develop and adopt procedures that ensure all PIO information is disclosed to defendants in a prompt and timely manner in every case where the witness had any involvement.

14. This policy is intended for the guidance of the Prosecuting Attorney's Office and law enforcement agencies. It may be modified or abrogated by the Prosecuting Attorney at any time. Exceptions may also be authorized by the elected Prosecuting Attorney or his designee.

15. These guidelines do not confer legal rights on any individual or entity. Failure to follow these guidelines, in and of itself, does not create a basis to challenge any order or judgment in a criminal case.