# ATTORNEY, PROSECUTING—LAW ENFORCEMENT OFFICERS—Whether The Name Of A Law Enforcement Officer May Be Removed From A Potential Impeachment Disclosure List

AGO 2025 No. 2 - Apr 18 2025

*Attorney General Nick Brown*

**ATTORNEY, PROSECUTING—LAW ENFORCEMENT OFFICERS—Whether The Name Of A Law Enforcement Officer May Be Removed From A Potential Impeachment Disclosure List**

There is no authority for removing names of law enforcement officers from a *Brady* list based simply on the passage of time. Whether other circumstances might justify removal from a *Brady* list is a fact-specific inquiry not susceptible to an across-the-board answer. But case law makes clear that prosecutors should err on the side of disclosure in any case in which they are unsure.

April 18, 2025

The Honorable Gregory M. Banks

Island County Prosecuting Attorney

PO Box 5000

Coupeville, WA 98239

Cite As:

AGO 2025 No. 2

Dear Prosecutor Banks:

By letter previously acknowledged, you have requested our opinion on the following question:

**Once a prosecutor adds a law enforcement officer's name to a list of potential impeachment disclosures, under what circumstances may the prosecutor remove the officer's name from that list?**

**BRIEF ANSWER**

The federal and state constitutions as well as court and ethical rules require prosecutors to disclose evidence that is favorable to someone accused of a criminal offense, including potential impeachment evidence that may cast doubt on the credibility of a potential witness for the government. The case law strongly encourages prosecutors to make disclosures even in cases where the obligation to do so is debatable. For that reason, a model policy adopted by the Washington Association of Prosecuting Attorneys properly urges disclosure when a prosecutor is unsure as to their duty. *See* Washington Association

of Prosecuting Attorneys, *Model Policy for Washington Prosecutors for Potential Impeachment Disclosure* 3-4 (June 17, 2022) (*Model Policy*).[1] We urge the same. Once prosecutors know of information or allegations about a law enforcement officer that constitutes potential impeachment evidence, we find no authority to

*[original page 1]*

suggest that the mere passage of time relieves them of the obligation to disclose that information to criminal defendants.[2]

The more difficult question is whether the disclosure obligation goes away if the factual basis for the potential impeachment evidence is later called into question, e.g., if an officer was accused of misconduct but later cleared of wrongdoing in whole or in part. There is no Washington or federal authority addressing this scenario, and it is impossible to give an across-the-board answer, because such decisions would depend on the specific facts of the case. Prosecutors will have to make careful, difficult assessments in such cases. In Washington, courts have not recognized a legal right that would entitle officers to removal from a *Brady* list, whereas an incorrect removal presents risks of constitutional violations and could lead to a case being dismissed or a conviction overturned.

**BACKGROUND**

Prosecutors have an obligation to disclose to criminal defendants information that could be favorable to them and is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This obligation is rooted in the fundamental right to a fair trial. *Id.* at 86-87. Favorable information includes both exculpatory evidence and evidence that can be used to impeach government witnesses, such as law enforcement officers. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

"*Brady* lists"[3] originated from this disclosure obligation. Rachel Moran, *Brady Lists*, 107 Minn. L. Rev. 657, 659 (2022). Prosecutors often maintain these lists to identify government witnesses with histories of misconduct or other issues that could impact the witness's credibility. *Id*. at 658; *State v. Stotts*, 26 Wn. App. 2d 154, 158 n.1, 527 P.3d 842 (2023). Not all jurisdictions around the country require *Brady* lists, and prosecutorial practices around maintaining and using *Brady* lists vary widely. Moran, 107 Minn. L. Rev. at 659-60.

In 2021, the Washington Legislature passed, and the governor signed, Substitute H.B. 1088, 67th Leg., Reg. Sess. (Wash. 2021),[4] requiring each county prosecutor to "develop and adopt a written protocol addressing potential impeachment disclosures pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent case law." SHB 1088, § 1 (*codified as* RCW 10.93.180(1)(a)). The bill specified that the protocols address, among other things, "under what circumstances an officer's information or name may be removed from any list of potential impeachment disclosures." SHB 1088, § 1 (*codified as* RCW 10.93.180(1)(a)(iii)).

