Hon. Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| PAUL BROMM,<br>Plaintiff,<br>vs.<br>LEWIS COUNTY, et al.,<br>Defendants. | Case No. 3:26-cv-05384-BHS<br><br>**PLAINTIFF'S OPPOSITION TO THE INDIVIDUAL LEWIS COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: August 3, 2026 |

Plaintiff Paul Bromm, by and through his undersigned counsel, hereby gives notice to the Court and all parties of record and their counsel of the following Opposition to the Individual Lewis County Defendants' Motion for Summary Judgment (*Dkt. 26-30* "Motion"), and for the following reasons requests that this Court deny the Motion.

## I. Jonathan Meyer Has Not Proven His Conduct Deserves Absolute Immunity

### A. Meyer Bears the Burden of Proving That His Conduct Was Intimately Associated with the Judicial Phase of the Criminal Process

Defendant Jonathan Meyer has not carried his burden of establishing that absolute immunity is justified for the conduct he actually performed and for which he requests immunity.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

The official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question because the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the course of their duties. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

The Ninth Circuit holds that a prosecutor cannot obtain absolute immunity through labels alone, without analysis of the function actually performed. "[A] prosecutor may not assert blanket absolute immunity by labeling all his actions as within a particular prosecutorial function." *Botello v. Gammick*, 413 F.3d 971, 978 (9th Cir. 2005). In *Botello,* a district attorney and his deputy had "not met their burden of showing that absolute immunity is justified" where they simply characterized all of their conduct as a decision not to prosecute. *Id.*

An act is not deemed "prosecutorial" simply because it has some loose connection to the judicial process or may eventually impact a trial. *Genzler v. Longanbach*, 410 F.3d 630, 643 (9th Cir. 2005). Even conduct related to trial preparation is not absolutely immune unless there is a "close association" between the challenged act and the judicial phase of the criminal proceeding. The actual conduct must be "intimately associated with the judicial phase of the criminal process," and the record must demonstrate a "close association" between that conduct and the judicial phase of the criminal proceeding. *Genzler v. Longanbach*, 410 F.3d 630, 637, 643 (9th Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

Absolute immunity does not attach merely because the challenged conduct was performed by a prosecutor or was characterized as prosecutorial. *Lacey v. Maricopa County*, 693 F.3d 896, 912–14 (9th Cir. 2012). In *Lacey*, the Ninth Circuit rejected absolute immunity for a prosecutor who issued subpoenas and ordered arrests, even though they are traditional



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

prosecutorial functions because the prosecutor acted unilaterally, avoided the approvals required by law, and the prosecutor's actions had taken place "outside the judicial process." "Where the prosecutor has side-stepped the judicial process, he has forfeited the protections the law offers to those who work within the process." *Id.*

The Ninth Circuit and the Supreme Court distinguish advocacy from administrative roles based on whether the conduct was undertaken in preparation for judicial proceedings or trial and in the prosecutor's role as an advocate. *Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute immunity is determined under a functional test and attaches to "the nature of the function performed, not the identity of the actor who performed it." *Id.* Thus, whether a prosecutor benefits from absolute or qualified immunity depends on which of the prosecutor's actions are challenged. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

Prosecutorial immunity is justified 'only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.'" *Botello v. Gammick*, 413 F.3d 971, 978 (9th Cir. 2005) (citing *Burns*, 500 U.S. at 494).

### B. Meyer's Conduct Was Not Related to the Judicial Phase of the Criminal Process

Meyer requests absolute and qualified immunity for the alleged "prosecutorial act of issuing a Potential Impeachment Disclosure ('PID') letter on Mr. Bromm," and for "placing him on the PID list." The Court to examine functions Meyer actually performed, not merely his status as a prosecutor or the labels he gave documents. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 273 (1993); *Kalina v. Fletcher*, 522 U.S. 118, 127, 129–31 (1997). Meyer has failed to prove through record evidence that his conduct was an actual impeachment disclosure for the



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

reasons set forth below.

1. *Investigating Bromm's Social Media Posts was not Advocacy*

Meyer fails to argue that investigating Bromm's social media posts was a prosecutorial function or request absolute immunity for that conduct. A prosecutor does not receive absolute immunity merely because the person who the prosecutor investigates might someday become a witness. Absolute immunity protects the evaluation of assembled evidence or witness interviews undertaken in preparation for a pending trial, but it does not protect searching for facts, clues, or corroboration to determine whether evidence exists in the first place. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993). Witness investigation constitutes unprotected police-type investigation when the conduct is not connected to a judicial proceeding. *Genzler v. Longanbach*, 410 F.3d 630, 638–40 (9th Cir. 2005). A prosecutor cannot manufacture absolute immunity by imagining a future case that does not exist. *Burns v. Reed*, 500 U.S. 478, 494-96 (1991).

Meyer's own declaration proves he was not evaluating Plaintiff as an actual witness in an actual criminal matter. Instead, he claims he viewed Plaintiff's posts based on a tip "from a citizen," which based on the record evidence may have been the political assistant to State Representative Joel McEntire. Lunde Decl. ¶8, Ex. A. Meyer admits he did not know who Plaintiff was what his job title was, that Plaintiff was not a law-enforcement officer, had never testified in a criminal proceeding, and was not a witness in any case. *Id.*¶17. Meyer's declaration claims to rely on the possibility of future testimony even though his original letter incorrectly identified Plaintiff as a "Removal Technician." Meyer Decl. ¶ 14; Lunde Decl. ¶9, Ex. B. The evidence supports an inference that Meyer's investigation of Bromm was a response to political pressure, not advocacy.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

2. *Meyer Fails to Provide or Discuss the Contents of the Letter he Relies on for Immunity*

Meyer claims absolute and qualified immunity for "issuing the PID letter to Mr. Bromm," but he does not provide, authenticate, quote, or discuss the letter or its contents. Meyer Decl. ¶13. He does not attach a copy of the letter to his declaration and does not claim that any exhibit contains it. Even if he had attached it, neither the Motion nor his declaration identifies or discusses any specific language in the letter that could provide Meyer with the absolute immunity he requests. Rule 56(c)(1)(A) requires a party to support its assertions by citing particular parts of the record, and Rule 56(c)(3) permits the court to consider only the materials cited. Without providing the letter or discussing its contents, Meyer cannot establish the function he performed.

Plaintiff submits the original and amended September 12, 2025 letters as exhibits to counsel's declaration to put the actual conduct before the Court, not to supply the evidentiary support Meyer omitted. Meyer failed in his burden of establishing that absolute immunity attaches to the function he performed. *Gay*, 61 F.4th at 1091. Neither letter identifies any criminal case, a charged defendant, anticipated testimony, a charging decision, or a disclosure to defense counsel. They do not cite *Brady* or *Giglio.* Meyer admits he "sent it to the Coroner, Warren McLeod, because Mr. Bromm was a Coroner's Office employee." Meyer Decl. ¶13. Both letters identify Plaintiff's protected Facebook speech as the basis, and both warn of "consequences" for protected speech. Lunde Decl. ¶9, Ex. B.

Meyer also fails to identify what group Mr. Bromm allegedly showed bias against, making any future impeachment disclosure meaningless to a hypothetical defendant. Meyer uses a double hypothetical to ask what a hypothetical lawyer in a hypothetical case might want



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

to know to explain his "decision to issue a PID letter to Mr. Bromm" and proves it was never tied to a real proceeding. Meyer Decl. ¶16. That is precisely the kind of generalized, speculative connection to prosecutorial functions the Supreme Court rejected in *Burns*.

Meyer's letter initially used an incorrect job title for Plaintiff, and Meyer learned of the error only after McLeod told him. Meyer Decl. ¶14. Meyer then issued an amended letter with the corrected title, but the substance of the letter remained the same. *Id.* The fact that the impeachment determination was not affected by the job title means Plaintiff's actual role played no part in the letter. Whether a person will ever testify, and about what, depends on what that person does. This shows Plaintiff was not being evaluated as a witness, it was a determination about his speech, and the letters are employment communications about that speech.

These facts support a reasonable inference that Meyer's determination that Meyer performed an employment communication, not an impeachment disclosure. At a minimum, the function the letters served remains a disputed question of material fact that precludes summary judgment on absolute immunity. Meyer has not carried his burden of showing that absolute immunity is justified for the specific function he performed because he does not provide or discuss the content of the letters he relies on for absolute immunity. *Gay*, 61 F.4th at 1091.

3. *Meyer Presents No Evidence he Decided to or ever Placed Bromm on a PID List*

While the Motion argues that "Meyer's only substantive action relating to Mr. Bromm was issuing a PID and placing him the PID list," counsel's arguments are not evidence and cannot establish that fact at summary judgment. *Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002).

