UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL BROMM,<br><br>Plaintiff,<br>v.<br><br>LEWIS COUNTY, et al.,<br><br>Defendants. | CASE NO. 3:26-cv-05384-BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS LEWIS COUNTY AND THE CITY OF CENTRALIA'S MOTION TO DISMISS |

This matter is before the Court on defendants Lewis County and the City of Centralia's motion to dismiss, Dkts. 19, 20.

This case arises from the Lewis County Coroner's Office's decision to terminate plaintiff Paul Bromm from his employment as a deputy coroner in response to social media posts he made following the widely publicized death of Charlie Kirk. Bromm alleges that several Lewis County officials, as well as Centralia Police Chief Andy Caldwell, conspired to terminate his employment in retaliation for protected First Amendment speech. *See* Dkt. 1. Bromm also asserts a *Monell* claim against Lewis County and the City of Centralia. Lastly, Bromm asserts a state law claim for "doxing" under Wash. Rev Code § 4.24.792.

Lewis County filed a motion to dismiss Bromm's *Monell* claim against it, in which the City of Centralia joins.[1]

## I. BACKGROUND

Bromm was employed as a removal technician by the Lewis County Coroner's Office beginning in August 2024 and was promoted to Deputy Coroner on a part-time basis in January 2025. Dkt. 1 at 16, 17. On September 11, 2025, the day after Charlie Kirk was fatally shot, Bromm shared social media posts appearing to celebrate—or at least make light of—the incident. *Id.* at 23. Bromm's post was then re-shared by a local elected official who criticized Bromm for his post and tagged defendant Lewis County Commissioner Sean Swope, inquiring "correct me if I'm wrong but isn't he an employee of Lewis County in the Coroner's Office?" *Id.* Swope responded that he would "look into it." *Id.* at 2.

Later that evening, Swope made a post confirming Bromm's employment with Lewis County and directing readers to voice their concerns to the Lewis County Coroner, defendant Warren McLeod, and provided McCleod's email address. *Id.* McCleod later posted a comment to Swope's post, agreeing that Bromm's posts were "disgusting," but explaining that he "ha[d] been in touch with the county legal department" and that "[t]he posts are protected speech under the 1st Amendment and there cannot be disciplinary

[1] Defendants McCleod, Swope, Snaza, and Meyer subsequently filed a motion for summary judgment, Dkt. 26, which remains pending and will be addressed by the Court in due course.

action against the person." *Id.* at 26. However, in response to an email he later received, McCleod allegedly wrote "[a]ll options are being explored at this point." *Id.* at 27.

The following day, the Lewis County Prosecuting Attorney, defendant Jonathan Meyer, sent McCleod a potential impeachment disclosure (PID) letter advising that the prosecutor's office had reviewed "several posts made on social media by Mr. Bromm" and concluded that while the posts were protected by the First Amendment "without question," they "may show a biased [sic] against an identifiable group." *Id.* at 28. Minutes later, McCleod called Bromm and placed him on administrative leave. *Id.* at 29. Bromm alleges that this letter was sent "outside the context of any criminal case and solely for administrative purposes related to Plaintiff's employment" and that the letter had "no legitimate government purpose." *Id.* at 29, 33.

On September 15th, 2026, while Bromm was on administrative leave, McCleod allegedly drafted and sent a file titled "Paul Bromm termination documentation" to the Lewis County Director of Human Resources. *Id.* at 33. The letter was addressed to Bromm and indicated that Bromm was being terminated as a direct result of the PID letter issued by Meyer's office. *Id.* However, Bromm avers that the letter was never sent, and that a meeting scheduled with him for the following day was canceled. *Id.*

In the days that followed, McCleod is alleged to have contacted the Washington Criminal Justice Training Commission and the American Board of Medicolegal Death Investigators to inquire about the effect a PID letter might have on Bromm's ability to attain or maintain his certifications. McCleod also contacted the Lewis County Sheriff, defendant Robert Snaza, and the Centralia Police Chief, defendant Andy Caldwell,

regarding Bromm's conduct. *Id.* at 36-41. In response, Snaza sent a letter to McCleod opining that is would be "in the best interest of the Sheriff's Office that Mr. Bromm does not respond to any calls with the Sheriff's Office regarding a suspicious death and/or death that requires a criminal investigation . . . to maintain the integrity of any potential criminal investigation involving a death." *Id.* at 38. Similarly, Caldwell sent a letter requesting that Bromm "not be dispatched without being accompanied by a supervisor to any death investigation within the City of Centralia where the death may be connected in any way to a criminal act." *Id.* at 38-39. Bromm maintains that these actions were all a coordinated attempt to rationalize his termination post-hoc, with McCleod acting as the "central coordinator." *Id.* at 60-61.

