HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL BROMM,<br><br>Plaintiff,<br><br>vs.<br><br>LEWIS COUNTY; SEAN SWOPE, in his individual capacity; WARREN MCLEOD, in his individual capacity; JONATHAN MEYER, in his individual capacity; ROBERT SNAZA, in his individual capacity; CITY OF CENTRALIA; ANDY CALDWELL, in his individual capacity; JOHN AND JANE DOEs 1-10; AND GOVERNMENT ENTITY/CORPORATE DOEs 1-10,<br><br>Defendants. | No. 3:26-CV-05384-BHS<br><br>MOTION FOR SUMMARY JUDGMENT BY DEFENDANT LEWIS COUNTY<br><br>**Noted for October 28, 2026** |

## I. INTRODUCTION

Plaintiff Paul Bromm was employed as a part-time Deputy Coroner with Lewis County – a position charged with conducting unbiased investigations into



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

people's deaths. ECF 1 at 16, 17. As this Court stated in its September 14, 2026 Order (ECF No. 43), "After conservative activist and media personality Charlie Kirk was shot in September 2025, Bromm shared memes and made other posts on his Facebook that appeared to make light of the killing, even suggesting it was deserved." ECF 43 at 1:17-19. The elected Coroner, Warren McLeod ultimately terminated Mr. Bromm for the posts. Additionally, the elected Prosecutor issued a PID (Brady) letter on Bromm, the elected Sheriff barred him from responding to suspicious death scenes, and Commissioner Swope made a First Amendment protected post on Facebook.

All individual claims against Coroner McCleod, Prosecutor Meyer, Sheriff Snaza, and Commissioner Swope have been dismissed. ECF 43. And, with one exception, Bromm's *Monell* claim against the County has been dismissed. ECF 42. The exception, and the only remaining claim against Lewis County, is that the County violated Bromm's First Amendment right to free speech under the theory that "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself constituted an act of official governmental policy" under *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996). ECF 42 at 6.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

This motion seeks dismissal of that claim on summary judgment because none of the four involved elected officials violated Bromm's First Amendment rights.

## II. FACTS

The following undisputed facts were found by this Court in its September 3, 2026, Order (ECF No. 42):

> Bromm was employed as a removal technician by the Lewis County Coroner's Office beginning in August 2024 and was promoted to Deputy Coroner on a part-time basis in January 2025. Dkt. 1 at 16, 17. On September 11, 2025, the day after Charlie Kirk was fatally shot, Bromm shared social media posts appearing to celebrate—or at least make light of—the incident. *Id.* at 23. Bromm's post was then re-shared by a local elected official who criticized Bromm for his post and tagged defendant Lewis County Commissioner Sean Swope, inquiring "correct me if I'm wrong but isn't he an employee of Lewis County in the Coroner's Office?" *Id.*

That post is as follows:



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021




ECF 30 (Declaration of Sean Swope) at ¶ 5 and Exhibit A. Swope responded that he would "look into it." *Id.* at 2. After being tagged, Commissioner Swope looked at Mr. Bromm's public Facebook account and saw several things that clearly identified him as a Lewis County employee:

- Mr. Bromm's employer was identified as Lewis County;
- Mr. Bromm's profile photo showed him in a Lewis County Coroner's Office shirt; and



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

- Mr. Bromm's account included photos of Mr. Bromm wearing his Lewis County Coroner "Removal Technician" shirt and a Lewis County Coroner hat.

*Id*. at ¶ 6. These are the photos that Commissioner Swope saw when he looked at Mr. Bromm's public Facebook page:



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021






Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021






Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021



*Id*. at ¶ 6 and Exhibit B.

Later that evening, Swope made a post responding to Representative McEntire's question by confirming Bromm's employment with Lewis County and directing readers to voice their concerns to the Lewis County Coroner and Mr. Bromm's boss, Warren McLeod, and provided McCleod's email address. *Id.* That post is as follows:



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

**Sean Swope**
Pinned · Sep 11, 2025 ·

This has been brought to my attention. The individual who celebrated Charlie Kirk's assassination is a county employee, working in the Coroner's Office led by Warren McLeod.

I am truly saddened that anyone would celebrate the assassination of a fellow American—especially over differences of opinion, thought, or debate.

This perspective does not reflect the character of Lewis County or the values of the fine, decent, and hardworking people who work here.