*[original page 2]*

To facilitate compliance with Substitute H.B. 1088, the Best Practices Committee of the Washington Association of Prosecuting Attorneys adopted a model policy about the disclosure of potential impeachment information. *See Model Policy* at 2. The *Model Policy* outlines the responsibilities of both law enforcement agencies and prosecutors. The committee's goal was to develop a broadly applicable policy framework that complies with the relevant legal mandates, while also allowing for flexibility for individual prosecutors' offices. *Model Policy* at 2.

**ANALYSIS**

We begin our analysis by describing the basic requirements of *Brady* and cases following it. We then describe the *Model Policy* developed by the Washington Association of Prosecuting Attorneys to guide Washington prosecutors in implementing *Brady*. Finally, we consider your question about the removal of names from a *Brady* list.

The United States Supreme Court held in *Brady* that a state violates a defendant's right to due process under the Fourteenth Amendment if it withholds evidence that is favorable to the accused and is material either to guilt or punishment. *Brady*, 373 U.S. at 86-87. Evidence is "material" within the meaning of *Brady* when there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* A prosecutor's withholding of favorable material evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

In subsequent cases, the Court made clear that *Brady*'s holding extends to evidence affecting a government witness's credibility, often called impeachment evidence. *Bagley*, 473 U.S. at 676; *Giglio*, 405 U.S. at 154. It also made clear that prosecutors have an affirmative obligation to disclose such evidence regardless of whether defense counsel specifically requests it. *Bagley*, 473 U.S. at 682; *United States v. Agurs*, 427 U.S. 97, 110 (1976). Additionally, it held that prosecutors have an obligation to learn of any information favorable to the defense that is known to others acting on the government's behalf in a case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

The purpose of *Brady* is "to ensure that a miscarriage of justice does not occur[,]" *Bagley*, 473 U.S. at 675, and to preserve fair trials for criminal defendants, *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). As such, prosecutors are urged to err on the side of disclosure in close cases. *See Kyles*, 514 U.S. at 439 ("[A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. . . . This is as it should be." (Citation omitted.)); *Agurs*, 427 U.S. at 108 ("Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure."); *Ames v. Pierce County*, 194 Wn. App. 93, 117-18, 374 P.3d 228 (2016) ("It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure.").

*[original page 3]*

In addition to due process requirements, court rules and ethical rules require prosecutors to disclose information favorable to the defendant. Under Criminal Rule 4.7(a)(3), prosecutors must disclose to the defendant's counsel "any material or information within the prosecuting attorney's knowledge that tends to negate defendant's guilt as to the offense charged." Under Rule of Professional Conduct 3.8(d), prosecutors must, among other things, "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all mitigating information known to the prosecutor . . . ." A prosecutor's obligation to disclose exculpatory information extends from pre-trial to post conviction. *In re Pers. Restraint Petition of Gentry*, 137 Wn.2d 378, 397 n.9, 972 P.2d 1250 (1999).

In 2022, following the enactment of Substitute H.B. 1088, the Washington Association of Prosecuting Attorneys adopted the *Model Policy*, which provides "best practices" guidance to Washington prosecutors concerning potential impeachment information. *Model Policy* at 2. In that context, the *Model Policy* instructs prosecuting attorneys to create a Potential Impeachment Disclosure Committee (PID Committee) and to maintain a *Brady* list. *Id.* at 9, Nos. 2, 4. It states that prosecutors should include on the list "the names of all potentially recurring witnesses whom the PID Committee has determined engaged in conduct that must be disclosed because it may be favorable to the defense." *Id.* at 9, No. 4. Prosecutors should also include, without any need for review by the PID Committee, officers with sustained findings of misconduct (as determined by a law enforcement agency) involving dishonesty, bias, or criminal convictions as well as officers on *Brady* lists in other jurisdictions. *Id.* at 9-10, Nos. 6, 8. Additionally, prosecutors should include officers with pending investigations and should categorize those officers as "Pending PID" while the investigations are in progress. *Id.* at 10, No. 7.

The *Model Policy* also offers some guidance about what to do once an officer is on the *Brady* list. With respect to officers with sustained findings of misconduct, if either new information comes to light or a finding of misconduct is later overturned by the law enforcement agency, the *Model Policy* says that the PID Committee "shall consider the new

information or revised finding and determine whether the officer should be removed from the [*Brady*] list or if other modifications should be made." *Model Policy* at 9, No. 6. But the *Model Policy* does not provide any insight into how the PID Committee is to evaluate the new information or what circumstances might warrant modification or removal from a *Brady* list.