Defendants fail to present any evidence that Meyer actually decided to place Plaintiff



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

on a PID list, that he actually placed Plaintiff on the official PID List, entered him into any database or case-management system, or activated the disclosure procedures described in Meyer's declaration. Meyer's declaration describes general procedures, but fails to testify that those procedures were actually applied to Bromm or that Plaintiff was placed on such a list. The word "list" does not appear in his declaration. Meyer Decl. Dkt. 28. Defendants have not produced any case-management profile, PID-list entry, audit trail, pending-or-final designation, alert, or disclosure to defense counsel concerning Plaintiff. The absence of the records that Meyer says ordinarily document and implement a PID designation creates a material factual dispute whether the Prosecuting Attorney's Office actually applied its PID process to Plaintiff at all.

Under Fed. R. Civ. P. 56(c)(1)(A) and 56(c)(4), Meyer is required to support his assertion that he placed Plaintiff on the PID list by citing particular parts of the record and by declaring facts within his personal knowledge, not by counsel's characterization of an unstated record. He did neither. Meyer therefore cannot carry his burden to establish that the challenged conduct qualifies for absolute immunity. *Gay v. Parsons*, 61 F.4th 1088, 1091 (9th Cir. 2023).

Whether Meyer decided to place Bromm on a PID list, and whether Bromm was ever placed on one, remain disputed questions of material fact that preclude summary judgment on Meyer's absolute immunity defense.

4. *Meyer Fails to Request Immunity for Transmitting the Letters to Meyer's Employer*

While Meyer admits he transmitted letters to Bromm's employer, Meyer does not request immunity for that conduct. Meyer states in his Declaration, "I then drafted a PID letter relating to Mr. Bromm and sent it to the Coroner, Warren McLeod, because Mr. Bromm was a



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Coroner's Office employee." Meyer Decl., Dkt. 28 ¶13. Meyer fails to establish that his employer-directed communication was intimately associated with any criminal prosecution and fails to request absolute immunity for this conduct.

Furthermore, an employer-directed impeachment disclosure communication is not necessarily a prosecutorial function merely because the prosecutor gives it that label. *Stockdale v. Helper,* 979 F.3d 498, 501-02, 505-06 (6th Cir.2020), *cert. denied*, __ S.Ct. __, 211 L.Ed.2d 21 (2021), The Sixth Circuit relied in part on the Ninth Circuit's reasoning in *Botello v. Gammick* in declining to extend absolute immunity to a prosecutor after her impeachment disclosure communication prompted the firing of two officers. *Stockdale*, 979 F.3d 504-06. The *Stockdale* court reasoned that there was no identified trial or criminal case and the surrounding facts showed that the prosecutor's actions were directed at personnel decisions rather than case advocacy. The Court also found a substantial, unexplained gap between the underlying allegations and the asserted blanket impeachment disclosure obligation. *Stockdale*, 979 F.3d at 504. It treated communication with an employer before a criminal proceeding as a distinct act that must be evaluated separately, just as Plaintiff argues here.

Meyer's letters transmitted on September 12 were used by McLeod as the sole basis for terminating Plaintiff's employment in a termination letter dated September 15, 2025. Public records received from Lewis County show McLeod emailed Lewis County HR termination documents on September 16 containing a termination letter signed by McLeod dated September 15. Lunde Decl. ¶10, Ex. C. McLeod then relied on Meyer's letters when seeking validation from medicolegal and criminal justice organizations on whether Meyer's letters could be used to fire Plaintiff or prevent him from obtaining professional certification or continuing to work as a medicolegal death investigator. Snaza invoked Meyer's letter in justifying Plaintiff's job



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

restrictions. HR then used Meyer's letters as part of the factual and causal basis for recommending termination.

In other words, Meyer's letters did the same work *Stockdale* found fatal to absolute immunity: they were addressed to no case and no defendant, yet became the operative justification relied on at each stage to end Plaintiff's employment.

*a. RCW 10.93.180 Does Not Confer Absolute Immunity if the Official Acted in Bad Faith*

Defendants cite RCW 10.93.180 as a source of Meyer's claimed Brady authority and contend that Lewis County's PID policy, under which Meyer purportedly acted, was adopted pursuant to that statute. Mot. 11:18–21, 19:3–12; Meyer Decl. ¶¶6 to 7. The statute does not provide absolute immunity for transmitting impeachment information to an officer's employer. RCW 10.93.180(4) provides that a public official is immune from civil liability for sharing impeachment information about a peace officer with the officer's employer, potential employer, or prosecuting authority *unless the official acted with gross negligence or in bad faith*. (Although Plaintiff contends he is not a peace officer and Meyer admitted he was not, Meyer nonetheless treated him as one.)

The Legislature treats the transmission of PID information to an employer as an act any public official may perform, subject to proof of gross negligence or bad faith, rather than as advocacy before a court. Consistent with that treatment, courts have declined to extend absolute immunity to impeachment communications directed at an officer's employer rather than at a criminal proceeding. *Botello v. Gammick*, 413 F.3d 971, 978 (9th Cir. 2005); *Stockdale v. Helper*, 979 F.3d 498, 504 to 505 (6th Cir. 2020). A prosecutor therefore may not claim absolute immunity for transmitting PID information to an officer's employer, because that act is not intimately associated with the judicial phase of the criminal process. Whether Meyer acted in



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

bad faith or with gross negligence in sending the letters to McLeod is a question of fact that precludes summary judgment.

*b. Meyer did not Perform the Steps that Define a PID Determination Under the Authorities he Cites*

Meyer relies on RCW 10.93.180 and the Lewis County PID Policy to argue that issuing a PID letter concerning Plaintiff was an exercise of his *Brady* obligations and therefore a prosecutorial function. Meyer Decl. ¶¶6–7, Ex. A. He links the PID process in those authorities to his own conduct to characterize it as prosecutorial. Neither authority reaches Plaintiff, and Meyer performed none of the steps either one describes. The Motion asserts that Meyer acted consistently with the WAPA and Lewis County PID policies, but Meyer never says so. His declaration does not state that he followed the policy, complied with its procedures, or that any departure was authorized. Argument in a brief is not evidence. *Barcamerica*, 289 F.3d at 593 n.4.

The statute requires each county prosecutor to adopt a written protocol governing potential impeachment material concerning peace officers, and directs the law enforcement agency, not the prosecutor, to report acts that may be exculpatory and misconduct affecting the officer's credibility. RCW 10.93.180(2)(a). The immunity it confers extends only to sharing impeachment information about a peace officer. RCW 10.93.180(4). Plaintiff was not a law enforcement officer and had never testified as a witness in any criminal proceeding, which Meyer concedes. Meyer Decl. ¶17.

The only arguably applicable category in the policy requires a sustained finding or completed investigation of conduct suggesting bias against a class of people identified by race, ethnicity, age, sexual orientation, gender, disability, economic status, or other personal



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

characteristics. Dkt. 28-1 at 5, § II.1(b). Defendants do not claim that Plaintiff's alleged impeachment information went through that process, because there was no finding, no investigation, and no conviction. None of the categories reaches First Amendment speech.

The policy also requires notice to the employee, but Meyer gave none. Bromm Decl. ¶22. The Committee must "notify the agency and the officer/employee of its determination." Dkt. 28-1 at 9, § III.3. Meyer notified Plaintiff's employer and never notified Plaintiff. Meyer Decl. ¶15. He describes labeling, profile creation, alerts, and automatic disclosure to defense counsel as what his office does, *Id.* ¶¶4–5, but never says any of it occurred here. The only action Meyer took outside his own office was sending the letter to Plaintiff's employer. Absolute immunity turns on the function actually performed, not the label placed on it, and Meyer has not carried his burden of establishing that function. *Gay*, 61 F.4th at 1091.

The Motion also quotes CrR 4.7(a)(3), which requires that the prosecuting authority "disclose to defendant's lawyer any material or information within the prosecuting authority's knowledge that tends to negate defendant's guilt as to the offense charged." Dkt 28, p.19 n.2. That obligation runs to a charged defendant in an identified prosecution. Meyer identifies no case, no defendant, and no defense lawyer to whom anything was disclosed. His letters cite neither *Brady* nor the rule, and he fails to identify any testimony he evaluated.

### C. The Cases Defendants Rely on Do Not Establish That Meyer Is Entitled to Absolute Immunity

Each case Defendants cite involves an identified criminal case, an actual or recurring prosecution witness, or a concrete charging decision. None involves a prosecutor reviewing the private speech of a person he did not know, who had never testified, and sending an



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

impeachment letter to that person's employer without identifying any case, defendant, anticipated testimony, or charging decision.