On September 22, 2025, Lewis County terminated Bromm's employment. McCleod's termination letter identified Bromm's social media posts and the resulting "negative attention" and "disruption" to the Coroner's Office as grounds for dismissal, as well as the PID letter from the Prosecutor's Office and concerns expressed by the public and law enforcement that Bromm would "not be able to perform [his] job duties in a neutral manner." *Id.* at 44. The letter also indicated that Bromm would have an opportunity to attend a "name clearing hearing," but because his termination took effect the same day, Bromm alleges no hearing occurred or could have. *Id.*

Bromm asserts 42 U.S.C. § 1983 claims against Commissioner Sean Swope, Coroner Warren McCleod, Prosecuting Attorney Jonathan Meyer, Sheriff Robert Snaza, and Centralia Police Chief Andy Caldwell for conspiring to deprive him of his First Amendment free speech rights. Bromm further asserts a claim of "doxing" against

Swope, accusing him of violating Wash. Rev. Code § 4.24.792. Bromm also asserts a *Monell* claim against Lewis County and Centralia, arguing that the actions of their final policymakers directly harmed him. Lewis County and Centralia move to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 19, 20.

## II. DISCUSSION

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Bromm's claims against Lewis County and Centralia arise under 42 U.S.C. §1983. A plaintiff can establish liability on the part of a municipality or county in one of three ways: (1) by proving that the employee committed the alleged unconstitutional violation pursuant to a formal government policy or longstanding practice or customs which constitutes the standard operating procedure of the local governmental entity; (2) by establishing that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself constituted an act of official governmental policy; or (3) by proving that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996).

Lewis County's motion assumes that Bromm's *Monell* claim is premised on the existence of an unlawful policy or custom and argues that because Bromm does not allege any facts to support the existence of such a policy or custom, his claim fails as a matter of law. Dkt. 19. The County further argues that Bromm's ratification theory of §1983 liability is not an independent theory of liability but is instead a method of proving the existence of an informal custom or practice, which again, it argues he has failed to plausibly allege. *Id.* at 19-20.

In response, Bromm clarifies that his Monell claim instead relies on the final policy-maker theory of liability, pointing out that the court "need not reach alternative theories of municipal liability based on policy, custom, or ratification" if the Complaint alleges a cognizable basis for relief under the final policy-maker theory. Dkt. 22 at 10.

Bromm is correct. Unlike when a plaintiff seeks to hold a municipality liable for the actions of subordinate employees under a custom or practice theory—in which case the plaintiff must demonstrate a well-established practice and cannot rely merely on "isolated or sporadic incidents," *Trevino v. Gates*, 99 F.3d 911—a local government may be held liable for the actions of its final policymakers "whether or not that body ha[s] taken similar action in the past or intend[s] to do so in the future." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). The Complaint plausibly alleges that at least one final policymaker for Lewis County (McCleod),[2] and one final policymaker for the City of Centralia (Caldwell), were responsible for Bromm's claimed constitutional injuries. Dkt. 1 at 62, 65.

Alerted to Bromm's final policymaker argument, Lewis County's Reply swivels its guns to take on this theory, but too late. *See* Dkt. 23 at 3-12. This Court declines to address arguments raised for the first time in a reply. *See e.g.*, *Moran v. Beale*, No. SACV07-01057 MMM(RNBx), 2008 WL 11409862, at *6 (C.D. Cal. May 19, 2008) ("[A]s a general rule, the court will not consider arguments raised by a defendant for the first time in reply."). For the same reason, the Court declines to consider Centralia's argument that the temporal relationship between when Coroner McCleod first decided to terminate Bromm, and the later communication by Chief Caldwell asking McCleod not to

[2] In his response to the motion to dismiss, Bromm makes argument about the final policymaking authority of defendants Meyer and Snaza, but the Complaint does not contain an allegation that these individuals exercised final policymaking authority with respect to any of the actions Bromm complains of. Dkt. 22 at 10-12. Conversely, Bromm appears to abandon the argument that defendant Swope was acting as a final decisionmaker for Lewis County. *See id.*

deploy Bromm unsupervised to any investigations in Centralia, show that no conduct on the part of Centralia or its officer was a "moving force" behind Bromm's termination. *See* Dkt. 24. Of course, both Lewis County and Centralia are free to raise their arguments in future motions.

However, Lewis County reasonably interpreted Bromm's complaint as invoking a policy or custom theory of *Monell* liability against it—even if not his sole theory—and is correct in pointing out the absence of factual allegations to support Bromm's conclusion that Lewis County "maintained policies, customs, or practices that permitted retaliation against employees for protected political speech." Dkt. 1 at 241. Bromm does not disavow reliance on a policy or custom theory of *Monell* liability, nor does he defend the adequacy of his factual allegations on that point. Instead, he says he is "reserve[ing] [his] right to pursue liability based on policy, custom, or ratification to the extent the evidence supports those theories as the case develops." Dkt. 22 at 10, n.1. Bromm may seek leave to amend his complaint to add additional theories of municipal liability if factual developments lead him to believe those claims are supportable, but speculation as to whether he will be able to plausibly allege a policy or custom at some future date does not change the fact that he has not done so. Any claim Bromm currently has against the defendants premised on a policy or custom theory of *Monell* liability is therefore dismissed without prejudice.

Lewis County and the City of Centralia's motions to dismiss are **DENIED IN PART AND GRANTED IN PART**. The sufficiency of Bromm's final policymaker theory of *Monell* liability is not properly before the Court on the instant motion.

However, any claim of §1983 liability currently pending against the defendants under a policy or custom theory of *Monell* liability is **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED.**

Dated this 3rd day of September, 2026.

BENJAMIN H. SETTLE
United States District Judge