I also believe Charlie Kirk himself would respect this individual's freedom of speech. He would not silence him, but instead welcome a conversation about differing points of view.

If you have concerns regarding this matter, please contact the Coroner's Office directly:
Warren.McLeod@lewiscountywa.gov

**Joel McEntire**
Sep 11, 2025 ·

Another disgusting person in our community that none us should be friends with. Paul Bromm is his name. Sean Swope, correct me if I'm wrong but isn't he an employee of Lewis County in the Coroner's Office?
The Chronicle is this what our tax payer dollars support?







*Id.*



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

**<u>Prosecutor Meyer's PID Letter</u>**. The following day, the Lewis County Prosecuting Attorney, Jonathan Meyer, sent McCleod a potential impeachment disclosure (PID) letter advising that the prosecutor's office had reviewed "several posts made on social media by Mr. Bromm" and concluded that while the posts were protected by the First Amendment "without question," they "may show a biased [sic] against an identifiable group." ECF 1 at 28. Minutes later, McCleod called Bromm and placed him on administrative leave. *Id.* at 29. Bromm alleges that this letter was sent "outside the context of any criminal case and solely for administrative purposes related to Plaintiff's employment" and that the letter had "no legitimate government purpose." *Id.* at 29, 33. But as Prosecutor Meyer has declared:

> Our office deals with thousands of cases and it's not possible for us to remember years down the road that someone has a PID issue. When these issues come up, they are promptly and timely dealt with and the duty and decision on whether to issue a PID letter has nothing to do with whether there are pending matters involving the potential witness. And the notion that Mr. Bromm – whose job involved handling dead bodies at crime scenes – would never be a witness in a case is absurd. His role involved an essential part of the chain of custody of a deceased person.

ECF 28 at ¶ 17.

**<u>Coroner McLeod's Response</u>**. When Coroner McLeod first learned that Charlie Kirk was shot by an assassin's bullet, he did not know who Charlie Kirk



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

was. ECF 27 at ¶ 12. He later learned that Mr. Bromm had posted disgusting, mocking, celebratory-type comments about Mr. Kirk's death, including a picture of Mr. Kirk the moment the bullet hit with the comment "FA + FO" (Fuck Around and Find Out), and to the effect that Charlie Kirk was a bad person and he was glad he is dead – showing that Mr. Bromm thought Mr. Kirk deserved to be killed and that the killing was funny to Mr. Bromm. *Id.* Mr. McLeod found Mr. Bromm's posts to be extraordinarily inappropriate, especially given that he was a Deputy Coroner charged with conducting unbiased investigations into people's deaths, yet he was publicly celebrating the death of another human being – a political figure who was apparently loved by many on one side of the aisle. *Id.*

Mr. McLeod was concerned about Mr. Bromm's posts being associated with his office because a photo of him had been posted wearing a shirt and hat, both marked with the Lewis County Coroner's Office patch. *Id.* Mr. McLeod told Mr. Bromm to take down the post celebrating Mr. Kirk's death. *Id.* at ¶ 13. After doing so, however, Mr. McLeod came to believe that Mr. Bromm had a First Amendment right to post whatever he wanted and that he didn't have the authority to tell Mr. Bromm to remove it. Mr. McLeod called Mr. Bromm back and told him his new understanding: that he couldn't make Mr. Bromm remove his post. *Id.*



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

Mr. McLeod received multiple calls and emails from citizens complaining about Mr. Bromm's posts. *Id.* at ¶ 14. He responded to each one of them. *Id.* And Lewis County Prosecutor, Jonathan Meyer, sent Mr. McLeod his PID letter issued in relation to Mr. Bromm's posts regarding Charlie Kirk. *Id.* at ¶ 15.

Mr. McLeod believed that Mr. Bromm's posts called into question his ability to conduct unbiased death investigations, brought shame to his office, and broke trust with their partners in law enforcement. *Id.* at ¶ 16. Therefore, Mr. McLeod placed Mr. Bromm on paid administrative leave while he consulted with Human Resources and the civil side of the Prosecuting Attorney's Office about how to proceed. *Id.*

In the days that followed, McCleod contacted the Washington Criminal Justice Training Commission and the American Board of Medicolegal Death Investigators to inquire about the effect a PID letter might have on Bromm's ability to attain or maintain his certifications. ECF 42 at 3. McCleod also contacted Sheriff Snaza and the Centralia Police Chief, defendant Andy Caldwell. *Id.*