With respect to an officer with a "Pending PID" status, the *Model Policy* states that the "Pending PID" designation "will be modified consistent with the final PID determination" upon receipt and review of the completed investigation. *Model Policy* at 10, No. 7. But similarly, the *Model Policy* does not explicitly advise as to the *way* in which the prosecutor should modify the designation. Clearly, if the investigation concludes that the charges are sustained then the "pending" designation should be removed and the officer's name should remain on the list. If the charge is not sustained, however, the *Model Policy* does not say whether an officer's name should be removed; instead, it specifies that the PID Committee should make its own determination

*[original page 4]*

about what to do "to comply with its constitutional, statutory, and rule-based PID obligations." *See Model Policy* at 6, No. 6; *see also id.* at 10, No. 9 (describing the list as including final and pending determinations, without mentioning a category where an investigation cleared the officer of wrongdoing).

Accordingly, the *Model Policy* does not explicitly answer the question you raise here. You ask: Once a prosecutor adds an officer's name to a *Brady* list because the prosecutor knows of information about that officer that constitutes potential impeachment evidence, under what circumstances can that officer's name be removed from that list?

We can find no case law suggesting that an officer's name should be removed based simply on the passage of time. While the passage of time might go to the weight a jury should give to the officer's alleged wrongdoing or to the court's decision whether to admit discussion of it into evidence, we have found no case suggesting that the mere passage of time justifies removing an officer's name from a *Brady* list.

Two other circumstances are more difficult to assess. The first circumstance is that of an officer who is added to a *Brady* list in a "Pending PID" status because of an ongoing investigation, but that investigation ultimately clears the officer. The second circumstance arises when an officer is included on a *Brady* list because of a substantiated charge but that conclusion is either later overturned or new information arises calling it into serious question.

Unfortunately, we find it impossible to give an across-the-board answer that will apply in every such circumstance, because there is no case law on point and the decision to remove an officer from a *Brady* list will ultimately turn on the specific facts of each case. That said, a few general observations may help prosecutors make these decisions.

First, as noted above, in doubtful cases the safer course will be for the prosecutor to leave the officer on the list. The case law discussed above makes this clear, and as a practical matter, a mistake in failing to disclose potential impeachment evidence can lead to serious negative consequences, including the violation of the defendant's rights, dismissal of charges, overturning a conviction, allegations of violating the Rules of Professional Conduct, or even a wrongful conviction. Such harms can seriously undermine the integrity of the criminal justice system and the public's trust in it. Meanwhile, Washington law does not recognize a law enforcement officer's right to removal from a *Brady* list. In any event, a prosecutor's decision to disclose potential impeachment evidence will virtually always be protected by prosecutorial immunity, even if incorrect, because prosecutors in Washington enjoy absolute immunity for acts performed within the scope of traditional prosecutorial functions, like maintaining a *Brady* list. *See McCarthy v. County of Clark*, 193 Wn. App. 314, 337, 376 P.3d 1127 (2016) (a prosecutor's absolute immunity applies to actions within the scope of traditional prosecutorial functions); *Roe v. City & County of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997) ("a prosecutor's professional evaluation of a witness is entitled to absolute immunity even if that judgment is harsh, unfair or clouded by personal animus"); *Lane v. Marion Cnty. Dist. Att'y's Off.*, 310 Or. App. 296, 306-10, 486 P.3d 38

*[original page 5]*

(2021) (noting that several federal district courts have concluded that a prosecutor's decision to place an officer on a *Brady* list is a prosecutorial function entitled to absolute immunity and suggesting that "*Brady* is the constitutional floor, not the ethical ceiling").