Defendants cite *Sampaga v. Snohomish Cnty., Corp.,* NO. 16-01310-RAJ (W.D. Wash. June 29, 2017), but Plaintiff could not find any such opinion. In *Ames v. Pierce County*, the plaintiff was a detective and recurring prosecution witness, and the prosecutor identified specific declarations and a report as impeachment material tied to an identified prosecution. *Ames* confirms a prosecutor's authority to make *Brady* determinations, but it does not approve an uninvestigated designation of a nonwitness based solely on political speech on social media. *Roe v. City & County of San Francisco* involved an arresting officer accused of testifying inconsistently at an actual trial, and a decision, made after supervisors reviewed the transcripts, that cases arising from his arrests would not be prosecuted without corroboration. 109 F.3d 578, 580–84 (9th Cir. 1997). That conduct was both an evaluation of an actual prosecution witness and a decision whether to continue prosecutions. As argued above, Meyer evaluated no testimony, made no charging decision, and imposed no corroboration requirement.

In *McCarthy v. County of Clark*, the prosecutor was assigned to an existing case, conferred with the complaining witness in preparation for it, filed charges, and directed her to report violations of an existing no-contact order. 193 Wn. App. 314, 338–39, 376 P.3d 1127 (2016). *McCarthy* confirms that immunity reaches only traditional prosecutorial functions and not conduct outside the advocate's role. *Id.* at 337–38.

A communication tied to no current judicial function or active case remains administrative or investigative and draws only qualified immunity. *Patterson v. Van Arsdel*, 883 F.3d 826 (7th Cir. 2018); *Flowers v. Seki*, 45 F. Supp. 2d 794 (D. Haw. 1998).

**D. Conclusion**



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Meyer has not carried his burden of establishing that the function he performed was intimately associated with the judicial phase of the criminal process. At a minimum, the record leaves disputed whether Meyer's conduct was advocacy or merely an employment-related act reacting to Plaintiff's political posts. Summary judgment on absolute immunity for Meyer should be denied.

## II. Defendants are Not Entitled to Qualified Immunity Protection

Each individually-named Lewis County Defendant claims qualified immunity, but Defendants have not shown they are entitled to that protection. At summary judgment, the Court must resolve genuine disputes of historical fact in Plaintiff's favor before deciding whether Defendants' conduct violated the Constitution and clearly established law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Defendants are not entitled to have those questions decided according to their preferred characterization of disputed conduct, motive, coordination, or operational necessity.

### A. First Prong: The Evidence Establishes a Constitutional Violation

Qualified immunity asks two questions. The first is whether the facts alleged make out a constitutional violation. The second is whether the right was clearly established at the time of the official's conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

#### *1. Bromm Spoke as a Private Citizen on Matters of Public Concern*

Public employees retain a First Amendment right to speak as private citizens on matters of public concern. *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968). Whether speech addresses a matter of public concern depends on its content, form, and context. *Connick v. Myers,* 461 U.S. 138, 147–48 (1983). A citizen does not forfeit his First Amendment rights by working for the government, and speech is not deprived of protection merely because it is



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

offensive or controversial. *Garcetti v. Ceballos,* 547 U.S. 410, 421–22 (2006); *Rankin v. McPherson, 483 U.S. 378, 387 (1987).*

Defendants present no argument or evidence disputing that Plaintiff spoke as a private citizen on a matter of public concern. Plaintiff made the social-media posts at home, outside work hours, on his own equipment, and did not refer to Lewis County in the posts. Bromm Decl. ¶3. The content, form, and context therefore establish that Plaintiff spoke as a private citizen on a matter of public concern.

### *2. Plaintiff's Speech Was a Substantial or Motivating Factor in Defendants' Adverse Actions*

Defendants' Motion does not dispute that Plaintiff's speech was a substantial or motivating factor in each challenged action. The Motion expressly attributes Meyer's PID decision, Snaza's restriction of Plaintiff's duties, Swope's publication, and McLeod's termination decision to Plaintiff's Facebook posts. Defendants argue only that Meyer, Swope, and Snaza did not participate in McLeod's ultimate decision to terminate Plaintiff, an assertion disputed by the evidence concerning the sequence and combined effect of their conduct.

Each moving Defendant states that he acted because of Plaintiff's speech. Swope states that, after Representative McEntire tagged him, he reviewed Plaintiff's Facebook account, confirmed his employment, and republished the posts because he found Plaintiff's comments about Kirk's death "highly inappropriate." Swope Decl. ¶¶5–8. Meyer states that his "decision to issue a PID letter to Mr. Bromm was based on his Facebook postings regarding Charlie Kirk." Meyer Decl. ¶15. Snaza states that, "given [Plaintiff's] vile and mocking posts celebrating death," he "therefore wrote a letter to Mr. Bromm's employer" restricting Plaintiff from suspicious-death calls. Snaza Decl. ¶10. McLeod describes the posts as "disgusting" and



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

states that he terminated Plaintiff because public concern about the posts allegedly disrupted his office and called Plaintiff's ability to conduct unbiased investigations into question. McLeod Decl. ¶¶12, 20. The content of Meyer's and Snaza's communications likewise confirm they acted because of Plaintiff's speech. Lunde Decl. ¶¶9, 11, Exs. B, D.

***3. Defendants Do Not Prove Their Interests Outweighed Plaintiff's First Amendment Rights Under Pickering***

Under *Pickering,* the Court weighs Plaintiff's interest, as a citizen, in commenting on matters of public concern against the County's interest, as an employer, in efficiently delivering public services through its employees. *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968). Although Pickering balancing is ultimately a legal question, it often turns on disputed historical facts, which must be resolved in the nonmoving party's favor at summary judgment. *Eng v. Cooley*, 552 F.3d 1062, 1071–72 (9th Cir. 2009). Defendants bear the burden of proving that legitimate administrative interests outweighed Plaintiff's First Amendment rights. *Barone v. City of Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018).

Defendants assert that public complaints disrupted the Coroner's Office, that the posts threatened public trust and relationships with law-enforcement partners, that they called Plaintiff's impartiality and reliability into question, and that Plaintiff's participation could jeopardize or invite challenges to future death and criminal investigations. The question is not whether officials found Plaintiff's speech offensive, but whether the speech caused actual operational disruption or supported a reasonable, evidence-based prediction of disruption. *Moser v. Las Vegas Metropolitan Police Department*, 984 F.3d 900, 905, 909 (9th Cir. 2021).

Defendants argue that Plaintiff's speech deserves less First Amendment protection because they characterize it as mocking, derogatory, and disparaging. They repeatedly describe



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

the posts as vile, hateful, and celebratory of death, and claim that Plaintiff found the murder funny, which are claims that Plaintiff specifically denies. Bromm Decl. ¶13. Defendants' characterization of the posts as celebrating or mocking Kirk's death is specifically disputed by Plaintiff and cannot be accepted as fact at summary judgment.

Defendants' arguments rely on *Hussey v. City of Cambridge*, 149 F.4th 57 (1st Cir.2025) that upheld discipline of a police officer for an off-duty Facebook post. However, Defendants' reliance on *Hussey* is misplaced because the judgment was vacated. Lunde Decl. ¶31, Ex. V. The court that issued *Hussey* voted to rehear it *en banc*. That vote is further evidence, not a mere technicality. It shows the reasoning in *Hussey* is contested, not settled. The en banc court directed the parties to address whether political speech may receive less First Amendment protection merely because it is "mocking, derogatory, and disparaging," consistent with *Rankin* and other Supreme Court precedent. Therefore, the withdrawn opinion Defendants cite has no precedential force on the merits. Defendants filed this motion in July 2026. That is more than five months after the vacatur. Yet Defendants present the opinion's reasoning to this Court as though it currently states the law.

Even if *Hussey* were good law, it would not help Defendants here. *Hussey's* own framework preserves protection where an employer's disruption rationale is pretextual for viewpoint discrimination. Lewis County's conduct toward Defendant Swope fits that exception exactly. Swope republished the same content Mr. Bromm posted and Lewis County never disciplined him for it. Lunde Decl. ¶12 Ex. E, ¶26, Ex. R. Therefore, Hussey cannot supply the clearly established analysis Defendants need, and none of this requires resolving any factual dispute.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

**a. Plaintiff's Political Speech Receives Substantial First Amendment Protection**

Plaintiff's posts were memes critical of Charlie Kirk's views. Plaintiff used existing photographs, slogans, and symbolic imagery to convey political frustration and viewpoint-based criticism on a matter of public concern. The crude or offensive character of political expression does not withdraw First Amendment protection. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,* 515 U.S. 557, 570 (1995). The Supreme Court has treated far more pointed statements about political violence as protected political hyperbole, recognizing that political debate is often "vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam); *see also Rankin*, 483 U.S. at 387.

The statements in *Pickering* were published in a newspaper, yet the Court held they did not impeded the employee's duties or interfere with the regular operation of the schools. *Pickering,* 391 U.S. at 572–73. Plaintiff's off-duty political speech therefore receives substantial weight in the balance, notwithstanding Defendants' disagreement with its tone or message.