**Sheriff Snaza's Letter**. That same day, Lewis County Sheriff Robert Snaza called Mr. McLeod and told him that he didn't want Mr. Bromm to respond to any calls with the Sheriff's Office regarding a death that was not natural – anything suspicious or a suicide, given the importance of the integrity



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

of any potential criminal investigation involving death. ECF 27 at ¶ 17. Mr. McLeod requested that the Sheriff put his position in writing. *Id.* Mr. McLeod did not in any way cause or pressure Sheriff Snaza to reach his position about Mr. Bromm. *Id.*

Mr. McLeod later received the letter from Sheriff Snaza, indicating that Mr. Bromm was not to respond to any calls with the Sheriff's Office regarding suspicious deaths and/or deaths that required a criminal investigation. *Id.* at ¶ 18. That same day, Mr. McLeod received an email from the Chief of Police of the City of Centralia, Andy Caldwell, requesting that Mr. Bromm not be dispatched without being accompanied by a supervisor to any investigation within the City of Centralia where the death may be connected in any way to a criminal act. *Id.* at ¶ 19.

**Bromm's Termination**. Mr. McLeod wanted to terminate Mr. Bromm's employment and ultimately came to understand that he could do so. *Id.* at ¶ 20. Among other things, Mr. Bromm's posts caused disruption to his office, threatened public trust and trust with their law enforcement partners, and showed bias to community members that liked Charlie Kirk and were shocked by his assassination. *Id.* at ¶ 23. The posts made Mr. Bromm stand out as unhinged, biased, and unreliable. *Id.* Therefore, Mr. Bromm's employment was terminated on September 22, 2025. *Id.* at ¶ 22.



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

As the elected Coroner, Mr. McLeod alone decided to terminate Mr. Bromm. *Id.* at ¶ 21. Prosecutor Meyer, Commissioner Swope and Sheriff Snaza had no role in the Coroner's decision to terminate Mr. Bromm. ECF 28 at ¶ 18; ECF 30 at ¶ 10; ECF 29 at ¶ 16.

## III. ARGUMENT

### A. Bromm was not engaged in protected speech because Lewis County's interests in maintaining the public's trust, maintaining death scenes and prosecutions free of bias, and not having the work of the Coroner's Office disrupted far outweigh Bromm's interest in posting public, vile, and mocking comments about Mr. Kirk's murder on Facebook, and his page showed him in his Coroner's uniform.

The Coroner's Office legitimate interest in maintaining a bias-free department and maintaining the public's trust outweigh any First Amendment right that Bromm might have in his derogatory, mocking, biased, and celebratory-type Facebook posts. Whether an employee's interests outweigh the governmental employer's interests is a question of law for the Court. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

This Court correctly framed the *Pickering* balancing test in its order granting qualified immunity to the four Lewis County individual Defendants:

> Under the *Pickering* test, the court first considers whether the employee spoke on a matter of public concern. *See Moran*, 147 F.3d at 846 (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563 (1968)). If so, the court considers whether the government's interest in promoting the efficient provision of public services outweighs the First Amendment value of the speech in question. *Id.* The second prong is context-specific, and factors in the nature of the employee's role, where and when their speech occurred, the



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> nature of the agency's mission and services, and whether any disruption has occurred or is reasonably likely to occur. On the other side, the Court should consider the relative First Amendment value of the speech—for example, does the speech substantially involve matters of public concern, or is it more akin to an employee grievance? *See Connick v. Myers*, 461 U.S. 138, 152 (1983). Is it commentary on a matter within the scope of the employee's work-related expertise, entitling it to great weight? Or is it expressed in a derogatory manner, entitling it to less weight? *See Thompson v. Cent. Valley Sch. Dist. No 365*, 163 F.4th 654 (9th Cir. 2025), *cert. denied sub nom. Thompson v. Cent. Valley Sch. Dist.*, No. 25-1281, 2026 WL 1855054 (U.S. June 29, 2026).

ECF 43 at 12:7-21.

Using the balancing test from *Pickering,* the Court should determine as a matter of law "whether the [County] had an adequate justification for treating [Bromm] differently from any other member of the general public." *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Further,

> In weighing the [municipality's] interest in [disciplining] an employee based on any claim that the content of a statement made by the employee somehow undermines the mission of the public employer, some attention must be paid to the responsibilities of the employee within the agency. The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails.