Second, in circumstances where the *only* basis for an officer's inclusion on a *Brady* list is later deemed incorrect (e.g., (1) where the officer was listed in a "Pending PID" status while an investigation took place and the investigation entirely exonerated the officer, or (2) where the officer was placed on a list solely because of one incident, and new information later came to light showing conclusively that the officer did nothing wrong), there is an argument to remove the officer from the *Brady* list. In fact, a few courts in other states have ruled that officers may have grounds for judicial relief, including removal from *Brady*-type lists, if they have been exonerated of all of the underlying allegations. *See, e.g.*, *Duchesne v. Hillsborough Cnty. Att'y*, 167 N.H. 774, 782-85, 119 A.3d 188 (2015) (recognizing that inclusion on a *Brady*-type list carries a stigma and concluding that basic notions of fairness entitle officers to removal where the only conduct at issue was determined to be unfounded and would also not be admissible to impeach the officers' general credibility); *Fraternal Order of Police Lodge 5 by McNesby v. City of Philadelphia*, 267 A.3d 531, 550-52 (Pa. Commw. Ct. 2021) (concluding that officers' constitutionally protected interest in their reputations requires a meaningful opportunity to be heard prior to placement on a *Brady*-type list and a mechanism to seek removal if the grounds for placement on the list are shown to be unfounded and that immunity did not bar officers' claims for injunctive relief). That said, these cases are fact-specific, based primarily on those states' laws and constitutions, and pertain specifically to officers for whom the original allegations were deemed *fully* unfounded, especially by neutral factfinders. No court has determined that officers in Washington have any similar right under Washington or federal law, so there is currently no similar obligation in Washington. Moreover, were a prosecutor to omit officers from *Brady* disclosure on this basis, they may be relying on the integrity of a particular police department's administrative misconduct system, rather than adjudication by a neutral factfinder of the misconduct allegations at issue.

Likewise, if an officer has been placed on a *Brady* list because of a specific incident, and an arbitrator or court later reduces the officer's punishment but still finds some basis for the allegation, that generally would not provide a basis for removal from the *Brady* list. *See, e.g.*, *Gantert v. City of Rochester*, 168 N.H. 640, 650, 135 A.3d 112 (2016) (concluding that there was still a basis to keep an officer on the *Brady*-type list even though an arbitrator reduced the punishment because the officer's conduct implicated his general credibility); *see also Model Policy* at 6, No. 7. This is because a reduction in punishment does not eliminate the finding of wrongdoing. Furthermore, an officer's rights under a collective bargaining agreement, which could allow for the expungement of disciplinary records under certain circumstances, do not override the constitutional rights of criminal defendants or the prosecutor's corresponding obligations under *Brady*. *See Model Policy* at 6, No. 8.

In the absence of any case law on point, Washington prosecutors will need to use their best judgment in these circumstances based on the facts of the particular case. And a prosecutor always has the option to disclose the information but then move in court to exclude any discussion of the incident from consideration based on the later exoneration.

*[original page 6]*

In sum, we can find no basis to remove an officer's name from a *Brady* list based simply on the passage of time. Whether other circumstances warrant removal will necessarily be a case-specific determination dependent on the facts. And in debatable cases, prosecutors should err on the side of disclosure, as case law and the *Model Policy* suggest. *See, e.g.*, *Ames*, 194 Wn. App. at 117-18 (counseling prosecutors to err on the side of disclosure).

We trust that the foregoing will be useful to you.

NICHOLAS W. BROWN

*Attorney General*

KELLY A. PARADIS

*Deputy Solicitor General*

lrv

attachment

*[original page 7]*

**ATTACHMENT**

# MODEL POLICY FOR WASHINGTON PROSECUTORS

# FOR

# POTENTIAL IMPEACHMENT DISCLOSURE

ADOPTED: June 17, 2022

WASHINGTON ASSOCIATION OF PROSECUTING ATTORNEYS

## PREAMBLE

This model policy was prepared by the Best Practices Committee of the Washington Association of Prosecuting Attorneys. The goal of the committee was to create a uniform, robust policy, concerning the disclosure of potential impeachment information ("Potential Impeachment Disclosure" or "PID") for use by every prosecutor's office in the State of Washington. RCW 10.93.180 requires each county prosecutor to develop and adopt a written protocol addressing potential impeachment disclosures no later than July 1, 2022.

The committee understands that each county prosecutor's office has existing policies, practices and procedures concerning PID. These were developed in the unique environment of each office, considering many factors, including resource availability, technology, historical practices, and individual experiences derived from case work. While this model policy is intended to be uniform, the committee intended it to also be flexible so that adjustments can be made that accommodate the environment and culture of individual prosecutor's offices. The goal of the committee was to develop a broadly applicable policy framework which complies with the relevant legal mandates.