**b. Defendants Cannot Rely on Public Reaction or Staffing Strain They Created**

Employer or government-created disruption cannot justify discipline against an employee. Threatened disruption by others responding to public-employee speech may not serve as justification for discipline directed at that speech. *Berger v. Battaglia,* 779 F.2d 992, 1001 (4th Cir. 1985); *see Moser,* 984 F.3d at 909. A reasonable jury could find that the public reaction Defendants invoke resulted from Swope's republication and identification of Plaintiff, rather than from Plaintiff's original posts.

The sequence began when Representative McEntire asked Swope to confirm Plaintiff's employment. A member of the public stated that Plaintiff did not work for the Coroner's Office,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

and McEntire thanked that person for the clarification. But Swope would not leave it alone. At 1:48 p.m. that same afternoon, Swope replied to that comment: "he just posted that he works for local government. I will look into it." Lunde Decl. ¶12, Ex. E. Swope used his public office to investigate Plaintiff's employment status. Then at 6:18pm, he republished Plaintiff's posts to approximately 4,900 of his followers, identified Plaintiff's employer, published McLeod's non-public email address, and encouraged the public to contact him. Lunde Decl. ¶¶12–13, Exs. E, F. Plaintiff's own Facebook account had approximately 250 friends, and his political posts ordinarily drew only a few reactions. Bromm Decl. ¶4. Swope's republication therefore exposed Plaintiff's speech to an audience roughly twenty times the size of his own. At approximately 11:28 p.m., McLeod publicly confirmed Plaintiff's employment, described the posts as "disgusting," and stated that he was responding to emails "coming in." Lunde Decl. ¶14, Ex. G.

Every email criticizing Plaintiff's speech comes after Swope's publication. Lunde Decl. ¶15, Ex. H. The production reflects only 13 distinct public senders over a week-long period, 12 of whom criticized Plaintiff, and McLeod responded to four. Only three submitted their initial messages through the Coroner Contact Form. Nine wrote directly to the same email address Swope published, and eight of the 12 critical senders used that address. One message was addressed to "Sean Bromm," combining Swope's first name with Plaintiff's last name and supporting the inference that the sender learned Plaintiff's identity from Swope's post. Compl. ¶¶93–94; Lunde Decl. ¶15, Ex. H. The call records do not identify which calls, if any, concerned Plaintiff, but do not show any surge in numbers as compared with September 10, 2025. 75 inbound transmission attempts on September 16 came from a hospice-center fax line and are not shown to have been voice calls concerning Plaintiff. Lunde Decl. ¶17, Ex. I. Against the



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

population of Lewis County of approximately 88,000, that response was a minute fraction of the public and does not establish widespread or sustained operational disruption. Lunde Decl. ¶18, Ex. J. Defendants have also failed to prove that all of the email senders were actually Lewis County residents.

County records also show that Plaintiff had removed his Lewis County affiliation from his Facebook account by 3:29 p.m. on September 11, nearly three hours before Swope publicized it. Human Resources confirmed that it had asked McLeod to have Plaintiff remove the affiliation. Bromm Decl. ¶7; Lunde Decl. ¶8, Ex. A. A reasonable jury could therefore find that Swope, not Plaintiff, generated the disruption Defendants now cite as jusitication for termination, by publicly reintroducing and amplifying Plaintiff's County employment only after Plaintiff had already removed it at the County's request.

Defendants present no evidence of any staffing strain on the office. However, McLeod's decision to remove Plaintiff from work may have caused him issues. In an email describing multiple calls at once, including two in the East End, McLeod wrote, "Only one deputy working so off I ran." Lunde Decl. ¶19, Ex. K. A reasonable jury could find that this staffing strain resulted from placing Plaintiff on administrative leave, not from Plaintiff's speech or the public's reaction to it. Responsiveness to political pressure and disruption caused by Defendants' own adverse actions are not legitimate interests in the efficient operation of the Coroner's Office.

**c. Defendants Present No Evidence of Actual Operational Disruption**

In evaluating the government's asserted operational interests, courts consider whether the speech impaired discipline or harmony among coworkers, damaged close working relationships requiring personal loyalty and confidence, impeded the employee's performance,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

or interfered with regular agency operations. *Rankin*, 483 U.S. at 388. Public criticism, arguments, or personal hostility do not establish operational disruption without evidence that government operations or working relationships were impaired. *Moser*, 984 F.3d at 909; *Lindsey v. City of Orrick*, 491 F.3d 892, 900–01 (8th Cir. 2007).

Defendants identify no coworker complaint, interrupted investigation, impaired working relationship, delayed service, diversion of staff, inability to perform an office function, or instance in which Plaintiff's speech prevented the Coroner's Office from performing its duties. McLeod identifies calls and emails concerning the posts, but no operational consequence caused by them. McLeod Decl. ¶¶14, 19–20, 23–25. He also knew that Plaintiff had always upheld his commitment to treat families with differing political beliefs respectfully. Bromm Decl. ¶14.

McLeod placed Plaintiff on paid administrative leave on September 12, 2025, but did not terminate him until September 22, giving the County ten days to determine whether the asserted public reaction caused actual office-wide disruption. Compl. ¶¶105, 132–157; McLeod Decl. ¶¶16, 20–21. Yet McLeod identifies no concrete operational harm during that period. Calls or emails expressing disagreement with Plaintiff's speech, standing alone, do not establish that the speech impaired the Office's work.

Furthermore, there is a question of fact whether the law enforcement restrictions were submitted because of true operational concerns or if they were simply retaliation for Plaintiff's speech. Defendants cannot obtain qualified immunity for these acts. A material factual dispute therefore remains whether those restrictions were independent responses to a genuine operational problem or employment obstacles generated after McLeod had already stated that his "plan was to fire" Bromm.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

**d. Defendants' Predictions of Future Disruption Are Speculative**

A government employer may rely on a reasonable prediction of disruption, but it may not rely on speculation, and "bare assertions of future conflict are insufficient to carry the day at the summary judgment stage." *Moser,* 984 F.3d at 905, 909. In *Moser*, the Ninth Circuit reversed summary judgment where the employer relied on a chain of speculation that an officer might later use deadly force, litigation might follow, his deleted Facebook comment might be discovered and admitted, and a jury might rely on it. The court observed that the employer cited no case in which such a speculative chain tipped the Pickering balance. *Id.* at 910–11.

Defendants' own chronology also undercuts their claimed prediction. Meyer sent the PID letters to McLeod on September 12, and McLeod placed Plaintiff on administrative leave immediately afterward. McLeod then drafted a termination letter on September 15, after receiving only a handful of complaint emails and before Snaza and Caldwell issued their September 17 restrictions. No actual disruption emerged after Plaintiff was placed on leave that could justify escalating the discipline to termination. A reasonable jury could therefore find that future disruption was not the real reason for the discipline, but a justification asserted after McLeod had already decided to remove and terminate Plaintiff.

Meyer relies on the possibility that Plaintiff might someday become a witness in an unidentified criminal case and that the posts might then be used as impeachment material, although Meyer admits that Plaintiff was not a law-enforcement officer, had never testified in a criminal proceeding, and was not a witness in any pending case. Meyer Decl. ¶17. Those possibilities do not establish likely disruption. Pickering balancing is not rational-basis review under which government action survives whenever some "imaginable legitimate basis" exists. *Kinney v. Weaver*, 367 F.3d 337, 363 (5th Cir. 2004); see *Nichols*, 657 F.3d at 934.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

The same deficiency applies to generalized assertions about public trust, outside law-enforcement relationships, future challenges to investigations, and Plaintiff's impartiality. Defendants identify no death investigation Plaintiff compromised, no family or witness he treated unfairly, no evidence he mishandled, and no actual case in which his participation created a legal problem. Outsider complaints cannot create a heckler's veto over off-duty speech. See *Melton v. City of Forrest City*, No. 23-3398, slip op. at 6–7 (8th Cir. Aug. 13, 2025).

**e. Retaliatory Motive and Coordinated Conduct Undermine Defendants' Claimed Justification**

Retaliatory motive is ordinarily proven through circumstantial evidence, and timing is powerful circumstantial evidence. Close proximity between protected speech and adverse action supports an inference of unconstitutional retaliation sufficient to survive summary judgment. Coordination among officials acting in sequence against the same speech is independently probative, and knowledge and participation may be inferred from circumstantial evidence. *Lacey v. Maricopa County,* 693 F.3d 896, 917–18 (9th Cir. 2012); *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003); *Gilbrook v. City of Westminster,* 177 F.3d 839, 856–57 (9th Cir. 1999).