*Id*. at 390. And the Court must "consider the context in which the speech was made, including the employee's role and the extent to which the speech impairs the efficiency of the workplace." *Smith v. Gilchrist*, 749 F.3d 302, 309 (4th Cir. 2014) *citing Rankin*, 483 U.S. at 388.


Bellingham, WA 98226
(206) 518-3021

The Court's order granting qualified immunity also discussed at length the relevant case law, showing that the outcomes depends on the facts that are inputted into the balancing test. For example, this Court wrote that a termination of a teacher was found to be "unconstitutional after weighing 'the interests of the teacher, as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Pickering* at 568.

The speech in *Pickering* was nothing like Bromm's speech, and the employer's interests there were much less than the Coroner's are here.

On the other end of the spectrum are cases that illustrate where summary judgment should be granted for the employer. First, this Court wrote the following regarding *Connick v. Myers*, 461 U.S. 138 (1983):

> the Court revisited the *Pickering* test, this time upholding the dismissal of a former district attorney, Myers, who had circulated a survey among her coworkers soliciting their thoughts on office policies and personnel, including whether they felt pressured by the office to work in political campaigns. The court held that this last question touched on a matter of public concern, but that Myers had only a limited interest in the speech because the true purpose of the survey was to bolster Myer's position in an employment dispute with her supervisor, Connick. The Court also noted that Myer's choice of location and timing for circulating her questionnaire had resulted in disruption to the workplace. *Id.* at 152. Thus, weighing Myer's first amendment interests against the risk that her actions "would disrupt the office, undermine [Connick's] authority, and destroy close working relationships," the Court held that



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> Myer's speech was not protected, and her termination was proper. *Id.* at 154.

Clearly the case at bar is much closer to *Connick* than it is to *Pickering;* in fact, Bromm's interest in his public, vile speech celebrating murder – as an identified employee of the Coroner's Office – is much lower than Myers' interests were, and the negative effects on the Lewis County Coroner's Office were worse than the effects on DA's Office in *Connick.*

This Court then addressed *Rankin v. McPherson*, 483 U.S. 378 (1987) where, after the attempted assassination of President Reagan in 1981, Arda McPherson, a clerical employee working for the constable's office in Harris County, Texas, privately remarked to her coworker, "if they go for him again, I hope they get him." *Id.* On appeal, the Fifth Circuit held that McPherson's statements were protected, and the Supreme Court affirmed. As this Court correctly wrote:

> Applying *Pickering* and *Connick*, the Court first inquired whether McPherson's statement constituted speech on a matter of public concern, concluding that it was because it occurred in the context of a discussion about President Reagan's policies in the wake of a highly publicized assassination attempt. The Court then asked whether "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" outweighed McPherson's interest in having made the comments. *Id.* at 388. The Court held that it did not.
>
> *Although McPherson's statements were made in the workplace, there was no evidence that they had interfered with the efficient*



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> *functioning of the office, unlike in Connick*. *See id.* at 388-89. Constable Rankin testified that the possibility of interruption had not been a consideration in his decision to fire McPherson, nor had he inquired whether the remark had caused any disruption. *Id.* at 389. *There also was no evidence that McPherson had discredited the office by making her statement public, or that her statement had been overheard by a member of the public*. *Id.* Considering the non-public, clerical nature of her role and the absence of any disruption to the office's business or public perception, the Court held that McPherson had been fired simply for the content of her speech and the Constable's belief that she was "unworthy" of employment in his agency, and that this was unlawful. *Id.* at 390. The Court explained that "at some point, such concerns are so removed from the effective functioning of the public employer that they cannot prevail over the free speech rights of the public employee." *Id.* at 391. *However, the Court cautioned that even employees with non-public roles could be terminated for their speech if the facts show it "truly injures the public interest," such as where a clerical employee for a law enforcement agency goes on television and identifies themselves as both an employee of that office, and a recruiter for the Ku Klux Klan*. *Id.* at n.9 (citing *McMullen v. Carson*, 754 F.2d 936 (11th Cir. 1985)).

(Emphasis added.)

Here, unlike Ms. McPherson, a clerical worker who made a single, private comment to a coworker, Bromm publicly posted his vile comments about Mr. Kirk's murder, and included on his page pictures of himself in his Coroner's uniform and in doing so, clearly *"identifies [himself] . . . as an employee of that office."* And, in doing so, he damaged the office in multiple ways.