June 17, 2022

Joseph Brusic, Yakima County Prosecutor
Chairperson, WAPA Best Practices Committee

## I. LEGAL AUTHORITIES

In representing the State of Washington, prosecuting attorneys function as ministers of justice. Prosecuting attorneys preserve the integrity of the criminal justice system in part by protecting a charged defendant's due process rights to a fair trial.

This discussion of the primary PID legal authorities is not intended to be a comprehensive analysis of all prosecutorial disclosure obligations. It provides a general framework which informs the guidelines and processes included in this model policy.

Prosecutors have an affirmative duty to disclose to a charged defendant exculpatory information and potential impeachment information about prosecution witnesses. There are three primary sources of specific disclosure requirements.

- The Due Process clauses of the federal and state constitutions require prosecutors to disclose exculpatory information to criminal defendants, including information and evidence tending to impeach prosecution witnesses.
- Criminal Rule 4.7(a)(3) states prosecutors "shall disclose to defendant's counsel any material or information within the prosecuting attorney's knowledge which tends to negate defendant's guilt as to the offense charged."
- Rule of Professional Conduct 3.8(d) states that a prosecutor in a criminal case shall "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense …."

The constitutional Due Process requirement for disclosure of exculpatory evidence was set out in Brady v. Maryland, 373 U.S. 83 (1963). This requirement has been explained and modified by numerous subsequent cases. Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitely, 514 U.S. 419 (1995). The Due Process disclosure requirement includes impeachment information or evidence that could be used to impeach the credibility of a prosecution witness. United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150 (1972).

Kyles v. Whitley cautioned prosecutors to interpret the duty of disclosure expansively:

> [A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be. Such

> disclosure will serve to justify trust in the prosecutor as "the representative...of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done."…And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. The prudence of the careful prosecutor should not therefore be discouraged.

Kyles v. Whitley, 514 U.S. at 439-40 (1995) (internal citations omitted). See, also, United States v. Agurs, 427 U.S. 97 (1985) ("Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.")

Washington caselaw describes the prosecutor's duty equally expansively. "It is well settled that where a prosecutor is unsure whether evidence amounts to potential impeachment evidence or is exculpatory, the prosecutor should err on the side of disclosure." Ames v. Pierce County, 194 Wn. App. 93, 117–18 (2016).

As indicated above, independent of the constitutional due process requirement, prosecutors are also subject to court rules and professional practice rule obligations related to PID. Prosecutors are duty bound to comply with those requirements as well. Criminal Rule 4.7(a)(3); RPC 3.8(d). Violations of those provisions can lead to adverse legal consequences, including vacating convictions and findings of attorney misconduct.

Recent legislative enactments have added to the obligations of prosecutors regarding PID. *See* Laws of 2021, Ch. 322. Each county prosecutor must adopt a written protocol concerning PID and must do so in consultation with law enforcement agencies. RCW 10.93.180(1). This model policy is intended to facilitate compliance with these legislative requirements.

## II. LAW ENFORCEMENT AND GOVERNMENT AGENCY RESPONSIBILITIES

1. As part of the "prosecution team," law enforcement and other related government agencies must inform the PID Committee in the Prosecuting Attorney's Office (PAO) of potentially impeaching or exculpatory information related to their employees.

   At a minimum, law enforcement agencies shall provide written notice to the PID Committee of the following:

   a. Sustained findings of misconduct involving dishonesty or false statements, either written or oral.

   b. Sustained findings of biased policing, racial profiling, malicious harassment, or any other conduct that suggests bias against a class of people (e.g. race, ethnicity, age, sexual orientation, gender, disability, economic status, or other personal characteristics).

   c. Criminal convictions.

   d. For witnesses testifying as an expert, information relating to confirmed performance errors in the course of their employment that resulted in corrective action that could be used to impeach the witness's conclusions, opinions or other testimony.

   e. The fact that a law enforcement officer has been placed on a PID List in another jurisdiction.

   f. The existence of pending investigations of any conduct described in "a" through "e," above.

   g. Completed investigations, regardless of outcome, of any pending investigation in "f," above.

2. Statewide government agencies employing recurring non-law enforcement government witnesses, such as forensic scientists or other experts, shall provide the potential impeachment material identified in Section 1 above to the Washington Association of Prosecuting Attorneys, which shall promptly disseminate the notice to all prosecuting attorney offices.