The timeline permits a finding that Defendants acted in response to political pressure and disagreement with Plaintiff's speech. On September 11, McLeod initially stated that the speech was protected and discipline was unavailable. On September 12, he changed his position, stated that "all options are being considered," and placed Plaintiff on leave within minutes of receiving Meyer's PID letter. McLeod then prepared a termination letter dated September 15 and circulated termination documents to HR, the Prosecuting Attorney's Office, and other County officials on September 16. Lunde Decl. ¶10, Ex. C.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

On September 16, McLeod admitted to the Washington State Criminal Justice Training Commission: "My plan was to fire him but now our county is having an outside risk pool do a Pre-defense review. If they recommend not firing then if I move forward any litigation would be against me." Lunde Decl. ¶20, Ex. L. CJTC responded that a Brady designation did not prohibit Plaintiff from practicing and should be disclosed only if he testified. *Id.* McLeod separately asked the American Board of Medicolegal Death Investigators whether the PID letter would be "an obstacle to getting certified," while acknowledging that Plaintiff was not yet eligible to apply. Lunde Decl. ¶21, Ex. M. Viewed with the September 15 termination letter, these communications support an inference that McLeod was seeking external support for professional and employment consequences after he had already decided to fire Plaintiff.

On September 17, McLeod texted Caldwell and asked him to call. They spoke, and approximately one hour later Caldwell sent restrictions concerning Plaintiff's duties, to which McLeod responded, "Perfect." Twelve minutes later, McLeod forwarded Caldwell's communication. Snaza sent similar restrictions the same day, and McLeod forwarded that letter fourteen minutes later. The Prosecuting Attorney's Office logged Snaza's letter as "Another FYI" and Caldwell's communication as "a 3rd FYI," following Meyer's PID letter in the same internal sequence. Lunde Decl. ¶¶11, 22, Exs. D, N.

McLeod's September 15 termination letter predates the September 17 restriction communications. A reasonable jury could therefore find that the restrictions did *not* cause the decision to terminate Plaintiff, but were obtained and circulated to support a decision McLeod had already made. The record also presents a factual dispute whether Snaza and Caldwell acted independently or at McLeod's request. Plaintiff alleges that McLeod asked both officials to impose restrictions, while McLeod denies causing or pressuring either official. Compl. ¶¶23,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

132; McLeod Decl. ¶¶17, 19. The text messages, intervening call, and rapid responses permit Plaintiff's version to be credited at summary judgment.

HR then recommended termination based in part on Meyer's letter and the Snaza and Caldwell restrictions. Lunde Decl. ¶10 Ex. C, ¶ 23 Ex. O. The HR report does not identify any lie, dishonest statement, performance deficiency, or employment-policy violation independent of the content of Plaintiff's posts and the public reaction. It marks "Policy and Practice – Social Media" as "substantiated" without identifying or attaching a social-media policy, identifying a provision Plaintiff violated, or explaining the violation. Lunde Decl. ¶23, Ex. O. It also states that Plaintiff did not promptly remove the content or restrict his page, although contemporaneous records show that Plaintiff removed his County affiliation before Swope publicized it. The conflicting evidence permits a finding that Defendants overstated Plaintiff's conduct to justify adverse actions directed at his speech. Plaintiff received a termination letter dated September 22, 2025 signed by Warren McLeod. Lunde Decl. Ex. O.

After terminating Plaintiff, McLeod immediately notified Snaza and Caldwell. Snaza responded, "Thank you," and Caldwell thanked McLeod for the update the following morning. Lunde Decl. ¶¶24–25, Exs. P, Q. Viewed with McLeod's earlier statement that his "plan was to fire" Plaintiff, these communications permit a reasonable jury to infer that the restrictions were intended to create obstacles to Plaintiff's continued employment rather than address an independent operational problem.

**f. The Cases Defendants Rely on Do Not Establish That Defendants are Entitled to Qualified Immunity**

Defendants' cited cases state only general qualified-immunity principles and do not establish immunity for Defendants. *Ashcroft v. al-Kidd, Malley v. Briggs, Pearson v. Callahan,*



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

*and Hunter v. Bryant* do not address First Amendment retaliation or permit the Court to resolve disputed facts, motive, causation, or operational disruption in Defendants' favor. *Pearson* concerns only the order of analysis, while *Malley* confirms that qualified immunity does not protect objectively unreasonable official conduct.

*McIntyre v. Love*, which Defendants miscite as *McEntire*, is a nonbinding pro se dismissal involving identification during a Terry stop, which does not address freedom of speech. *Yerkes, Durham, Robinson, and Ohio Civil Service Employees Association* are nonbinding Sixth Circuit authorities cited for that circuit's general formulation of clearly established law and also have nothing to do with retaliation for public-employee speech.

*Kisela v. Hughes*, 584 U.S. 100 (2018) (per curiam), *Sharp v. County of Orange*, 871 F.3d 901 (9th Cir. 2017), and *Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022), all arise from police use of force, which is inapplicable to a First Amendment case. *Kisela* ties its specificity demand to a setting where an officer has "mere seconds" and the doctrine is hard to apply in the moment. 584 U.S. at 103 to 104. Here, Defendants had eleven days, legal advice, and time to investigate the facts and assess whether any actual operational disruption existed, so *Kisela*'s "squarely governs" standard does not apply to any Defendants' conduct in this case.

*Sharp* addresses First Amendment retaliation, but the plaintiff was a detained citizen retaliated against for arguing with officers, not a government employee – it also does not support Defendants' position because it recognized that officials may be *denied* qualified immunity for retaliating against protected speech. *Yerkes* involved a government employee, but the claim was sex and sexual-orientation discrimination under the Equal Protection Clause, not protected speech. *Ohio Civil Service Employees Association* involved prison employees and mentioned allegations of First Amendment retaliation, but the appeal decided only whether



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

strip and body-cavity searches violated clearly established Fourth Amendment law.

None of Defendants' cases address whether officials may use governmental authority, influence, and access to impose or cause adverse employment consequences because of protected off-duty political speech, which is the conduct at issue here.

**g. Disputed Historical Facts Preclude Summary Judgment Under Pickering**

At minimum, genuine disputes remain over whether Plaintiff's speech caused any operational disruption, whether Swope and McLeod created or amplified the public reaction, whether any staffing strain resulted from Plaintiff's speech or from placing him on leave, whether Snaza and Caldwell acted independently, whether Plaintiff complied with the County's request concerning his affiliation, whether Plaintiff violated any policy, and whether Defendants' asserted concerns were genuine or pretextual. Those disputes must be resolved in Plaintiff's favor before the Court performs the Pickering balance. *Eng*, 552 F.3d at 1071–72. Under that version of the facts, Defendants acted because they disagreed with Plaintiff's protected political expression, not because it impaired government operations or presented a reasonable, evidence-based threat of disruption. Defendants therefore have not carried their burden under Pickering.

Defendants fail to argue the defense that they would have taken the same actions absent Plaintiff's protected speech and submit no arguments or record evidence supporting that defense. Because Defendants bear the burden on that question, it provides no independent basis for summary judgment. *Barone*, 902 F.3d at 1098. Their declarations establish the opposite: each Defendant states that he acted because of Plaintiff's posts.

**B. <u>Second Prong: The Right at Issue was "Clearly Established" at the time of Defendants' Misconduct</u>**



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Defendants misapply the "beyond debate" standard by demanding precedent involving the same official title and precise mechanism of retaliation. The relevant question is whether existing precedent made the unlawfulness of each Defendant's conduct sufficiently clear that every reasonable official would have understood that the conduct violated Plaintiff's rights.

*Ashcroft* confirms that clearly established law does not require "a case directly on point." The question is whether the contours of the right were sufficiently clear that every reasonable official would have understood that the challenged conduct violated it. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A settled constitutional rule may place the question beyond debate and apply with obvious clarity to a new factual setting even though the precise action has not previously been declared unlawful. *Dodge v. Evergreen School District No. 114*, 56 F.4th 767, 780–82 (9th Cir. 2022).

Defendants cannot create uncertainty by defining the right according to each official's precise title or the particular means used to retaliate. A right may be clearly established even where no prior case involved materially similar facts, because "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002). Clearly established law does not require a prior case involving identical facts. *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065–66 (9th Cir. 2006). A general constitutional rule may apply with obvious clarity to particular conduct even without a closely analogous prior decision. *Hope*, 536 U.S. at 741; *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam). In determining whether the law provided fair warning, the Court may consider binding precedent and a robust consensus of persuasive authority. *Moonin v. Tice*, 868 F.3d 853, 868, 874 (9th Cir. 2017).



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

The right at issue is not a right to be free from the precise mechanism of retaliation each Defendant selected. The First Amendment clearly prohibited a government official from using the authority, influence, or leverage available through public office to impose or cause adverse consequences because of protected speech. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1020–21 (9th Cir. 2020); *Capp v. County of San Diego*, 940 F.3d 1046, 1058–59 (9th Cir. 2019); *O'Brien v. Welty*, 818 F.3d 920, 932, 936 (9th Cir. 2016).