This Court's order continues, correctly pointing out that derogatory speech is entitled to less protection:



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> derogatory speech will be accorded less weight in the *Pickering* balance. *Id.* In *Thompson*, an assistant principal was placed on leave and then demoted for comments he made on Facebook, namely his reaction to the Democratic National Convention, in which he referred to Democrats as "demtards" and suggesting that "the rest of us are sick and tired of your act and going to take you to the woodshed for a proper education." *Id.* at 664-65. The court concluded that Thompson's post could be construed as commentary on a matter of public concern, but that it was "not speech entitled to the highest constitutional protection" due to the disparaging and violent language used. *Id.*; *see also MacRae v. Mattos*, 106 F.4th 122 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2617 (2025) (plaintiff's posts about transgender individuals and immigrants were on a matter of public concern but were entitled to less weigh considering the "mocking, derogatory, and disparaging manner" in which they were conveyed).

ECF 43 at 16:5-17.

Bromm loses this on this point as well; his speech was a 10 out of 10 on the "derogatory" scale.

Finally, addressing Lewis County's interests in the balancing test, this Court wrote as follows:

> Finally, as *Rankin* made clear, there must be evidence that the speech in question had or will disrupt the employer's operations. A government employer may rely on reasonable predictions of future disruption, even if none has yet occurred, but it must "provide some evidence for the court to evaluate whether the government's claims of disruption appear reasonable." *Moser*, 984 F.3d at 909. Courts are more likely to accept a government's employer's prediction of future disruption if some disruption has already occurred. *Id.* . . . .
>
> *Further, given the public-facing nature of the coroner's office (and of Bromm's role specifically) and the public nature of his*



Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
(206) 518-3021

> *comments, the court concludes that it was at least reasonably non-speculative to anticipate that Bromm's statements would cause disruption in the future. Although the coroner's office is not a law enforcement agency, it frequently works alongside law enforcement, and it does occupy a "unique and sensitive position" having "necessary and constant interactions with the public." Dible v. City of Chandler*, 515 F.3d 918, 929 (9th Cir. 2008). Bromm's work for the coroner's office was also public-facing, requiring him to interface both with the public and with other agencies. McCleod Decl., Dkt. 27 at 4-5. Bromm does not deny this. Bromm's Facebook profile also identified him as an employee of the Coroner's office at the time he made the post,3 and his posts were quickly made public, if indeed they could ever be considered private.

ECF 43 at 16:18-17:2; 18:15-19:4 (emphasis added).

Further, in balancing the competing interests, "we do not require the public employer to prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was 'reasonably to be apprehended.'" *Maciariello v. Summer*, 973 F.2d 295, 300 (4th Cir. 1992) (*quoting Jurgensen v. Fairfax Cnty*., 745 F.2d 868, 879 (4th Cir. 1984)). And whether the employee's interest in speaking outweighs the government's interest is a question of law for the court. *See Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir. 1987).

Therefore, it is undisputed that, as a matter of law, Bromm harmed the Coroner's Office in multiple ways.

Finally, as set forth above, the County is not liable because Bromm's termination did not violate the First Amendment. It is also not liable for the lawful actions of Prosecutor Meyers (issuing a PID letter), Sheriff Snaza


05 #2054
Bellingham, WA 98226
(206) 518-3021

(ordering Bromm to stay off of suspicious death cases, etc.) and Commissioner Swope (publicly posting about Bromm's posts).

On these facts, Bromm loses the *Pickering* balancing test and the Court should grant summary judgment in favor of Lewis County.

## IV. CONCLUSION

For the above-stated reasons, Defendant Lewis County respectfully requests that this Court grant summary judgment in its favor.

DATED this 30th of September, 2026

I certify that this memorandum contains 3596 words, in compliance with the Local Civil Rules.

By: */s Elena C. Bundy*
Elena C. Bundy, WSBA #38836
Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
Phone: (206) 518-3021
E-mail: elena@bundylawgroup.com
*Attorney for Lewis County Defendants*

By: */s Kristofer J. Bundy*
Kristofer J. Bundy, WSBA #19840
Bundy Law Group, PLLC
424 W. Bakerview Rd., Ste. 105 #2054
Bellingham, WA 98226
Phone: (206) 372-3627
E-mail: kris@bundylawgroup.com
*Attorney for Lewis County Defendants*