   If such an agency is aware that one of its employees has been placed on the PID List of one or more prosecuting attorneys, the agency shall notify the Washington Association of Prosecuting Attorneys, which shall promptly disseminate the notice to all prosecuting attorney offices.

3. When a laboratory or agency that performs forensic examinations or analyses for use by prosecutors in criminal cases becomes aware of a forensic process or procedure that may have led to systemic errors in the work of the agency, the laboratory or agency shall promptly notify the Washington Association of Prosecuting Attorneys, which shall promptly disseminate the notice to all prosecuting attorney offices.

4. If a law enforcement or other government agency has concerns that conduct of an employee not specifically described in this Section II may be potential impeachment information, the law enforcement agency should consult with the PID Committee of the PAO to determine if the information should be provided to the PID Committee.

5. If, after providing potential impeachment material to the PID Committee, new evidence comes to light or a sustained finding is later overturned regarding a potential witness, the agency shall inform the PID Committee so it can decide whether the recurring witness should be removed from the PID list or if other modifications need to be made.

6. Notwithstanding any finding by a law enforcement agency, the PID Committee reserves the right to add or maintain witnesses on the PID List as necessary to comply with its constitutional, statutory, and rule-based PID obligations.

7. Negotiated disciplinary sanctions, including, but not limited to, resignation in lieu of termination, do not alter any law enforcement agency's duty to identify and disclose PID material.

8. Collective bargaining agreements do not alter any law enforcement agency's duty to identify and disclose PID material. Collective bargaining agreements do not alter the PAO's duty to add or remove a witness from a PID List.

9. A law enforcement agency, or government agency employing recurring government witnesses, such as forensic scientists, that receives information alleging any of the conduct set forth in Section 1 above shall investigate or arrange for the investigation of the allegations.

10. A law enforcement or other agency employing potential recurring witnesses shall notify the PID Committee upon initiation of any investigation regarding alleged conduct as described above, and at the conclusion of any such investigation. This should be done regardless of whether the agency determines that the allegations were founded or sustained.

11. Notification to the PID Committee of sustained findings or completed investigations or pending investigations should include a brief, substantive summary of the allegations. The entire investigative file should not be provided to the PID Committee unless specifically requested. Prior to transmittal, consult with the responsible prosecuting attorney's office for further clarification.

12. Because the PAO must err on the side of disclosure, the determination by the PID Committee to add an officer to the PID List does not imply a conclusion that the officer is not credible as a witness. It is critical to differentiate between *disclosure* requirements and the rules of evidence governing *admissibility*. The mere fact of placement on the PID List and resulting required disclosure says nothing about the admissibility of the underlying material at trial or other hearings.

13. Because the PAO is not an investigatory agency, it relies on law enforcement and other agencies to conduct thorough and objective investigations into allegations of officer or employee misconduct, and to advise the PID Committee of the results of those investigations. Failure to conduct such an investigation, where warranted, may be a violation of the State's duty to identify and disclose PID material, and may have adverse consequences for the agency, the PAO, and prosecutions.

14. The PAO has an obligation to ensure that investigations into misconduct are completed, regardless of the employment status of an officer or recurring witness. For this reason, law enforcement agencies must complete an investigation even if the officer has been terminated or has otherwise left employment with the agency.

15. In relying on law enforcement agencies to conduct investigations into allegations of officer misconduct, the Prosecuting Attorney's Office acknowledges and respects the internal investigation (IA) standards followed by law enforcement agencies. The IA process allows for thorough investigation of allegations of misconduct and affords officers due process. This Policy does not seek to expand or modify that process or those rights. Accordingly, the PAO will typically base its PID determination solely upon the record developed during the IA process. The ultimate PID determination, however, will be made independent of the result of the IA investigation.

16. In some instances, alleged misconduct may come to the attention of the PAO or a court before it is known by the officer's or witness's employing agency. In those instances, the PAO will contact the employing agency to request that they conduct a complete investigation of the alleged misconduct. The PAO may also refer the matter directly to the PID Committee.

## III. PROSECUTOR RESPONSIBILITIES

1. Prosecutors bear the ultimate legal responsibility to identify and disclose PID (Potential Impeachment Disclosure) material to criminal defendants. Failure to do so can result in convictions being overturned or innocent people being convicted because a trial did not provide due process. Failure to comply with constitutional, statutory and rule-based PID duties may also result in the imposition of penalties and sanctions upon prosecutors and their offices.