The prohibition of governmental authority is not limited to officials who directly employed Plaintiff or possessed final authority to terminate him. First Amendment retaliation is not confined to the employment relationship. *Sampson*, 974 F.3d at 1020–21. An official may violate the First Amendment by directly imposing an adverse consequence through governmental authority within the official's control when the action would chill a person of ordinary firmness from continuing to engage in protected speech. *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300–01 (9th Cir. 1999). An official who lacks authority to impose the ultimate adverse action may also be liable when the official acts with retaliatory animus and induces or causes another official to violate the plaintiff's constitutional rights. *Lacey v. Maricopa County*, 693 F.3d 896, 915–18 (9th Cir. 2012) (en banc).

Existing precedent gave Defendants fair warning that they could not use governmental authority, influence, or leverage to impose or cause adverse consequences because of Plaintiff's protected speech. Qualified immunity protects reasonable mistakes concerning uncertain legal boundaries, but it does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Viewed in Plaintiff's favor, Defendants' conduct violated constitutional rules already established by *Pickering*, *Rankin*, *Sampson*, *Capp*, *O'Brien*, *Mendocino Environmental Center*, and *Lacey*.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

**C. Each Defendant Had Fair Warning That His Conduct Was Unlawful**

The contours of Plaintiff's First Amendment right to be free from adverse professional or employment consequences imposed or caused by government officials in retaliation for his protected off-duty political speech were sufficiently clear. The law governing Defendants' conduct was clearly established under public-employee speech cases. Existing precedent gave a reasonable official in each Defendant's position fair warning that using governmental authority, influence, or access to impose or cause such consequences violated the First Amendment. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002).

A public employer may not discipline an employee for speaking as a private citizen on a matter of public concern unless the government's legitimate operational interests outweigh the employee's First Amendment interests. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). In *Rankin v. McPherson*, 483 U.S. 378, 386–92 (1987), the Supreme Court applied that rule to a public employee's statement expressing hope that another assassination attempt against President Reagan would succeed, holding that the speech remained protected where the government failed to establish sufficient workplace disruption. *Rankin*, 483 U.S. at 386–92. *Pickering* and *Rankin* provided fair warning that a public employer cannot not punish Plaintiff for protected political speech without a sufficient governmental justification.

First Amendment retaliation liability is not limited to Plaintiff's employer or direct supervisor. A government official may be liable when he uses the authority, influence, or access of public office to impose adverse consequences for protected speech, or when, acting with retaliatory motive, he induces or causes another official to impose those consequences, even though he lacks authority to make the ultimate employment decision. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1020–21 (9th Cir. 2020); *Capp v. County of San Diego*, 940 F.3d 1046,



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

1053–55, 1058–59 (9th Cir. 2019); *O'Brien v. Welty*, 818 F.3d 920, 932, 936 (9th Cir. 2016); *Lacey v. Maricopa County*, 693 F.3d 896, 915–18 (9th Cir. 2012) (en banc).

Furthermore, Defendants' own communications expressly identified Plaintiff's speech as protected by the First Amendment. Swope Decl. ¶ 7, Ex. C; Snaza Decl. Ex. A; Lunde Decl. ¶ 15, Ex. H; Lunde Decl. ¶ 14, Ex. G. Their statements confirm that Defendants understood that Plaintiff's speech was constitutionally protected before taking the challenged actions.

*1. Swope*

As to Swope, the question is not whether Swope had a First Amendment right to express his own political opinion. It is whether it was clearly established that an elected county official may not use the authority, influence, and reach of his public office to identify a public employee, amplify the employee's protected off-duty political speech, direct the public to contact the employee's supervisor, and thereby cause adverse employment consequences because of that speech. Defendants define the challenged conduct as Swope merely expressing his political opinion. *Bond v. Floyd*, 385 U.S. 116 (1966), is inapplicable because it protects legislators from being punished for their *own* protected political speech; it says nothing about whether a legislator is immune for retaliatory conduct directed at *someone else's* protected speech.

Existing precedent also did not permit Swope to avoid liability merely because he lacked direct supervisory authority over Plaintiff. *Sampson*, 974 F.3d at 1020–21; *Capp*, 940 F.3d at 1058–59; *Lacey*, 693 F.3d at 915–18. Viewed in Plaintiff's favor, Swope identified Plaintiff as a County employee, disclosed his employer, published his supervisor's non-public email address, directed public attention toward that supervisor, and generated demands for Plaintiff's termination. Compl. ¶¶80–94. A reasonable official would have understood that



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

using public office and governmental influence to cause employment consequences in retaliation for protected speech violated the First Amendment.

Swope's lack of direct employment authority over Plaintiff does not preclude liability. A government official may violate the First Amendment by using governmental authority, influence, or access to cause adverse consequences for another person's protected speech. *Capp*, 940 F.3d at 1053–55; *Sampson*, 974 F.3d at 1020.

Swope's own words establish evidence of retaliatory motive. Swope's own post acknowledged that Charlie Kirk "would respect this individual's freedom of speech" and "would not silence him." Lunde Decl. ¶12**,** Ex. E. But in the same post, Swope tried to punish Plaintiff for his speech by disclosing his employer and supervisor's contact information, and generated public pressure directed at Plaintiff's employment. Lunde Decl. ¶26, Ex. R.

On September 12, Plaintiff contacted Swope and asked him to remove the post, but Swope never did – instead, Swope amplified Plaintiff's post further by pinning his post about Plaintiff to the top of his page. Bromm Decl. ¶12, Ex. C. Lunde Decl. ¶27, Ex. S.

Swope's own subsequent conduct further supports retaliatory motive. On September 12, one day after targeting Plaintiff's criticism of Charlie Kirk, Swope posted a video comparing the reaction to Kirk's death with protests following George Floyd's death. Swope's willingness to use his public platform for provocative political commentary while directing employment pressure against Plaintiff for contrary political speech permits a reasonable jury to find that Swope acted because he disagreed with Plaintiff's viewpoint, not because he neutrally opposed inflammatory political expression. Lunde Decl. ¶26, Ex. R.

Swope's identification of Plaintiff and his employer, publication of the supervisor's contact information, amplification of the posts to a substantially larger audience, and refusal to



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

remove the post establish direct and circumstantial evidence that Swope used his governmental position and public following to cause adverse employment consequences because of Plaintiff's protected speech.

Viewed in Plaintiff's favor, the evidence establishes that Plaintiff spoke as a private citizen on a matter of public concern, that Meyer, McLeod, Snaza, and Swope took or caused adverse actions in response to that speech, and that Plaintiff's speech was a substantial or motivating factor in their conduct. The evidence concerning the timing and coordination of Defendants' actions, the source of Snaza's asserted photograph, the existence of actual workplace disruption, and the sincerity of Defendants' stated reasons cannot be resolved in Defendants' favor on summary judgment.

Existing precedent gave Defendants fair warning that they could not use governmental authority, influence, or leverage to impose or cause adverse consequences because of Plaintiff's protected speech. Qualified immunity protects reasonable mistakes concerning uncertain legal boundaries, but it does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Viewed in Plaintiff's favor, Defendants' conduct violated constitutional rules already established by *Pickering*, *Rankin*, *Sampson*, *Capp*, *O'Brien*, *Mendocino Environmental Center*, and *Lacey*.

*2. Meyer*

As to Meyer, the question under this section of the analysis is not whether a prosecutor may make a Brady determination. It is whether clearly established law permitted Meyer to use prosecutorial authority to impose professional consequences because of protected political speech. Defendants characterize Meyer's conduct as issuing a PID and placing Plaintiff on a PID list, argue that no precedent clearly prohibited it and that Meyer complied with legal and



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

ethical standards. Meyer submitted no evidence that he actually placed Plaintiff on such a list or complied with the PID law or standards. *Sampson*, *Capp*, *O'Brien*, and *Lacey* established that an official need not be the employer or final decisionmaker to be liable for inducing or causing adverse action. Viewed in Plaintiff's favor, Meyer investigated Plaintiff's speech, issued employer-directed letters threatening "consequences," and supplied the letter McLeod and Human Resources used to place Plaintiff on leave and terminate him. A reasonable prosecutor would have understood that using prosecutorial authority to cause employment consequences for protected speech violated the First Amendment.

Meyer used the authority of the Prosecuting Attorney's Office to investigate Plaintiff's protected speech, issue two letters emailed only to Plaintiff's employer, and state that exercising that freedom could have "consequences." McLeod placed Plaintiff on leave within minutes of receiving the first letter, Human Resources relied on the "Brady letter," and McLeod later relied on it to terminate Plaintiff. Viewed in Plaintiff's favor, the content, recipient, timing, and use of the letters support a finding that Meyer's conduct would chill protected speech and that Plaintiff's speech was a substantial or motivating factor in Meyer's action. Lunde Decl. ¶9, Ex. B; Bromm Decl. ¶13.

Meyer's letters state that "[w]ithout question such speech is protected under the first amendment," and then warns that "in the exercise of freedom, there may also be consequences." Lunde Decl. ¶9, Ex. B. A reasonable prosecutor would have understood that using prosecutorial authority to cause employment consequences for protected speech violated the First Amendment.