2. The Prosecuting Attorney shall create a Potential Impeachment Disclosure Committee/Designee (PID Committee) consisting of experienced prosecutor(s) with a sound understanding of PID requirements.

3. PID review will be conducted by the PID Committee and, when warranted, the Prosecuting Attorney. The PID Committee shall be responsible to determine whether a law enforcement officer or other recurring witness has engaged in conduct that must be disclosed to a charged defendant because it constitutes information that may be favorable to the defense. Regardless of the final PID determination, the PID Committee shall notify the agency and the officer/employee of its determination.

4. The Prosecuting Attorney shall maintain a Potential Impeachment Disclosure List (PID List) containing the names of all potentially recurring witnesses whom the PID Committee has determined engaged in conduct that must be disclosed because it may be favorable to the defense.

5. The PID List shall be accessible to all staff in the PAO. The PID List shall contain, at a minimum, sufficient information to provide notice of the reason for inclusion on the PID List.

6. Officers with sustained findings of misconduct (as determined by a law enforcement agency) involving dishonesty, bias, or criminal convictions shall be added to the PID List without additional review by the PID Committee. If the law enforcement agency is aware of new information or if the finding of misconduct is later overturned by the law enforcement agency, the PID Committee shall consider the new information or revised finding and determine whether the officer should be removed from the PID list or if other modifications should be made.

7. In cases involving pending investigations of conduct described above, the officer or agency employee will be added to the PID List and categorized as "Pending PID" until the investigation is concluded. Upon receipt and review of the completed investigation, the "Pending PID" designation will be modified consistent with the final PID determination.

8. If a charged case involves law enforcement witnesses from another jurisdiction, the assigned deputy prosecuting attorney shall contact the prosecutor from that jurisdiction to determine if the witness is on a PID List and, if so, immediately notify the PID Committee of the deputy prosecuting attorney's office. Such witnesses shall be added to the PID List without further review by the PID Committee.

9. If the PID Committee has placed an officer or other potential witness on the PID List, notice of the inclusion on the List shall be provided to the defense in all pending and future cases in which the officer or other potential witness is involved. This provision applies to both final determinations and "Pending PID" determinations. The disclosure to the defense shall provide notice of the basis for inclusion on the PID List, and whether it is a pending or final determination.

10. It shall be the responsibility of the deputy prosecuting attorney assigned to a case to comply with the constitutional requirements and court rules underlying this policy regarding any potential PID issues involving any government witness involved in the criminal investigation (not just those who are going to be subpoenaed).

11. Where alleged misconduct comes to the attention of the PAO or a court before it is known by the officer's or witness's employing agency, the knowledgeable deputy prosecutor or staff person shall promptly notify the PID Committee. The PID Committee shall promptly contact the employing agency and request that they conduct a complete investigation of the alleged misconduct. The PID Committee may also consider the matter without further investigation.

12. Deputy prosecutors should determine whether PID information related to a case exists at the initial review of the case, and at any time additional witnesses are made known to the PAO.

13. The Prosecuting Attorney shall develop and adopt procedures that ensure all PID information is disclosed to defendants in a prompt and timely manner in every case where the witness had any involvement.

14. This policy is intended for the guidance of the Prosecuting Attorney's Office and law enforcement agencies. It may be modified or abrogated by the Prosecuting Attorney at any time. Exceptions may also be authorized by the elected Prosecuting Attorney or his designee.

15. These guidelines do not confer legal rights on any individual or entity. Failure to follow these guidelines, in and of itself, does not create a basis to challenge any order or judgment in a criminal case.



[1] The *Model Policy* is attached to this opinion and is available online at https://waprosecutors.org/wp-content/uploads/2022/06/eProsecutor-memo.pdf (https://waprosecutors.org/wp-content/uploads/2022/06/eProsecutor-memo.pdf).

[2] Notably, a prosecutor's decision to disclose information does not necessarily mean that a court will conclude that the information disclosed is ultimately admissible into evidence. *See Model Policy* at 7, No. 12.

[3] *Brady* lists are more formally termed “Potential Impeachment Disclosure” lists. *See Model Policy* at 2, 5.

[4] After enactment, the secretary of state assigned a chapter number, designating the session law as Laws of 2021, ch. 322.