*3. McLeod*

As to McLeod, the question is not whether a coroner may terminate an employee for



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

offensive social-media posts, it is whether it was clearly established that McLeod could not terminate Plaintiff for off-duty political speech based on public backlash and generalized concerns about trust or impartiality, absent evidence of actual workplace disruption or a reasonable, evidence-based prediction that the speech would impair office operations, working relationships, or Plaintiff's job performance.

Viewed in Plaintiff's favor, McLeod acknowledged Plaintiff's speech was protected – he knew Plaintiff made the posts at home, outside working hours, on his personal Facebook account, and not pursuant to his official duties.

On the evening of September 11, 2025, McLeod responded to a comment on Swope's post that he had consulted with the prosecuting attorney's office and that Plaintiff's posts were "protected speech under the 1st Amendment," that "there cannot be disciplinary action against the person," and that discipline could result in civil action for violating Plaintiff's First Amendment rights. Lunde Decl. ¶14, G. In separate email responses to members of the public that evening, McLeod wrote that "the civil side of the prosecutor's office" had advised that Plaintiff's speech was protected, that "disciplining could result in civil action by the employee for violating the 1st Amendment right," and that Plaintiff "cannot be held to any type of discipline for the disgusting post." Lunde Decl. ¶ 15, Ex. H. In a separate email sent at 8:11 p.m. in the group email thread titled "Political targeting concern," McLeod wrote that Plaintiff's posts were "protected under the 1st Amendment, no matter how disgusting they may be," and that his conversation with Plaintiff was "the extent of what can be legally done." Lunde Decl. ¶ 15, Ex. H.

McLeod nevertheless placed Plaintiff on leave, procured restrictions from other officials, and terminated Plaintiff based on the speech and the resulting restrictions. Compl.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

¶¶105,132–157. McLeod openly admitted in an email to the Washington State Criminal Justice Training Commission, subject "Question" "My plan was to fire him but now our county is having an outside risk pool do a Pre-defense review. If they recommend not firing then if I move forward any litigation would be against me." Lunde Decl. ¶ 20, Ex. L.

A reasonable coroner in McLeod's position would have understood that placing Plaintiff on administrative leave and terminating him because of his protected off-duty political speech, without sufficient operational justification, violated the First Amendment.

After Swope published his post about Plaintiff, a participant in the email chain wrote "And Mr. Swope enters the chat" at 6:54 p.m., which placed Meyer, Snaza, and McLeod on notice of Swope's post. At 8:11 p.m. McLeod responded to the group, confirmed that Plaintiff worked for his office, and wrote that he shared the "horror at the posts," while also stating that the posts were protected under the First Amendment "no matter how disgusting they may be" and that nothing further could lawfully be done. Lunde Decl. ¶15, Ex. H. A reasonable jury could find that McLeod condemned Plaintiff's speech to an audience of elected officials and the press at the same time he acknowledged that the speech was protected and that no discipline was available.

McLeod changed his position and tone the following day when responding to "a precinct appointee for the Lewis County Republican Party" and publicly stated in an email that "all options are being explored at this point." Lunde Decl. ¶15, Ex. H. As described above, McLeod placed Plaintiff on leave, signed a termination letter on September 15, and told the Criminal Justice Training Commission that his plan was to fire Plaintiff. Lunde Decl. ¶10, Ex. C, ¶20, Ex. L.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

As described above, those September 16 communications to criminal justice and medicolegal associations came *before* any restrictions from Snaza or Caldwell on September 17, which further supports the inference that he had already decided to terminate Plaintiff and was seeking additional grounds to justify that decision. Lunde Decl. ¶¶20–21, Exs. L,M, Compl. ¶¶132–143,156–157.

On September 16 at 1:40 p.m., McLeod admitted his "plan was to fire" Plaintiff, but that the County's outside risk pool was conducting a pre-defense review. McLeod explained that, if the risk pool recommended against termination and he proceeded anyway, "any litigation would be against me." Lunde Decl. ¶20, Ex. L.

Later that same evening, McLeod asked the American Board of Medicolegal Death Investigators whether the PID letter would obstruct Plaintiff's future certification and stated that he was working with the prosecutor, Human Resources, and the risk pool "to see what type of disciplinary action may be possible." Lunde Decl. ¶21, Ex. M. These communications permit a reasonable jury to find that McLeod had selected termination as his preferred outcome before the restrictions were issued and before Human Resources completed its investigation.

As described above, McLeod initiated contact with Caldwell on the morning of September 17 and received Caldwell's restriction email that afternoon. At 9:26 a.m., McLeod texted Caldwell, "Morning Andy. Can u call me when you get a chance? No hurry." Caldwell responded that he would call after his meeting ended at 11:00 a.m., and Caldwell's telephone records show an outgoing call to McLeod at 11:11 a.m. Lunde Decl. ¶29, Ex. T. At 12:17 p.m., shortly after the call, Caldwell emailed McLeod requesting that Plaintiff not be dispatched without a supervisor to any death investigation in Centralia that might be connected to criminal activity. Lunde Decl. ¶22, Ex. N. Caldwell then texted McLeod, "I just sent you an email," and



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

McLeod responded, "Thanks Sir." After Caldwell stated that he had copied Sheriff Snaza and Chief Kaut on the email, McLeod replied, "Perfect." Lunde Decl. ¶29, Ex. T. The timing and content of these communications permit a reasonable jury to infer that McLeod produced Caldwell's restriction to support a termination he had already decided.

On September 22, five days after obtaining the restrictions from Snaza and Caldwell, McLeod terminated Plaintiff. The letter effectuating the termination relied on Meyer's PID letter and the restrictions imposed by Snaza and Caldwell, but identified no dishonesty, performance deficiency, or violation of any policy governing Plaintiff's off-duty speech. Lunde Decl. ¶10, Ex. C. As described above, McLeod's reversal, the timing of the leave and the termination letter, his stated plan to fire Plaintiff, and his procurement of the restriction letters provide direct and circumstantial evidence that Plaintiff's protected speech substantially motivated the termination.

The Human Resources report and termination letter also create material disputes concerning pretext because neither identifies a prior performance problem, actual bias in an investigation, dishonesty, falsification, or a specific policy prohibiting off-duty political speech, and the Human Resources report relied on the PID letter and law-enforcement restrictions as the reason Plaintiff could no longer perform his job. Lunde Decl. ¶¶10 Ex. C, ¶23 Ex O.

After Plaintiff was terminated, Rachel Lester asked Plaintiff if he wanted to write a statement, but said it would not change the outcome or the decision. Plaintiff made the statement orally and she wrote some things down. She emailed the statement she wrote to McLeod after Plaintiff was terminated. Lunde Decl. ¶30, Ex. U. Plaintiff disputes that he said he regretted his actions, he did say he regretting the effect it caused.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

The evidence also creates a genuine dispute concerning whether McLeod's stated operational reasons were genuine or were offered to justify a termination decision made in response to protected speech, and the Court cannot resolve that dispute in McLeod's favor on summary judgment.

*4. Snaza*

As to Snaza, the question is not whether a sheriff may control who participates in criminal investigations. It is whether clearly established law permitted Snaza to use that authority to restrict Plaintiff's duties because of protected speech without evidence that Plaintiff's participation had impaired an investigation or created an operational risk.

Defendants define the right too narrowly, as a right to participate in suspicious-death investigations, and argue that no case makes the restriction "beyond debate" unconstitutional. Snaza did not need to employ Plaintiff or possess authority to terminate him. The decisions in *Sampson*, *Capp*, *O'Brien*, and *Mendocino Environmental Center* establish that a government official may not use governmental authority within the official's control to impose professional or other adverse consequences in retaliation for protected expression.

Snaza did not need to employ or supervise Plaintiff to violate the First Amendment. A government official may be liable for using governmental authority to cause professional consequences in retaliation for protected activity even without a direct employment relationship. *Capp v. County of San Diego*, 940 F.3d 1046, 1053–55 (9th Cir. 2019); *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1020 (9th Cir. 2020).

Viewed in Plaintiff's favor, Snaza acknowledged Plaintiff's First Amendment right in the same letter that restricted Plaintiff from responding to death investigations connected to criminal activity because of the speech. Lunde Decl. ¶11, Ex. D. A reasonable official in



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Snaza's position would have understood that using the authority of the Sheriff's Office to impose that restriction in retaliation for protected speech violated the First Amendment.

Snaza's letter acknowledged Plaintiff's First Amendment right to free speech and imposed the restriction in response to the same speech, the letter followed a private conversation with McLeod, McLeod forwarded it to Human Resources, the Budget Department, and the Prosecuting Attorney's Office fourteen minutes after receiving it, and the Prosecuting Attorney's Office logged the letter as "Another FYI" in the same sequence as Meyer's PID letter. Compl. ¶¶26,132, 135–137.

Snaza's asserted factual basis is also disputed. His letter refers to a photograph purportedly depicting Plaintiff in uniform with an Antifa flag, but Plaintiff alleges that he never posted such a photograph and that is in dispute. Bromm Decl. ¶17. The existence and source of that photograph are material to whether Snaza acted on an independent operational concern or participated in the coordinated response to Plaintiff's speech.

Plaintiff did not create, post, distribute, or authorize any image depicting him in his Coroner's Office uniform with an Antifa symbol. *Id.* Defendants have not identified who created the image, when it was created, where it originated, or how it came into their possession. A material factual dispute therefore exists whether the image accurately represented content attributable to Plaintiff and whether Snaza and McLeod relied on a manipulated image that Plaintiff neither created nor authorized.

Plaintiff had deleted the posts before Snaza issued the restriction. Bromm Decl. ¶10. Snaza's acknowledgment of Plaintiff's speech rights in the restriction letter, his communication with McLeod, McLeod's immediate internal use of the letter, the disputed photograph, and the



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

absence of any continuing publication establish direct and circumstantial evidence that Plaintiff's protected speech was a substantial or motivating factor in Snaza's action.

At summary judgment, the Court must resolve genuine disputes of historical fact in Plaintiff's favor before determining whether Defendants' conduct, viewed under that version of the facts, violated clearly established law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Defendants are not entitled to have the clearly established inquiry decided according to their preferred characterization of disputed conduct, motive, coordination, or operational necessity.

Viewed in Plaintiff's favor, Defendants used the governmental authority, influence, and leverage available to them to impose or cause professional and employment consequences because of Plaintiff's protected speech, conduct that existing precedent clearly prohibited.

This Court should deny qualified immunity for all Defendants.

**III. Swope Has Not Established Entitlement to Summary Judgment on Plaintiff's Doxing Claim**

The Motion's premise that Plaintiff's name, employment information, or photographs were already public does not dispose of the claim because RCW 4.24.792(3) expressly provides that prior public disclosure or ready discoverability is not a defense. The statute instead turns on consent, intent or reckless disregard that the information will be used to harm, and resulting injury or substantial life disruption. RCW 4.24.792(1), (3).

Material disputes remain concerning whether Swope published Plaintiff's employment information without Plaintiff's consent, whether the email address was public, whether Swope directed his followers to contact Plaintiff's employer knowing or recklessly disregarding that the information would be used to harass or harm Plaintiff, and whether the publication caused



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

mental anguish, fear, economic injury, or substantial life disruption. (Bromm Decl. ¶¶8, 9, 12, 26, 27; Lunde Decl. ¶¶12, 13, 27, Exs. E, F, S.)

The cited evidence would permit a reasonable jury to find each element of Plaintiff's claim under RCW 4.24.792. Swope's post identified Plaintiff as an employee of the Lewis County Coroner's Office and displayed Warren McLeod's county email address, which was not published on the County's Contact the Coroner form. Lunde Decl. ¶¶12, 13, Exs. E, F. On September 12, 2025, Plaintiff messaged Swope, cited RCW 4.24.792, and asked him to remove the post. Swope did not remove it, and after the Complaint was filed he pinned it to the top of his page. Bromm Decl. ¶12, Ex. C; Lunde Decl. ¶27, Ex. S. Swope's Declaration filed on July 6, 2026 also shows it was pinned because the word "Pinned" falls under the blue docket number, Decl. of Swope, Dkt 30-3. Therefore, as of the date of their Motion filed on July 6, 2026, his post about Plaintiff was still pinned to the top of his page.

Plaintiff has described the resulting fear and disruption, including a man following his wife from their home to her workplace and pounding on her vehicle window while yelling Plaintiff's name, later confrontations by members of the public, the loss of his position, and the loss of standing in his community. Bromm Decl. ¶¶8, 9, 26, 27.

Swope admits that he republished the material and identified Plaintiff as a County employee working in the Coroner's Office. Swope Decl. ¶7. On September 12, 2025, after being placed on administrative leave, Plaintiff directly messaged Swope through Facebook, cited RCW 4.24.792, and asked him to remove the post identifying Plaintiff and his employer. Bromm Decl. ¶12, Ex. C. Swope refused to remove the post, left it publicly available, and pinned it to the top of his Facebook page, increasing and prolonging its visibility after Plaintiff removed his own posts. Bromm Decl. ¶12. A reasonable jury could therefore find that the



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

continuing public attention and complaints were generated by Swope's deliberate amplification, not by Plaintiff's original posts.

Swope's First Amendment argument addresses only his initial publication and does not answer the evidence that he later pinned the post to the top of his Facebook page after Plaintiff asked him to remove it and informed him of the resulting harm. Defendants characterize Swope's conduct as a "single repost," but the additional act of pinning it to his page was an additional affirmative act that renewed and prolonged its visibility. Mot. 32; Compl. ¶¶119–121,262; Bromm Decl. ¶12, Lunde Decl. ¶27, Ex. S. Swope offers no explanation for that later amplification and no evidence disputing that it continued to expose Plaintiff to public attention and harm. As of the date of this filing, Swope still has not removed the post.

The statutory free-speech exception does not entitle Swope to judgment merely because his post contained political commentary. The question is whether the challenged publication of identifying information, viewed in context and with the required intent or reckless disregard, was constitutionally protected. Those disputed facts cannot be resolved in Swope's favor at summary judgment.

## IV. Defendants' Request for Attorney Fees Must be Denied

Defendants' request for attorney fees should be denied. Defendants are not prevailing parties, no judgment has been entered in their favor, and their Motion neither states the amount sought nor provides a fair estimate as required by Federal Rule of Civil Procedure 54(d)(2)(B). Although Rule 54(d)(2)(C) permits the Court to decide entitlement before receiving evidence concerning the amount, Defendants have not established entitlement. The substantial factual disputes and legal authority supporting Plaintiff's claims independently foreclose any finding that the action is frivolous, unreasonable, or without foundation.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

## V. Genuine Disputes of Material Fact Preclude Summary Judgment

Summary judgment is available only where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). The Court must believe Plaintiff's evidence and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Defendants moved on four declarations and exhibits of their own selection, before the Rule 26(f) conference and before any discovery was exchanged. On that record, the following material facts are disputed and cannot be resolved in Defendants' favor:

- the function Meyer's letters served;
- whether Meyer decided to place Plaintiff on a PID list, and whether Plaintiff was ever placed on one;
- the content of the materials Meyer states he reviewed and attached;
- whether the law enforcement restrictions were imposed for operational reasons or in retaliation for Plaintiff's speech;
- whether Snaza and Caldwell acted independently or at McLeod's request;
- the existence and source of the photograph depicting Plaintiff in uniform with an Antifa symbol;
- whether the Coroner's Office experienced any actual operational disruption;
- whether McLeod's stated operational reasons were genuine or were offered to justify a decision made in response to protected speech;
- what Plaintiff said at the September 22, 2025 meeting, which Defendants recorded;
- what the risk pool pre-defense review concluded, and whether McLeod terminated Plaintiff notwithstanding it; and
- whether the Human Resources finding rested on any policy governing off duty speech.



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

Lunde Decl. ¶32.

**VI. Genuine Disputes of Material Fact Preclude Summary Judgment**

For the reasons stated above, genuine disputes of material fact preclude summary judgment on every ground Defendants raise. Meyer has not carried his burden of establishing that the function he performed was intimately associated with the judicial phase of the criminal process, and no Defendant has established entitlement to qualified immunity. Plaintiff respectfully requests that the Court deny the Motion in its entirety, including as to Plaintiff's claim under RCW 4.24.792 and Defendants' request ¶for attorney fees. In the alternative, if the Court finds any claim insufficiently supported, Plaintiff requests leave to amend under Fed. R. Civ. P. 15(a)(2) and LCR 15.

Respectfully submitted,

DATED on this 27th day of July 2026,

*I certify that this memorandum contains* 12,592 words, in compliance with the Court's Order granting Plaintiff leave to file an overlength opposition.

LUNDE LEGAL, PLLC

/s/ Elizabeth G. Lunde
Elizabeth G. Lunde, WSBA No. 51565
/s/ Andreas A. Kralios
Andreas A. Kralios, WSBA No. 51742
6817 27th Ave West, # 65454
University Place, WA 98466
Telephone: (253)302-0136
Email: ELunde@LundeLegal.com
Email: AKralios@LundeLegal.com
*Attorneys for the Plaintiff Paul Bromm*



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com

**Certificate of Service**

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

I further certify that this Opposition contains 12,592 words in compliance with the Court's Order.

Dated this 27th day of July 2026, at University Place, Washington,

/s/ Elizabeth G. Lunde
Elizabeth G. Lunde, WSBA No. 51565



Lunde Legal, PLLC
6817 27th Ave West, #65454
University Place, WA 98466
Phone: (253)302-0136
Email: ELunde@LundeLegal.com